## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| CONTINENTAL 332 FUND, LLC, | ) | |
| CONTINENTAL 298 FUND LLC, | ) | |
| CONTINENTAL 306 FUND LLC, and | ) | |
| CONTINENTAL 326 FUND LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | No. |
| | ) | |
| DAVID ALBERTELLI, and | ) | |
| ALBERTELLI CONSTRUCTION INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER R.I.C.O., AND OTHER RELIEF**

Plaintiffs, Continental 332 Fund LLC ("332 Fund"), Continental 298 Fund LLC ("298 Fund"), Continental 306 Fund LLC ("306 Fund"), and Continental 326 Fund LLC ("326 Fund") (hereinafter referred to as a "Fund" or collectively as "Funds"), by and through their attorneys Alvin Lodish, Larry Selander and Jeffrey L. Hamera, for their Verified Complaint for Damages Under R.I.C.O. and Other Relief against Defendants David Albertelli and Albertelli Construction Inc. ("ACI"), state as follows:

**Parties**

1.    Continental 332 Fund LLC ("332 Fund") is a special purpose entity that owns and is developing an apartment complex known as Springs at Six Mile Cypress,

Fort Myers, Florida ("Six Mile Project").    332 Fund is a Wisconsin limited liability company with its principal place of business at W134N8675 Executive Parkway, Menomonee Falls, Wisconsin.

2.    332 Fund is the subrogee or assignee, or both, of certain claims against ACI to which 332 Fund is subrogated by payment or that were assigned by the following former Subcontractors of ACI:

a.  Action Automatic Door & Gate

b.  Adkins Electric Inc.

c.  J.R. Hobbs Co. – Atlanta, L.L.C.

d.  CQ Insulation

e.   BMC (BMC West)

f.  Ciano's Tile and Custom Finishes, L.L.C.

g.   Crown Roofing LLC

h.   Floor Technologies, Inc.

i.  GE Appliances

j.  Gulf Coast Plumbing of Central Florida, Inc.

k.  Mr. Drywall Service, LLC

l.  Master Woodcraft Cabinetry, LLC

m.  Sousa Cabinets Inc.

n.  Sunny Grove Landscaping Inc.

o.  Bruno Chavez Painting, LLC

p.  Haskins Inc.

    q.  Liberty Aluminum Company

    r.  Texas Contract Floors

3.     Continental 298 Fund LLC ("298 Fund") is a special purpose entity that owns and is developing an apartment complex known as Springs at Egan Drive, Savage, Minnesota ("Savage Project"). 298 Fund is a Wisconsin limited liability company with its principal place of business at W134N8675 Executive Parkway, Menomonee Falls, Wisconsin.

4.     Continental 306 Fund LLC ("306 Fund") is a special purpose entity that owns and is developing an apartment complex known as Springs at Creekside, New Braunfels, Texas ("New Braunfels Project"). 306 Fund is a Wisconsin limited liability company with its principal place of business at W134N8675 Executive Parkway, Menomonee Falls, Wisconsin.

5.     Continental 326 Fund LLC ("326 Fund") is a special purpose entity that owns and is developing an apartment complex known as Springs at Rochester, and also known as the Springs at South Broadway, Rochester, Minnesota ("Rochester Project"). 326 Fund is a Wisconsin limited liability company with its principal place of business at W134N8675 Executive Parkway, Menomonee Falls, Wisconsin.

6.     326 Fund is the subrogee or assignee, or both, of certain claims against ACI to which 326 Fund is subrogated by payment or that were assigned by the following former Subcontractors of ACI:

    a.  Absolute Drywall, Inc.

    b.  Advanced Building Center

    c.   General Sprinkler Corporation

    d.   Citywide Insulation, Inc.

    e.   L&W Supply (M&S Drywall Supply)

    f.   Seamless Gutter (Seamless Gutterworks, LLC)

    g.   SL Contracting Inc.

    h.   Stone Pro LLC (Stone Pro Masonry)

    i.   Viking Gypsum Floors LLC

    j.   American Fence Company

    k.   Bruno Chavez Painting, LLC

    l.   Texas Contract Floors

7.      332 Fund, 298 Fund, 306 Fund, and 326 Fund, or any combination of them, are referred to herein as a "Fund" or the "Funds".

8.      David Albertelli is an individual who, on information and belief, resides in the state of Florida.  On information and belief, David Albertelli is the President of ACI and has an ownership interest in ACI.

9.      Albertelli Construction Inc. ("ACI") is a Florida corporation with a place of business at 10751 Deerwood Park Boulevard, Jacksonville, Florida.

10.      Ken Jones is, on information and belief, a resident of Florida and had been held out by ACI to be its Chief Financial Officer and Controller.  Ken Jones is not, at this time, a named defendant.

11.      Amy Butler is, on information and belief, a resident of Florida and the Accounting Manager of ACI.  Amy Butler is not, at this time, a named defendant.

**Jurisdiction and Venue**

12.     This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1964(c).

13.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 in that they are part of the same case or controversy as Plaintiffs' claims under 18 U.S.C. § 1962.

14.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) in that Defendants all reside in this judicial district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.  The Six Mile Project is located in Ft. Myers, Florida.

15.     This Court has personal jurisdiction over ACI in that, at all relevant times hereto, ACI has resided, and has transacted business in this judicial district.

16.     This Court has personal jurisdiction over Defendant David Albertelli in that, at all times relevant hereto, he has resided, and has transacted business in this judicial district.

**Introduction**

17.     Defendant David Albertelli runs Defendant ACI as a corrupt enterprise that used many unlawful schemes consisting of fraud, theft, statutory violations, misappropriation of funds through improper depositing of joint checks, bad faith, intentional breaches of contracts, wire fraud, mail fraud and bank fraud, and did so on four different construction projects that damaged the Plaintiffs.  Defendants David Albertelli and ACI misappropriated almost $2 Million Dollars from the Funds by

unilaterally indorsing dozens of joint checks issued by one of the Funds, each made payable jointly to ACI and a subcontractor of ACI ("Subcontractor"), and then depositing those joint checks into ACI's account - without the endorsement, knowledge or consent of the payee Subcontractor or the Fund.  That fraudulent scheme was one of many schemes of illegal and improper acts and conspiracies of David Albertelli, ACI and other employees of ACI.  ACI breached its contracts, warranty obligations and design obligations by allowing the projects to be chronically behind schedule without any reasonable effort by ACI to recover lost time, plagued by poor quality work, suffering from poor designs by ACI, encumbered by liens of unpaid Subcontractors and ACI's baseless liens, and virtually abandoned by ACI.  David Albertelli and ACI were worse than incompetent contractors.  They used the financial risk posed to the Funds on the different projects to induce the Funds into forwarding moneys to ACI which were then diverted from their intended purpose and wrongfully converted to the Defendants' own use.

## COUNT I - RICO v. DAVID ALBERTELLI AND ACI

18.    The allegations of paragraphs 1 through 17 above are incorporated as though set forth in full herein as the allegations in this paragraph.

**The Corrupt Enterprise**

19.    Defendants David Albertelli and ACI created a corrupt enterprise that consists of ACI, David Albertelli acting individually, other companies that are subcontractors to ACI and which are, on information and belief, owned in whole or in part, directly or indirectly, by and influenced by David Albertelli and ACI, and

employees of ACI. The corrupt enterprise exploits subcontractors and owners of construction projects to obtain moneys through fraud, deception, theft, coercion and intentional, bad faith refusals to follow contracts and applicable laws ("Corrupt Enterprise"). The purpose of the Corrupt Enterprise is to misappropriate money that is owed to subcontractors, should not be paid by owners or their lenders, or is not earned by ACI. On information and belief, David Albertelli and ACI have been using the money inappropriately obtained to further the interests of ACI and David Albertelli, enable schemes on other projects, and to perpetuate the Corrupt Enterprise.

**The Contracts**

20.    332 Fund and ACI entered into a written contract dated February 20, 2015, ("Six Mile Contract"), under which, among other things, ACI was to provide labor, materials and services for the construction of the Six Mile Project on a "Stipulated Sum" basis. The Six Mile Contract includes an agreement, general conditions, numerous exhibits and incorporated documents, which are too voluminous to attach to this complaint but which are in the possession of the Defendants. The Six Mile Project involved the design and construction of an apartment complex in Fort Myers, Florida consisting of several low-rise, wood framed buildings with several residential units each, common buildings, parking, roads, utilities, site work and other facilities, with an initial Contract Price of $29,367,849.38.

21.    298 Fund and ACI entered into a written contract dated April 25, 2014 ("Savage Contract"), under which, among other things, ACI was to provide labor, materials and services for the construction of the Savage Project on a "Cost of the Work

Plus Fee with a Guaranteed Maximum Price" basis. The Savage Contract includes an agreement, general conditions, numerous exhibits and incorporated documents, which are too voluminous to attach to this complaint but which are in the possession of the Defendants. The Savage Project involved the design and construction of an apartment complex in Savage, Minnesota consisting of several low-rise, wood framed buildings with several residential units each, common buildings, parking, roads, utilities, site work and other facilities, with an initial Guaranteed Maximum Price of $28,209,835.

22.    306 Fund and ACI entered into a written contract dated November 21, 2014, ("New Braunfels Contract"), under which, among other things, ACI was to provide labor, materials and services for the construction of the New Braunfels Project on a "Cost of the Work Plus Fee with a Guaranteed Maximum Price" basis. The New Braunfels Contract includes an agreement, general conditions, numerous exhibits and incorporated documents, which are too voluminous to attach to this complaint but which are in the possession of the Defendants. The New Braunfels Project involved the design and construction of an apartment complex in New Braunfels, Texas consisting of several low-rise, wood framed buildings with several residential units each, common buildings, parking, roads, utilities, site work and other facilities, with an initial Guaranteed Maximum Price of $23,992,353.

23.    326 Fund and ACI entered into a written contract dated June 23, 2015, ("Rochester Contract"), under which, among other things, ACI was to provide labor, materials and services for the construction of the Rochester Project on a "Stipulated Sum" basis. The Rochester Contract includes an agreement, general conditions,

numerous exhibits and incorporated documents, which are too voluminous to attach to this complaint but which are in the possession of the Defendants.  The Rochester Project involved the design and construction of an apartment complex in Rochester, Minnesota consisting of several low-rise, wood framed buildings with several residential units each, common buildings, parking, roads, utilities, site work and other facilities, with an initial Contract Price of $27,331,562.

**Overview of Plaintiff's RICO Case**

24.     This Count I is a complex civil action for civil remedies authorized by the Racketeering Influenced and Corrupt Practices Act ("RICO") in federal statutes at 18 U.S.C. 1961 *et seq.*  See 18 U.S.C. §§ 1964(a) and (c).

25.     The grounds for this RICO Count include that Defendant David Albertelli, Defendant ACI, and others are individually, as an enterprise and through their conspiracy, engaged in a pattern of racketeering activity across State lines, and a conspiracy to engage in racketeering activity involving numerous RICO predicate acts over a period of not more than ten years.  The RICO predicate acts include unlawful acts related to four construction projects in three states including fraud, wire fraud, mail fraud, bank fraud, conversion, conspiracy to commit fraud, violations of the Florida Uniform Commercial Code – Negotiable Instruments (Fla. Stat. 673.1011 *et seq.*); The Minnesota Theft by Contractor Act (Minn. Stat. §514.02), Florida Civil Theft Act (Fla. Stat. 772.11), the Florida Prompt Payment Act (Fla. Stat. §715.12(2)), the Minnesota Prompt Payment Act (Minn. Stat. §337.10 subdiv. 3), the Texas Prompt Payment Act (Tex. Prop. Code. Ann. §28.002), perjury on sworn statements, violations of constructive trust, and

other illegal acts.  The Defendants used a pattern of racketeering activities to receive payments to which they are not entitled, withhold payments from subcontractors who were entitled to those payments, and delay payments to subcontractors, thereby damaging the plaintiffs and others.

26.     Most recently and most egregiously, David Albertelli and ACI's racketeering activity included their misappropriation of approximately $2,000,000 by indorsing thirty-four (34) checks that were each payable jointly to ACI and a Subcontractor and then depositing those checks in ACI's account without obtaining the endorsement of the Subcontractor.

**Racketeering Acts Defined**

27.     The definition of Racketeering in RICO includes violations of  "section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 ( relating to financial institution fraud),  …."  18 U.S.C.A. § 1961 (West).

28.     Section 1341 addresses mail fraud and fraud using Federal Express deliveries:

> "Whoever, having **devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises**, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, **or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon,**

**or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing**, shall be fined under this title or imprisoned not more than 20 years, or both. …. ."  18 U.S.C. § 1341 (West) (emphasis added).

29.    Section 1343 addresses wire fraud, including telephone and electronic transmissions:

"Whoever, having **devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire,** radio, or television **communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice**, shall be fined under this title or imprisoned not more than 20 years, or both.   …. If the violation …. affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."  18 U.S.C. § 1343 (West) (Emphasis added).

30.    Section 1344 addresses bank fraud, including the fraudulent attainment of funds from a financial institution:

"Whoever knowingly executes, or attempts to execute, a scheme or artifice

(1) to defraud a financial institution; or

(2) to **obtain any of the moneys, funds**, credits, assets, securities, or other property owned by, or **under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises**;  …. 18 U.S.C. § 1344 (West)(emphasis added).

**The Racketeering Schemes of David Albertelli and ACI**

31.    The RICO predicate acts alleged herein and each scheme were part of the overall conspiracy and *pattern of racketeering activity* alleged herein, *e.g.* wire fraud, mail fraud and bank fraud.  See 18 U.S.C. §§  1341, 1343, and 1344 , respectively.

**Six Mile Project Joint Checks Scheme**

32.     Before November 2016, ACI had allowed the Six Mile Project, Rochester Project, Savage Project and New Braunfels Project to be behind schedule to such an extent that the liquidated damages for delays were assessed up to their maximum as allowed by the Contracts.

33.     On the Six Mile Project, 332 Fund had been withholding amounts for ACI's general conditions and fee from payments to ACI on the basis that ACI owed 332 Fund liquidated damages for delays, costs incurred to complete ACI's work, costs incurred to correct ACI's defective work, costs incurred to pay fines, amounts to cover mechanics liens, and other charges incurred or threatened by ACI, costs incurred to provide supervision that ACI failed to provide, and other costs and damages incurred by the Fund due to ACI's poor performance, breaches of contract, negligence, breaches of warranties and intentional misconduct.

34.     On or about November 10, 2016, ACI submitted the October Payment Application for the Six Mile Project, along with other documentation, including a Sworn Statement.  The October Payment Application and the Sworn Statement for the Six Mile Project were signed by David Albertelli and notarized by Amy Butler, electronically. They contain representations by David Albertelli and ACI as to the amounts due the Subcontractors.

35.     In the Six Mile Contract, ACI agreed, among other things, that it would only include amounts for Subcontractors in a Payment Application if it intended to pay that Subcontractor the amount requested (see Six Mile Contract Gen. Cond. §9.3.1.2),

that work for which prior payments were received would be free of claims by Subcontractors (Id. at §9.3.3), that ACI would pay each Subcontractor within seven (7) days of receipt of payment (Id. at §9.6.2),  and that any amount paid to ACI that was payable to a Subcontractor would be held in a constructive trust by ACI for that Subcontractor.

36.    After receiving the October Payment Application for the Six Mile Project from ACI, 332 Fund  informed ACI that it did not account for deductions, withholding, and liquidated damages, and had other errors that prevented the 332 Fund from paying to ACI the amounts requested for general conditions and fee.

37.    The Funds and ACI had a history and course of dealing that involved the use of joint checks.  For the August Payment Application, 332 Fund had paid part of ACI's Payment Application through a wire transfer to ACI for amounts ultimately payable to Subcontractors who had registered to participate in the Textura on-line payment documentation system.  ACI was required to submit payments to Subcontractors from the monies it received through the wire transfers.  ACI breached its obligations to pay Subcontractors and instead withheld the money from Subcontractors in order to coerce 332 Fund to approve change order requests for other work or risk delays to the Six Mile Project.  332 Fund reviewed and processed change order requests that resulted in change orders that increased the contract price and issued other change orders that reduced the contract price.  ACI refused to process the deductive change orders.  332 Fund thereafter withheld amounts from ACI's general conditions and fee to account for the credits that it was owed.  332 Fund also made part of the payments for the August

Payment Application to ACI through joint checks payable to a Subcontractor and ACI. ACI processed those joint check payments by indorsing the joint check, generating a lien waiver and other documentation, and sending the joint check, waiver and documentation to the Subcontractors.  ACI provided 332 Fund with tracking numbers for the FedEx packages that it sent to the Subcontractors.  Subcontractors who were registered with and paid through Textura would have their lien waivers posted to Textura where 332 Fund could see that Subcontractors had executed waivers.

38.    332 Fund paid the October Payment Application through joint checks, each made payable to ACI and one of its Subcontractors.  ACI in accordance with past practices was to indorse each joint check and generate a waiver and other documentation. ACI was to place the joint check, waiver and other documentation for each Subcontractor in a FedEx envelope that ACI prepared, give the envelopes to FedEx, and provide 332 Fund with the tracking numbers.  Subcontractors registered with Textura were expected to return signed lien waivers to ACI after the Subcontractor received its payment.

39.    ACI knew that 332 Fund relied on ACI's representations about the amounts due Subcontractors, the manner in which payments would be administered, and the conclusion that receipt of a FedEx package by a Subcontractor would mean that ACI had delivered the joint check to that Subcontractor.

40.    332 Fund reasonably relied on the representations made by ACI and David Albertelli as to the amount due each Subcontractor, that ACI would pay each Subcontractor, that ACI would forward each joint check to the appropriate Subcontractor,

and that the tracking numbers would be for FedEx packages that contained the joint checks.

41.     On December 1, 2016, 332 Fund caused checks to be drafted with each payable to ACI and a Subcontractor listed on the Sworn Statement for the Six Mile Project in the October Payment Application, in the amount represented by ACI as being due that Subcontractor.

42.     332 Fund caused the joint checks to be delivered to ACI on or about December 1, 2016, for the Six Mile Project.

43.     On information and belief, Ken Jones and/or Amy Butler received the joint checks on behalf of ACI. On information and belief, David Albertelli, Ken Jones and/or Amy Butler agreed to exclude the joint checks from the other documentation that ACI prepared to be forwarded to the Subcontractors.

44.     David Albertelli endorsed nineteen separate joint checks related to the October Payment Application for the Six Mile Project.

45.     On information and belief, Melissa Peak, an ACI employee, prepared FedEx envelopes for the Subcontractors, and, on the instructions of David Albertelli, Ken Jones and others at ACI, Ms. Peak placed the documentation but not the checks in the FedEx envelopes, sent the FedEx envelopes to the Subcontractors, and provided the FedEx tracking numbers to the 332 Fund.  At no time did anyone from ACI ask 332 Fund for permission to exclude the joint checks or inform 332 Fund that the joint checks had been withheld.

46.    Between December 5 and 6, 2016, ACI intentionally and wrongfully deposited the joint checks from the Six Mile Project into ACI's account at Center-State Bank, without any of the second signatures from Subcontractors and without notice to or consent from 332 Fund.

47.    David Albertelli and ACI knowingly and for the purpose of misappropriating money from 332 Fund related to the October Payment Application on the Six Mile Project, deposited 19 joint checks without proper endorsements, totaling $896,146.51 in ill-gotten gains.

**The Rochester Joint Check Scheme**

48.    In November 2016, ACI submitted an October Payment Application and supporting documents, including a Sworn Statement identifying some Subcontractors and a supplemental list for the other Subcontractors, representing that payments were due from the 326 Fund for work allegedly performed on the Rochester Project by ACI and its Subcontractors.    ACI and David Albertelli omitted several Subcontractors from the Sworn Statements for Rochester in breach of ACI's obligations under the Rochester Contract and in contradiction to ACI's Sworn Statements, which David Albertelli signed. 326 Fund caught that misrepresentation by omission and compelled ACI and David Albertelli to provide a supplemental list of Subcontractors.

49.    The Sworn Statement and supplemental list of Subcontractors for the October Payment Application and supporting documents requested specific amounts for payments that would be earmarked for specific Subcontractors.    The October Payment Application and Sworn Statement and supplemental list for the Rochester Project were

signed by David Albertelli and notarized by Amy Butler, electronically. The supporting documentation contains a Sworn Statement in which David Albertelli attests to the amount due seven Subcontractors and a supplemental list identifying other Subcontractors.

50.     In the Rochester Contract, ACI agreed, among other things, that it would only include an amount for a Subcontractor in a Payment Application if it intended to pay that Subcontractor the amount requested (see Rochester Contract Gen. Cond. §9.3.1.2), that work for which prior payments were received would be free of claims by Subcontractors (Id. at §9.3.3), that ACI would pay each Subcontractor within seven (7) days of receipt of payment (Id. at §9.6.2),  and that any amount paid to ACI that was payable to a Subcontractor would be held in a constructive trust by ACI for that Subcontractor.

51.     ACI knew that 326 Fund relied on ACI's representations about the amounts due Subcontractors, the manner in which payments would be administered, and the conclusion that receipt of a FedEx package by a Subcontractor would mean that ACI had delivered the joint check to that Subcontractor.

52.     On December 2, 2016, 326 Fund caused checks to be drafted with each payable to ACI and a Subcontractor listed on the Rochester Project Sworn Statement in the October Payment Application documents or the supplemental list in the amount represented by ACI as being due that Subcontractor.

53.     326 Fund reasonably relied on the representations made by ACI and David Albertelli as to the amount due each Subcontractor, that ACI would pay each

Subcontractor, that ACI would forward each joint check to the appropriate Subcontractor, and that the tracking numbers would be for FedEx packages that contained the joint checks.

54.    326 Fund caused the joint checks to be delivered to ACI on or about December 2 2016, for the Rochester Project.

55.    On information and belief, Ken Jones and/or Amy Butler received the joint checks on behalf of ACI. On information and belief, David Albertelli, Ken Jones and/or Amy Butler agreed to exclude the joint checks from the other documentation that ACI prepared to be forwarded to the Subcontractors.

56.    David Albertelli endorsed sixteen separate joint checks related to the October Payment Application for the Rochester Project.

57.    On information and belief, Melissa Peak at ACI prepared FedEx envelopes for fifteen[1] Subcontractors, and on the instructions of David Albertelli, Ken Jones and others at ACI placed the documentation but not the checks in the FedEx envelopes, sent the FedEx envelopes to the Subcontractors, and provided the FedEx tracking numbers to 326 Fund.  At no time did anyone from ACI ask 326 Fund for permission to exclude the joint checks or inform 326 Fund that the joint checks had been withheld.

58.    Between December 7 and 8, 2016, ACI intentionally and wrongfully deposited the joint checks from the Rochester Project into ACI's account at Center-State

---

[1] One joint check appears to have been deposited by its Subcontractor Payee.

Bank, without any of the second signatures from Subcontractors and without notice to or consent from 326 Fund.

59.     David Albertelli and ACI knowingly and for the purpose of misappropriating money from 326 Fund related to the October Payment Application on the Rochester Project, deposited 15 joint checks without proper endorsements, totaling $1,121,882.88 in ill-gotten gains.

### Damages From the Joint Checks Schemes

60.     David Albertelli and ACI improperly deposited a total of $1,121,882.88 that was to be paid to Subcontractors for the Rochester Project and $869,146.51 that was to be paid to the Subcontractors for the Six Mile Project, for a total of $1,991,029.39 that was misappropriated by David Albertelli and ACI.

61.     In late December 2016, the Funds were contacted by several Subcontractors who complained that they had not been paid the payment corresponding to the October Payment Application.  Those Subcontractors indicated that ACI did not send them the joint check but did send a lien waiver and other documentation.  The Funds then reviewed the cancelled joint checks and learned that the cancelled joint checks did not have the required second signatures.

62.     On December 29, 2016, the Funds gave notice to ACI that the Funds would terminate ACI's opportunity to perform any more work on the Rochester Project and the Six Mile Project, if ACI and David Albertelli did not return the money stolen through the joint check schemes and cure other contractual defaults.  ACI cured none of its defaults, committed an additional default, and kept the misappropriated money.  The

terminations of ACI's opportunity to perform work became effective on January 6, 2016. To keep the Rochester Project and Six Mile Project moving, mitigate damages, avoid Subcontractor liens, acquire the Subcontractors' claims against ACI, and to do the right thing, the Funds paid the amounts indicated on the joint checks directly to the unpaid Subcontractors.

63.    The "Joint Check Schemes" described above include violations of the Florida Civil Theft Act, the Minnesota Theft by Contractor Act, the Uniform Commercial Code, the Florida Prompt Payment Act, the Minnesota Prompt Payment Act, and the Florida R.I.C.O. Act, and include wire fraud, mail fraud, bank fraud, fraud, conversion, and intentional breaches of contract.

**Delayed Payments to Subcontractors Scheme**

64.    David Albertelli and ACI routinely requested payments for amounts earned by ACI's Subcontractors knowing that ACI would not pay its Subcontractors those amounts on a timely basis.    Those slow payments violated contracts, Prompt Payment Acts and representations made by ACI to obtain construction loan funds.

65.    David Albertelli and ACI's delayed payment scheme occurred, on information and belief, on each of the four projects.    The scheme had these similar steps for each of the four projects:

      a.    David Albertelli caused ACI to submit a monthly Payment Application for each project to the corresponding Fund by electronic transmission or FedEx delivery or both methods;

b.  each Payment Application included representations by ACI and David Albertelli as to the amount owed to each subcontractor listed on the Payment Application;

c.  ACI and Albertelli knew that the Fund would submit ACI's Payment Application to the construction lender for the Project so that the lender would release monies under its control to the Fund, which the Fund in turn would forward to ACI with the expectation that ACI would fulfill its legal obligations to pay the subcontractors in accordance with the Contract, any applicable Prompt Payment Act, and other laws;

d.  ACI would instead withhold the monies from the subcontractors, on information and belief, in order to obtain the benefits of the monies without payment of interest, to pay other obligations and create financial hardship for subcontractors so ACI and David Albertelli could extort agreements from the subcontractor to  accept lesser amounts than they were due;

e.  When some Subcontractors asked ACI why payments were delayed, ACI falsely told the Subcontractors that the Funds were the cause of payment delays; after learning of one of those incidents of deception by ACI, the Funds began posting notices of payments in the job trailer at the Projects so that Subcontractors would know that ACI had been paid;

f.  To the extent ACI made late payments, on information and belief, it paid only the principal due and not the interest required by statutes and contracts;

g.  On information and belief, many Subcontractors who were not timely paid by ACI delayed their work, provided fewer resources than were necessary to timely complete their work, and otherwise delayed the completion of the Projects which damaged the Funds through an increase in duration of construction loans and the interest it was forced to pay and delay in the generation of revenue from the Project, among other things; and,

h.  ACI and David Albertelli used a bad faith application of contractual limits on delay damages in an attempt to avoid the full impact of the delays caused by their scheme.

66.  The "Delayed Payments to Subcontractors Scheme" described above includes violations of the Florida Civil Theft Act, the Minnesota Theft by Contractor Act, the Florida Prompt Payment Act, the Florida R.I.C.O. Act, and the Minnesota Prompt Payment Act, and includes wire fraud, mail fraud, bank fraud, fraud, conversion and intentional breaches of contract.

**Underpayment of Subcontractors Scheme**

67.  On information and belief, David Albertelli and ACI never fully paid some of the Subcontractors for which ACI received payments. David Albertelli and ACI did not provide accountings of the amounts earned by and paid to Subcontractors. However, the Funds have demanded accountings to which they are entitled under the

Contracts.  (See Paragraph 9.6.4 of the General Conditions of the Contracts.)  On at least one occasion on the Savage Project ACI submitted a Payment Application that contradicted prior Payment Applications and attempted to assign negative amounts due subcontractors for whom 298 Fund already paid ACI.

68.    As detailed above, ACI and David Albertelli used fraudulent Payment Applications and other documents, transmitted by wire, mail or common couriers, accepted checks sent by common carrier or the US Mail, and obtained funds from the custody, control and ownership of financial institutions on false pretenses.

69.    The "Underpayment of Subcontractors Scheme" includes violations of the Florida Civil Theft Act, the Minnesota Theft by Contractor Act, the Florida Prompt Payment Act, and the Minnesota Prompt Payment Act, and includes wire fraud, mail fraud, bank fraud, fraud, conversion and intentional breaches of contract.

**Late Delivery of Projects Scheme**

70.    David Albertelli and ACI used the delayed status of the Projects as part of a scheme to extort unwarranted additional compensation from the Funds by holding the completion of the Projects hostage.

71.    The Contract for each Project included a limitation on the amount of liquidated damages that could, under the circumstances reasonably foreseeable to the Funds, be assessed against ACI for delays that it caused.  After ACI delayed a Project through its incompetence and malfeasance to the extent that the liquidated damages limit was or would certainly be met, David Albertelli and ACI did not attempt to recover lost time or avoid future delays by prosecuting the work diligently.  Instead, they intentionally

continued to inflict damages on the Funds while they submitted baseless requests for additional compensation. Their scheme relied on the Funds agreeing to baseless change order requests in order to avoid incurring additional damages due to delays that were not, from ACI's (incorrect) standpoint, subject to liquidated damages assessments. (Nevertheless, the Funds allege below and reserve their rights to pursue all damages caused by ACI's intentional misconduct.)

72.    David Albertelli, ACI, and others also attempted to take advantage of the delayed status and limitation on liability by not adequately staffing the project with supervision, project management, and other overhead costs. Despite not incurring the cost of overhead and supervision that it was required to provide, ACI submitted Payment Applications requesting the full amount of the "General Conditions" costs that include payments for supervision.

73.    David Albertelli caused the funds to incur additional, avoidable damages by preventing ACI from using overtime or otherwise accelerating its work to recover lost time on the Project schedules.

74.    David Albertelli, ACI, and others also used intentional delays on one Project to attempt to extort unwarranted payments on other Projects. ACI slowed its work on the Rochester Project to force 332 Fund to process change order requests on the Six Mile Project that were not properly supported and to which ACI may not have been entitled. On information and belief, David Albertelli instructed ACI employees not to return phone calls from the Funds and subcontractors regarding the Projects in order to prevent problems from being resolved.

75.     The "Late Delivery of Projects Scheme" described above was carried out by David Albertelli and ACI, in part, through the transmission of documents with false pretenses by wire, mail, and courier with the purpose of fraudulently obtaining funds from financial institutions.

76.     The Late Delivery of Projects Scheme includes wire fraud, mail fraud, bank fraud, fraud, conversion, and intentional breaches of contract.

**Unwarranted Change Order Requests Scheme**

77.     David Albertelli, ACI, and others routinely submitted change order requests without providing documentation showing how ACI was entitled to a change order or the amount to which it was entitled in an effort to obtain additional payments to which ACI may not have been due.  ACI instead relied on the threat of further delays to the Projects to force the Funds to accept change orders without proper documentation or the Funds had to perform ACI's job and determine if sufficient support for the Change Order requests could be found.

78.     ACI and David Albertelli threatened to cause further delays to the Six Mile Project unless 332 Fund made an early payment of approximately $310,000 following the submission of the August 2016 Payment Application.  332 Fund made the early payment but ACI did not use the payment to prevent the Six Mile Project from falling further behind schedule.

79.     ACI and David Albertelli intentionally installed materials in the Projects that did not conform to the specifications for the Projects without following the

contractual process for having substitutions of materials approved by the architect. When faced with a demand to correct the materials, ACI and David Albertelli demanded additional compensation to which ACI was not entitled.

80.    This scheme was carried out by David Albertelli and ACI, in part, through the transmission of documents with false pretenses by wire, mail and courier with the purpose of fraudulently obtaining funds from financial institutions.

81.    David Albertelli and ACI also placed fraudulent mechanics liens on the Savage Project and the New Braunfels Project in attempts to coerce the Funds to pay amounts that were not owed to ACI.

82.    The "Unwarranted Change Order Requests Scheme" described above includes violations of the Florida Civil Theft Act, the Minnesota Theft by Contractor Act, the Florida Prompt Payment Act and the Minnesota Prompt Payment Act, and includes wire fraud, mail fraud, bank fraud, fraud, conversion and intentional breaches of contract.

**Conspiracy**

83.    On information and belief, each of the schemes of David Albertelli and ACI included the acts of other persons.

84.    On information and belief, Ken Jones was knowingly involved in each of the schemes.

85.    On information and belief, Amy Butler was knowingly involved in each of the schemes.

86.    On information and belief, others employed by ACI were involved in one or more of the schemes.

87.    On information and belief, David Albertelli and ACI have an ownership interest in and control over some subcontractors that it used on the Projects, including National Framing, LLC, KMM Construction of Florida, LLC, AllWall Interiors, LLC, US Corporate Group/Trust, LLC, and Orion Contracting, LLC, which, on information and belief, are associated with Foundation Management, LLC, and its Manager Brook Kozlowski, who is an associate of David Albertelli and acted on behalf of ACI, and all of whom participated in David Albertelli's and ACI's schemes.

**Prohibited Acts**

88.    ACI and David Albertelli committed acts that are prohibited under RICO:

"§1962. Prohibited Activities:

"(a) **It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity** or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, **to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.** ….
(b) **It shall be unlawful for any person through a pattern of racketeering activity** or through collection of an unlawful debt **to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.**
(c) **It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity** or collection of unlawful debt.
(d) It shall be **unlawful for any person to conspire** to violate any of the provisions of subsection (a), (b), or (c) of this section."   18 U.S.C. §1962 (emphasis added).

**Remedies Available**

89.    RICO , among other things, provides the following remedies:

"§ 1964. Civil remedies

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: **ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments** of any person, including, but not limited to, **prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce**; or **ordering dissolution or reorganization of any enterprise**, making due provision for the rights of innocent persons.

(b) ….

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court **and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, ….**

(d) ….  18 U.S.C. §1964 (emphasis added).

90.    326 Fund and 332 Fund were damaged by ACI's fraud and misappropriation of  the joint checks. 326 Fund and 332 Fund are entitled to treble damages related to the joint check scheme.

91.    The Funds were further damaged by David Albertelli's and ACI's other schemes and are entitled to treble damages arising from those schemes. Those damages include, but are not limited to, costs of correcting ACI's defective work, cost of completing ACI's scope of work, costs of payments to subcontractors, costs of removing or addressing mechanics liens, costs of adding crews to complete work and recover time on schedules, costs of adding supervision to Projects, costs of additional management time for the Projects, costs of legal services, additional interest on loans, additional payments to investors, payments of fines and other costs.

92.     The Funds are entitled to damages incurred by the Subcontractors and treble damages for the claims that were assigned to the Funds by the Subcontractors and to which the Funds are subrogated by payment of the Subcontractors.

93.     Pursuant to 18 U.S.C. § 1964 (a), David Albertelli should be forbidden from participating in the activities of ACI, any subcontractor owned, controlled or influenced by David Albertelli, or any other business in the construction industry. WHEREFORE, on Count I, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs injunctive, compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT II - FLORIDA RICO AND CIVIL REMEDIES FOR CRIMINAL ACTIVITIES

94.     The allegations of paragraphs 18 through 93 above are incorporated as though set forth in full herein as the allegations in this paragraph.

95.     This Count is alleged and contains claims against the Defendants under the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. Chapter 772, and the Florida RICO (Racketeer Influenced and Corrupt Organization) Act, Fla. Stat. Chapter 895, asserting a statutory right of action against Defendants for their conduct of, or

participation in, an enterprise through a pattern of criminal and racketeering activity in violation of Fla. Stat. §§ 772.103 and 895.03.

96.     Defendants are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise ("Corrupt Enterprise"), described in Paragraphs 18 through 93 of this Complaint namely, to obtain and wrongfully retain the proceeds of the schemes described in Paragraphs 31 through 87 above ("Schemes"). They have adapted their Schemes to different construction projects, utilizing new conspirators to assist with their wrongful activities and altering the scope and nature of their activities as necessary to advance the objectives of the Corrupt Enterprise. That Corrupt Enterprise has been structured to operate as a unit, and the participants in the Corrupt Enterprise operate it to accomplish its common purpose and goal of the criminal Schemes.

97.     Defendants, operating out of Florida, are responsible for directing and managing the Schemes. They are associated with the Corrupt Enterprise within the meaning of Fla. Stat. § 772.103(c). At all relevant times, Defendants knew that these proceeds were obtained through wrongful criminal conduct. Defendants committed numerous criminal predicate acts in Florida, which served as the nerve center of the Corrupt Enterprise and the headquarters of its operations.

98.     The Corrupt Enterprise constitutes an association-in-fact enterprise within the meaning of Fla. Stat. §§ 772.102(3), 772.103(3), 895.02(3), and 895.03(3). Defendants participated in the operation or management of the Enterprise.

99.    Defendants participated, directly and indirectly, in the Corrupt Enterprise, including through the conduct, management, or operation of the Enterprise's affairs through a "pattern of criminal activity" within the meaning of Fla. Stat. § 772.102(4) and in violation of Fla. Stat. § 772.103(3), including the incidents of criminal activity set forth in Paragraphs 31 through 87 above. These incidents of criminal activity had the same or similar intents, results, accomplices, victims, or methods of commission or were otherwise interrelated by distinguishing characteristics and were not otherwise isolated incidents.

100.    Defendants participated, directly and indirectly, in the Corrupt Enterprise, including through the conduct, management, or operation of the Corrupt Enterprise's affairs through a "pattern of racketeering activity" within the meaning of Fla. Stat. § 895.02(4) and in violation of Fla. Stat. § 895.03(3), including the incidents of racketeering conduct set forth in Paragraphs 31 through 87 above. These incidents of racketeering conduct had the same or similar intents, results, accomplices, victims, or methods of commission or were otherwise interrelated by distinguishing characteristics and were not otherwise isolated incidents.

101.    Defendants committed a substantial number of related incidents of criminal activity and racketeering conduct over an extended period of time, including the predicate acts enumerated at Paragraphs 31 through 87 above. Each predicate act constitutes "criminal activity" within the meaning of Fla. Stat. § 772.102(1) and "racketeering activity" within the meaning of Fla. Stat. § 895.02(1). Defendants'

commission of predicate acts is part of a general course of business and will continue unless and until they are prevented from committing such acts.

102.    The Funds were, and continue to be, injured by reason of Defendants' violations of Fla. Stat. §§ 772.103(3) and 895.03(3) and the predicate acts, as set forth in Paragraphs 31 – 87 above.

103.    Despite their diligence and efforts, the Funds' discovery of these ongoing injuries was delayed by Defendants' fraudulent concealment activity as set forth in Paragraphs 31 - 87 above.

104.    The injuries to the Funds were a direct, proximate, and reasonably foreseeable result of the violations of Fla. Stat. §§ 772.103(3) and 895.03(3) and the predicate actsenumerated at Paragraphs 31 - 87 above. The Funds have been and will continue to beinjured in an amount to be determined at trial.

105.    Pursuant to Fla. Stat. § 772.104(1), the Funds are entitled to recover treble damages plus costs and attorneys' fees from Defendants.

106.    Pursuant to Fla. Stat.§§ 895.05(1), 895.05(6), the Funds are entitled to an injunction preventing Defendants from committing further violations of Fla. Stat. § 895.03.

WHEREFORE, on Count II, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs injunctive, compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems

just and proper.

## COUNT III -  FLORIDA RICO AND FLORIDA CIVIL REMEDIES FOR CRIMINAL ACTIVITIES – CONSPIRACY

107.    The allegations of paragraphs 94 through 106 above are incorporated as though set forth in full herein as the allegations in this paragraph.

108.    Defendants violated Fla. Stat. §§ 772.103(4) and 895.03(4) by conspiring to violate Fla. Stat. §§ 772.103(3) and 895.03(3), respectively.

109.    In connection with the Corrupt Enterprise described in Paragraphs 31 - 87 above, Defendants agreed to accomplish an unlawful plan to engage in a pattern of criminal and racketeering activity, including the incidents of criminal and racketeering activity set forth in Paragraphs 31 through 87 above.

110.    Defendants agreed to the overall objective of the conspiracy, or each agreed to commit personally at least two acts of criminal and racketeering activity.

111.    As a direct and proximate result of the predicate acts taken in furtherance of the conspiracy, the Funds have been injured in their business or property, as set forth in Paragraphs 90 through 93 above.

112.    Despite their diligence and efforts, the Funds' discovery of these ongoing injuries was delayed by Defendants' fraudulent concealment activity as set forth in Paragraphs 31 through 87 above.

113.    Pursuant to Fla. Stat. § 772.104(1), the Funds are entitled to recover treble damages plus costs and attorneys' fees from Defendants.

114.    Pursuant to Fla. Stat. §§ 895.05(1), 895.05(6), the Funds are entitled to an injunction preventing Defendants from committing further violations of Fla. Stat. § 895.03.

WHEREFORE, on Count III, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs injunctive, compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT IV - CIVIL THEFT (Fla. Stat. 772.11)

115.    Plaintiffs reserve the right to amend this complaint to add a count for Civil Theft based on the misappropriation of the joint checks under Florida Statutes Section 772.11 upon the expiration of the 30-day statutory notice period.

## COUNT V - COMMON LAW FRAUD

116.    The allegations of paragraphs 107 through 114 above are incorporated as though set forth in full herein as the allegations in this paragraph.

117.    Each of the Funds reasonably relied on the false representations of ACI and David Albertelli.

118.    Each of the Funds was damaged by ACI and David Albertelli's false representations.

WHEREFORE, on Count IV, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

### COUNT VI - COMMON LAW CONSPIRACY TO COMMIT FRAUD

119.    The allegations of paragraphs 115 through 118 above are incorporated as though set forth in full herein as the allegations in this paragraph.

120.    David Albertelli, ACI and others conspired to defraud the Funds.

WHEREFORE, on Count V, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

### COUNT VII - CONVERSION v. DAVID ALBERTELLI

121.    The allegations of paragraphs 119 through 120 above are incorporated as though set forth in full herein as the allegations in this paragraph.

122.    David Albertelli converted money that was the property of the Plaintiffs to his possession.

WHEREFORE, on Count VI, Plaintiffs request that this Court provide the following relief:

a) Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b) Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT VIII – THEFT BY CONTRACTOR - MINN. STAT. § 514.02

123.    The allegations of paragraphs 121 through 122 above are incorporated as though set forth in full herein as the allegations in this paragraph.

124.    ACI received payments from the 298 Fund on the Savage Project and from 326 Fund on the Rochester Project that ACI requested for subcontractors who "furnished … labor, skill, material or machinery to the [Projects]".

125.    David Albertelli and ACI failed to use those payments to pay the subcontractors, knew the subcontractors where unpaid, failed to provide a lien waiver under Minnesota Statutes section 514.07, and failed to provide a payment bond.

126.    298 Fund and 326 Fund gave written notice to David Albertelli and ACI that subcontractors were not paid.  On information and belief, subcontractors gave written notice to David Albertelli and ACI that they were not paid.

127.    Minnesota Statutes Section 514.02 provides, in pertinent part:

**Subdivision 1. Proceeds of payments; acts constituting theft.** (a) Proceeds of payments received by a person contributing to an improvement to real estate within the meaning of section 514.01 shall be held in trust by that person for the benefit of those persons who furnished the labor, skill, material, or machinery contributing to the improvement. ….

(b) **If a person fails to use the proceeds of a payment made to that person for the improvement, for the payment for labor, skill, material, and machinery contributed to the improvement**, **knowing that the cost** of the labor performed, or skill, material, or machinery furnished **remains unpaid**, and who **has not furnished the person making such payment either a valid lien waiver under section 514.07, or a payment bond** in the basic amount of the contract price for the improvement, conditioned for the prompt payment to any person entitled thereto for the performance of labor or the furnishing of skill, material, or machinery for the improvement, **shall be guilty of theft** of the proceeds of the payment and is punishable under section 609.52. ….

(c) ….
(d) ….

**Subd. 1a. Civil action. A person injured by a violation of subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney fees**, and receive other relief as determined by the court, including, without limitation, equitable tracing. A civil action under this subdivision may be brought:

(1) against the person who committed the theft under subdivision 1; and

(2) …..

\* \* \*

128.    David Albertelli and ACI are guilty of theft of the proceeds of payments made for improvements on the Savage Project and Rochester Project.

129.    298 Fund was injured by David Albertelli and ACI's theft of the proceeds of payments made for improvements on the Savage Project.

130.    326 Fund was injured by David Albertelli and ACI's theft of the proceeds of payments made for improvements on the Rochester Project.

WHEREFORE, on Count VII, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory damages, together with costs and disbursements, including costs of investigation and reasonable attorney fees, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT IX – BREACH OF SUBCONTRACTS

131.    The allegations of paragraphs 123 through 130 above are incorporated as though set forth in full herein as the allegations in this paragraph.

132.    On information and belief, ACI entered into written subcontracts with each of its Subcontractors.

133.    ACI had a contractual obligation to each Subcontractor to make the payments to that Subcontractor in the amount reflected in the October Payment Application and other payments.

134.    Without just cause or right, ACI has failed and refused to pay the Subcontractors amounts due under the subcontracts for the October Payment Application and other payments, among other breaches.

135.    The Subcontractors were damaged by ACI's breaches.

136.    Certain Subcontractors assigned their claims related to the October Payment Application to 326 Fund, for the Rochester Project, and 332 Fund, for the Six Mile Project. 326 Fund paid certain Subcontractors amounts related to the Rochester Project and 332 Fund paid certain Subcontractors amounts related to the Six Mile Project, and 326 Fund and 332 Fund are subrogated to the corresponding claims of those Subcontractors.

WHEREFORE, on Count IX, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## <u>COUNT X – FLORIDA PROMPT PAYMENT ACT VIOLATIONS</u>

137.    The allegations of paragraphs 131 through 136 above are incorporated as though set forth in full herein as the allegations in this paragraph.

138.    Florida Statutes Section 715.12(2)    ("Florida Prompt Payment Act") requires a contractor to pay its subcontractors within 14 days of receipt of payment for work done by the subcontractor on a construction project in Florida.

139.    ACI received joint check payments for work done by its Subcontractors on the Six Mile Project for the October Payment Application on or before December 2, 2016.  ACI deposited those payments, improperly, on or before December 8, 2016.

140.    ACI did not pay certain of its Subcontractors on or before December 16, 2016.

141.    ACI violated the Florida Prompt Payment Act.

142.    The Subcontractors are entitled to statutory damages, in addition to receipt of payments, under the Florida Prompt Payment Act.

143.    The Subcontractors have assigned the claims for statutory damages to 332 Fund.

WHEREFORE, on Count X, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XI – MINNESOTA PROMPT PAYMENT ACT VIOLATIONS

144.   The allegations of paragraphs 131 through 136 above are incorporated as though set forth in full herein as the allegations in this paragraph.

145.   Minnesota Statutes Section 337.10 subdivision 3 ("Minnesota Prompt Payment Act") requires a contractor to pay its subcontractors within 10 days of receipt of payment for work done by the subcontractor on a construction project in Minnesota.

146.   ACI received joint check payments for work done by its Subcontractors on the Rochester Project for the October Payment Application on or before December 2, 2016.  ACI deposited those payments, improperly, on or before December 8, 2016.

147.   ACI did not pay certain of its Subcontractors on or before December 12, 2016.

148.   ACI violated the Minnesota Prompt Payment Act.

149.   The Subcontractors are entitled to statutory damages, in addition to receipt of payments, under the Minnesota Prompt Payment Act.

150.   The Subcontractors have assigned the claims for statutory damages to 326 Fund.

WHEREFORE, on Count XI, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XII -BREACH OF CONTRACT – SAVAGE

151.    The allegations of paragraphs 144 through 150 above are incorporated as though set forth in full herein as the allegations in this paragraph.

152.    ACI owes 298 Fund the duties set forth in the Savage Contract, implied therein and implied as a matter of law.

153.    ACI has breached many of the duties that it owes 298 Fund under the Savage Contract.  ACI's breaches include but are not limited to the following:

    a.  late delivery of buildings;

    b.  defective construction;

    c.  failing to comply with applicable codes and other laws;

    d.  improper design of certain elements;

    e.  failing to provide enough qualified supervisory personnel;

    f.  failing to remedy defaults;

    g.  failing to comply with applicable laws;

    h.  failing to pay amounts due;

    i.  failing to perform in good faith and with fair dealing;

    j.  failing to fulfill other contractual obligations; and

    k.  ACI and David Albertelli recorded a mechanics lien against the Savage Project and related real property that is grossly overstated, fraudulent, unenforceable and a breach of the Savage Contract.

154.     298 Fund has been damaged by and continues to be damaged by ACI's breaches.

155.     298 Fund has performed all obligations required of it under the Savage Contract which were not excused.

WHEREFORE, on Count XII, Plaintiffs request that this Court provide the following relief:

a) Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b) Grant Plaintiffs their attorneys' fees and costs;

c) Declare the mechanics lien recorded by ACI and David Albertelli against the Savage Project to be void and unenforceable;

d) Order ACI and David Albertelli to immediately release the mechanics lien recorded by them against the Savage Project; and

e) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

### **COUNT XIII - BREACH OF EXPRESS WARRANTY – SAVAGE**

156.     The allegations of paragraphs 151 through 155 above are incorporated as though set forth in full herein as the allegations in this paragraph.

157.     ACI owes 298 Fund express warranties as set forth in the Savage Contract. Those warranties include:

a.   Materials and equipment would be of good quality;

b.  The work will conform to the Contract Documents, including plans and specifications;

c.  The work will be free of defects not permitted by the Contract Document;

d.  Title to work covered in a Payment Application would pass no later than when payment was made; and

e.  Work paid for by 298 Fund would be free of claims and liens of Subcontractors before ACI submitted the next Payment Application;

158.  ACI has breached one or more of those warranties.

159.  298 Fund has been damaged by and continues to be damaged by ACI's breaches of warranties.

WHEREFORE, on Count XIII, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XIV - BREACH OF IMPLIED WARRANTY – SAVAGE

160.  The allegations of paragraphs 156 through 159 above are incorporated as though set forth in full herein as the allegations in this paragraph.

161.  ACI owes 298 Fund warranties implied under the law.  The implied warranties include:

    a.   An implied warranty of workmanlike quality;

    b.   An implied warranty of fitness for a particular purpose;

    c.   An implied warranty of merchantability; and

    d.   An implied warranty of habitability.

162.    ACI has breached one or more of those warranties.

163.    298 Fund has been damaged by and continues to be damaged by ACI's breaches of warranties.

WHEREFORE, on Count XIV, Plaintiffs request that this Court provide the following relief:

    a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

    b)  Grant Plaintiffs their attorneys' fees and costs; and

    c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XV - PROFESSIONAL NEGLIGENCE – SAVAGE

164.    The allegations of paragraphs 160 through 163 above are incorporated as though set forth in full herein as the allegations in this paragraph.

165.    ACI owes 298 Fund a duty to provide certain professional design service related to the Savage Project.

166.    ACI owed 298 Fund a duty to provide those design service in conformance with the Savage Contract and with the skill and care normally employed by

professional designers performing similar design and other professional services for similar projects in Minnesota.

167.    ACI provided some of its professional services in breach of the applicable standard of care, including but not limited to ACI's design of certain foundations.

168.    ACI's breaches caused 298 Fund to be damaged.

WHEREFORE, on Count XV, Plaintiffs request that this Court provide the following relief:

a) Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b) Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

<u>**COUNT XVI - BREACH OF CONTRACT – ROCHESTER**</u>

169.    The allegations of paragraphs 144 through 150 above are incorporated as though set forth in full herein as the allegations in this paragraph.

170.    ACI owes 326 Fund the duties set forth in the Rochester Contract, implied therein and implied as a matter of law.

171.    ACI has breached many of the duties that it owes 326 Fund under the Rochester Contract.  ACI's breaches include but are not limited to the following:

a. late delivery of buildings;

b. defective construction;

c. failing to comply with applicable codes and other laws;

    d.  improper design of certain elements;

    e.  failing to provide enough qualified supervisory personnel;

    f.  failing to remedy defaults;

    g.  failing to comply with applicable laws;

    h.  failing to pay amounts due;

    i.  failing to perform in good faith and with fair dealing; and

    j.  failing to fulfill other contractual obligations.

172.    326 Fund has been damaged by and continues to be damaged by ACI's breaches.

173.    326 Fund has performed all obligations required of it under the Rochester Contract which were not excused.

WHEREFORE, on Count XVI, Plaintiffs request that this Court provide the following relief:

    a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

    b)  Grant Plaintiffs their attorneys' fees and costs; and

    c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

### COUNT XVII -  BREACH OF EXPRESS WARRANTY – ROCHESTER

174.    The allegations of paragraphs 169 through 173 above are incorporated as though set forth in full herein as the allegations in this paragraph.

175.    ACI owes 326 Fund express warranties as set forth in the Rochester Contract.  Those warranties include:

    a.   Materials and equipment would be of good quality;

    b.   The work will conform to the Contract Documents, including plans and specifications;

    c.   The work will be free of defects not permitted by the Contract Document;

    d.   Title to work covered in a Payment Application would pass no later than when payment was made; and

    e.   Work paid for by 326 Fund would be free of claims and liens of Subcontractors before ACI submitted the next Payment Application;

176.    ACI has breached one or more of those warranties.

177.    326 Fund has been damaged by and continues to be damaged by ACI's breaches of warranties.

WHEREFORE, on Count XVII, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XVIII - BREACH OF IMPLIED WARRANTY – ROCHESTER

178.    The allegations of paragraphs 174 through 177 above are incorporated as though set forth in full herein as the allegations in this paragraph.

179.    ACI owes 326 Fund warranties implied under the law.   The implied warranties include:

      a.   An implied warranty of workmanlike quality;

      b.   An implied warranty of fitness for a particular purpose;

      c.   An implied warranty of merchantability; and

      d.   An implied warranty of habitability.

180.    ACI has breached one or more of those warranties.

181.    326 Fund has been damaged by and continues to be damaged by ACI's breaches of warranties.

WHEREFORE, on Count XVIII, Plaintiffs request that this Court provide the following relief:

a) Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b) Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XIX - PROFESSIONAL NEGLIGENCE – ROCHESTER

182.    The allegations of paragraphs 178 through 181 above are incorporated as though set forth in full herein as the allegations in this paragraph.

183.    ACI owes 326 Fund a duty to provide certain professional design and other professional services related to the Rochester Project.

184.    ACI owed 326 Fund a duty to provide those design service in conformance with the Rochester Contract and with the skill and care normally employed by professional designers performing similar professional services for similar projects in Minnesota.

185.    ACI provided some of its professional services in breach of the applicable standard of care.

186.    ACI's breaches caused 326 Fund to be damaged.

WHEREFORE, on Count XIX, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XX - BREACH OF CONTRACT – SIX MILE

187.    The allegations of paragraphs 137 through 143 above are incorporated as though set forth in full herein as the allegations in this paragraph.

188.    ACI owes 332 Fund the duties set forth in the Six Mile Contract, implied therein and implied as a matter of law.

189.    ACI has breached many of the duties that it owes 332 Fund under the Six Mile Contract.  ACI's breaches include but are not limited to the following:

    a.  late delivery of buildings;

    b.  defective construction;

    c.  failing to comply with applicable codes and other laws;

    d.  improper design of certain elements;

    e.  failing to provide enough qualified supervisory personnel;

    f.  failing to remedy defaults;

    g.  failing to comply with applicable laws;

    h.  failing to pay amounts due;

    i.  failing to perform in good faith and with fair dealing; and

    j.  failing to fulfill other contractual obligations.

190.    332 Fund has been damaged by and continues to be damaged by ACI's breaches.

191.    332 Fund has performed all obligations required of it under the Six Mile Contract which were not excused.

WHEREFORE, on Count XX, Plaintiffs request that this Court provide the following relief:

    a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

    b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XXI- BREACH OF EXPRESS WARRANTY – SIX MILE

192.    The allegations of paragraphs 187 through 191 above are incorporated as though set forth in full herein as the allegations in this paragraph.

193.    ACI owes 332 Fund express warranties as set forth in the Six Mile Contract.  Those warranties include:

    a.   Materials and equipment would be of good quality;

    b.   The work will conform to the Contract Documents, including plans and specifications;

    c.   The work will be free of defects not permitted by the Contract Document;

    d.   Title to work covered in a Payment Application would pass no later than when payment was made; and

    e.   Work paid for by 332 Fund would be free of claims and liens of Subcontractors before ACI submitted the next Payment Application.

194.    ACI has breached one or more of those warranties.

195.    326 Fund has been damaged by and continues to be damaged by ACI's breaches of warranties.

WHEREFORE, on Count XXI, Plaintiffs request that this Court provide the following relief:

    a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XXII - BREACH OF IMPLIED WARRANTY – SIX MILE

196.    The allegations of paragraphs 192 through 195 above are incorporated as though set forth in full herein as the allegations in this paragraph.

197.    ACI owes 332 Fund warranties implied under the law.   The implied warranties include:

a.   An implied warranty of workmanlike quality;

b.   An implied warranty of fitness for a particular purpose;

c.   An implied warranty of merchantability; and

d.   An implied warranty of habitability.

198.    ACI has breached one or more of those warranties.

199.    332 Fund has been damaged by and continues to be damaged by ACI's breaches of warranties.

WHEREFORE, on Count XXII, Plaintiffs request that this Court provide the following relief:

a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b)  Grant Plaintiffs their attorneys' fees and costs; and

c)  Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XXIII - PROFESSIONAL NEGLIGENCE – SIX MILE

200.    The allegations of paragraphs 196 through 199 above are incorporated as though set forth in full herein as the allegations in this paragraph.

201.    ACI owes 332 Fund a duty to provide certain professional design and other professional services related to the Six Mile Project.

202.    ACI owed 332 Fund a duty to provide those design service in conformance with the Six Mile Contract and with the skill and care normally employed by professional designers performing similar services for similar projects in Florida.

203.    ACI provided some of its professional services in breach of the applicable standard of care.

204.    ACI's breaches caused 332 Fund to be damaged.

WHEREFORE, on Count XXI, Plaintiffs request that this Court provide the following relief:

a) Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b) Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XXIV - BREACH OF CONTRACT – NEW BRAUNFELS

205.    The allegations of paragraphs 131 through 136 above are incorporated as though set forth in full herein as the allegations in this paragraph.

206.    ACI owes 306 Fund the duties set forth in the New Braunfels Contract, implied therein and implied as a matter of law.

207.    ACI has breached many of the duties that it owes 306 Fund under the New Braunfels Contract.  ACI's breaches include but are not limited to the following:

    a.  late delivery of buildings;

    b.  defective construction;

    c.  failing to comply with applicable codes and other laws;

    d.  improper design of certain elements;

    e.  failing to provide enough qualified supervisory personnel;

    f.  failing to remedy defaults;

    g.  failing to comply with applicable laws;

    h.  failing to pay amounts due;

    i.  failing to perform in good faith and with fair dealing; and

    j.  failing to fulfill other contractual obligations.

208.    306 Fund has been damaged by and continues to be damaged by ACI's breaches.

209.    306 Fund has performed all obligations required of it under the New Braunfels Contract which were not excused.

WHEREFORE, on Count XXIV, Plaintiffs request that this Court provide the following relief:

    a)  Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

    b)  Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XXV - BREACH OF EXPRESS WARRANTY – NEW BRAUNFELS

210.    The allegations of paragraphs 205 through 209 above are incorporated as though set forth in full herein as the allegations in this paragraph.

211.    ACI owes 306 Fund express warranties as set forth in the New Braunfels Contract.  Those warranties include:

a.  Materials and equipment would be of good quality;

b.  The work will conform to the Contract Documents, including plans and specifications;

c.  The work will be free of defects not permitted by the Contract Document;

d.  Title to work covered in a Payment Application would pass no later than when payment was made; and

e.  Work paid for by 306 Fund would be free of claims and liens of Subcontractors before ACI submitted the next Payment Application;

212.    ACI has breached one or more of those warranties.

213.    306 Fund has been damaged by and continues to be damaged by ACI's breaches of warranties.

WHEREFORE, on Count XXV, Plaintiffs request that this Court provide the following relief:

a) Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b) Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

## COUNT XXVI - BREACH OF IMPLIED WARRANTY – NEW BRAUNFELS

214.    The allegations of paragraphs 210 through 213 above are incorporated as though set forth in full herein as the allegations in this paragraph.

215.    ACI owes 306 Fund warranties implied under the law.   The implied warranties include:

a.   An implied warranty of workmanlike quality;

b.   An implied warranty of fitness for a particular purpose;

c.   An implied warranty of merchantability; and

d.   An implied warranty of habitability.

216.    ACI has breached one or more of those warranties.

217.    306 Fund has been damaged by and continues to be damaged by ACI's breaches of warranties.

WHEREFORE, on Count XXVI, Plaintiffs request that this Court provide the following relief:

a) Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b) Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

### COUNT XXVII - PROFESSIONAL NEGLIGENCE – NEW BRAUNFELS

218.    The allegations of paragraphs 214 through 217 above are incorporated as though set forth in full herein as the allegations in this paragraph.

219.    ACI owes 306 Fund a duty to provide certain professional design and other professional services related to the New Braunfels Project.

220.    ACI owed 306 Fund a duty to provide those services in conformance with the New Braunfels Contract and with the skill and care normally employed by professional designers performing similar services for similar projects in Texas.

221.    ACI provided some of its design services and other professional services in breach of the applicable standard of care.

222.    ACI's breaches caused 306 Fund to be damaged.

WHEREFORE, on Count XXVII, Plaintiffs request that this Court provide the following relief:

a) Grant Plaintiffs compensatory, statutory, punitive, and other damages as shall be proven at trial;

b) Grant Plaintiffs their attorneys' fees and costs; and

c) Grant such other and further relief in favor of the Plaintiffs as this Court deems just and proper.

Respectfully Submitted,

**DUANE MORRIS LLP**
*Trial Counsel for Plaintiffs*
*CONTINENTAL 332 FUND, LLC,*
*CONTINENTAL 298 FUND LLC,*
*CONTINENTAL 306 FUND LLC, and*
*CONTINENTAL 326 FUND LLC,*
200 South Biscayne Boulevard, Suite 3400
Miami, Florida 33131
Tel: (305) 960-2318
Fax: (305) 397-1692

By: _____
    Alvin D. Lodish, Esq.
    Florida Bar No.: 622273
    alodish@duanemorris.com

Admission *pro hac* vice pending:
Larry Selander (IL - ARDC No. 2546183)
Jeffrey L. Hamera (IL - ARDC No. 6225113)
DUANE MORRIS LLP
190 S. LaSalle St., Suite 3700
Chicago, IL  60603
Phone: 312-499-6700
lselander@duanemorris.com
jlhamera@duanemorris.com

DM1\7510369.2

59

## VERIFICATION

Under penalties as provided by law, pursuant to 28 U.S.C. §1746, the undersigned certifies that he is authorized to make this Verification, and that the statements set forth in the foregoing "Verified Complaint for Damages Under R.I.C.O. and Other Relief" are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated: January 23, 2017

Angelo Eguizabal
Vice President Construction
Continental Properties Company, Inc.,
as Manager of
Continental 298 Fund LLC
Continental 306 Fund LLC
Continental 326 Fund LLC
Continental 332 Fund LLC

DM1\7508225.1