CONTINENTAL 332 FUND LLC,                    Case No. 2:17-cv-000041-SPC-MRM
CONTINENTAL 298 FUND LLC,
CONTINENTAL 306 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 347 FUND LLC,
CONTINENTAL 355 FUND LLC,
CONTINENTAL 342 FUND LLC and
CONTINENTAL 245 FUND LLC,

     Plaintiffs,

vs.

DAVID ALBERTELLI, and
ALBERTELLI CONSTRUCTION INC.,
GEORGE ALBERTELLI, WESTCORE
CONSTRUCTION, LLC (Del.),
WESTCORE CONSTRUCTION, L.L.C.
(Nev.), FOUNDATION MANAGEMENT
LLC, NATIONAL FRAMING, LLC,
KMM CONSTRUCTION LLC, MFDC
LLC, TEAM CCR, LLC, BROOK
KOZLOWSKI, JOHN SALAT, KEVIN
BURKE, ANGELO EGUIZABAL,
BRAVO21, LLC, KERRY HELTZEL,
AMY BUTLER, and US CONSTRUCTION
TRUST,

     Defendants.

_____/

### DEFENDANT DAVID ALBERTELLI'S MOTION TO DISMISS
### SECOND AMENDED VERIFIED COMPLAINT AND MOTION TO STRIKE

     Defendant David Albertelli ("Albertelli") hereby moves, pursuant to Fed. R. Civ. P.

12(b)(6), for entry of an order dismissing the Plaintiffs' Second Amended Verified

Complaint for Injunctive Relief and Damages Under R.I.C.O. and Other Relief (the "Second

Amended Complaint"), and pursuant to Rule 12(f) an order striking impertinent allegations therein, and in support hereof submits the following introduction and supporting memorandum of law.

## INTRODUCTION

David Albertelli moves to dismiss Counts I, II and III of the Second Amended Complaint because plaintiffs' allegations fail to state a claim under the federal and Florida RICO laws and because they do not meet the minimum pleading standards under Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

The Second Amended Complaint is the plaintiffs' third attempt to state an actionable RICO claim against David Albertelli and Albertelli Construction, Inc. ("ACI"). In an effort that fails to address the fundamental flaws in their RICO claims, plaintiffs' Second Amended Complaint adds sixteen new defendants and seventeen new counts involving four more construction projects in addition to the four that were already the subject of the Amended Complaint. The Second Amended Complaint, however, does not plead a viable RICO claim.

The prior attempts to plead a viable claim were transparent in attempting to fit the square peg of a breach of contract dispute into the round hole of a RICO racketeering conspiracy. Plaintiffs, in order words, have "taken a simple breach of contract or garden-variety fraud claim and attempted to boot-strap it into a 'federal case' by couching the allegations in RICO statutory language." *Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Sav. & Loan Ass'n*, 873 F.2d 1401, 1404 (11th Cir. 1989).

Plaintiffs now attempt to bolster their RICO claims by adding allegations of a commercial bribery conspiracy involving an employee of Continental Properties Company,

Inc. ("Continental").[1]  Unfortunately for the plaintiffs, these allegations fail to state a claim under RICO, since there is no "commercial bribery" predicate act under controlling law.

Plaintiffs also added new fraud allegations concerning a newly added defendant, Westcore Construction, LLC ("Westcore").  While some of the new allegations – unlike plaintiffs' previous attempts – come closer to alleging actionable fraud, they are far too few to show a "pattern of racketeering" as required to state a claim under RICO.

Most of the activity alleged in Count I relates to the plaintiffs' attempts to convert garden-variety communications between the parties on several construction projects into "fraud" without pleading the "who, when, where, how, and why"[2] of the alleged fraud. Without pleading these essential elements of fraud, it is impossible for this defendant (or any of the defendants) to understand what "fraud" he is alleged to have committed in order to attempt to defend these allegations.

Plaintiffs continue to fail to allege mail fraud and wire fraud in accordance with the applicable heightened pleading standard.  What few fraud allegations arguably do meet the *Ambrosia Coal*[3] standard do not amount to any plausible RICO conspiracy, much less one lasting for any period of time that would satisfy the "continuity" requirement.  Further, plaintiffs fail to allege actionable RICO "injury to business or property."

As set forth below in Sections I through III of this motion to dismiss, David Albertelli contends that:

---

[1] Continental is referred to in the Second Amended Complaint as a "developer, owner and operator of apartment complexes and other properties that is the managing member for each of the Plaintiffs."  Second Amended Complaint at 3 n.1.  Continental is the real party in interest in this action although the construction contracts were entered into for each project by the referenced named plaintiff, each of which is a single-asset entity established for the sole purpose of holding title to the real estate on which each project was built.

[2] *DeBacco v. DeBacco*, 2012 WL 3609844, at *9 (M.D. Fla. August 6, 2012) (Chappell, J.)

[3] *See infra* at 10-11.

- Counts I – III fail to allege an actionable "pattern of racketeering" under RICO

- Counts I – III fail to allege actionable "injury to business or property" under RICO; and

- Counts I – III fail to show that any claimed racketeering activity was the "but-for" and proximate cause of any injury allegedly suffered.

Plaintiffs' RICO claims fail for all the reasons stated above. But they also fail on the "big picture" level. Plaintiffs rely on dissimilar events on multiple construction projects which are frankly consistent with documentation issues typical on any construction project involving over 20 subcontractors. No theory is proposed to tie these run-of-the-mill events together into any coherent "master plan" that had any plausible chance of success in the context of fixed-price contracts with liquidated damages penalties for late performance. The idea that a general contractor, while incurring daily costs to perform, would slow roll its work on a construction project on which the owner is asserting liquidated damages and withholding payment (*see, e.g.,* Second Amended Complaint, ¶¶ 176 & 179) defies logic.

Plaintiffs' claims all derive from their contractual relationship with ACI on five separate construction projects and with Westcore on three other construction projects. Continental's payment practices (or, more accurately, its *failure-to-pay* practices) forced both ACI and Westcore, into a "heads-I-win-tails-you lose" position vis-à-vis Continental on these projects. Not only was Continental <u>not</u> defrauded into paying for unwarranted change orders; it deliberately failed to process and pay legitimate change orders and deliberately withheld regular monthly payments from ACI and Westcore, contrary to the contract's payment terms.

By separate motion, ACI addresses the deficiencies in counts V, VI, VIII, XII – XXVII, and XL – XLIII. *See* Defendant Albertelli Construction, Inc.'s Motion to Dismiss

Second Amended Complaint, filed on even date herewith. David Albertelli joins ACI's motion to dismiss as it relates to counts V, VI and VIII. ACI joins in this motion and ACI and David Albertelli adopt the following arguments from Defendant George Albertelli's Motion to Dismiss the Second Amended Complaint ("G. Albertelli Motion"): (1) Counts I – III fail to allege a RICO enterprise (*Id.*, § II); (2) Count I does not allege specific violations of 18 U.S.C. § 1962 (*Id.*, § IV.C.1.); (3) Plaintiffs improperly lumped all defendants together (*Id.*, § IV.D.1.); and (4) Counts I – III, V and VI should be dismissed as an improper "shotgun pleading" (*Id.*, § V).

By this motion, David Albertelli seeks dismissal of Counts I through III with prejudice and dismissal of plaintiffs' remaining pendent state law-based claims without prejudice for lack of jurisdiction. Alternatively, if permitted to amend, plaintiffs should be required to file a RICO Case Statement with their next amended pleading.[4] *See* G. Albertelli Motion at 22-24.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

In determining whether to dismiss a complaint under Rule 12(b)(6), a court must view all allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). Rule 12(b)(6) works alongside the pleading requirement set out in Fed. R. Civ. P. 8(a)(2), which requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Chaparro*, 693 F.3d at 1337. A complaint that provides labels and

---

[4] The service of this motion and ACI's companion motion to dismiss tolls the time for defendants to serve their responsive pleadings to plaintiffs' Second Amended Complaint until 14 days after notice of the court's action or 14 days after an amended pleading or more definite statement is served. *See* Fed.R.Civ.P. 12(a)(4). Accordingly, defendants reserve the right to serve their answers and counterclaims until such time as the court rules upon this motion or Plaintiffs serve a third amended complaint.

conclusions or a formulaic recitation of the elements of a cause of action is not adequate to survive a Rule 12(b)(6) motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, to survive a motion to dismiss based on Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief *that is plausible* on its face. *Kivisto v. Miller, Canfield, Paddock and Stone, PLC*, 413 Fed. App'x 136, 138 (11th Cir. 2011). If allegations are more conclusory than factual, the court does not have to assume their truth. *See Mamani v. Berzain*, 654 F.3d 1148, 1153-54 (11th Cir. 2011).

In the context of a civil RICO claim, a complaint "must present sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 55). Pleading injury "at only the highest order of abstraction" and without "concrete facts or data" is not sufficient. *Id.* at 709-710.

To establish a prima facie civil RICO claim, a plaintiff must establish three overarching elements: (1) that the defendant engaged in a pattern of "racketeering activity" under 18 U.S.C. § 1962; (2) that the plaintiff suffered injury to business or property; and (3) that the defendant's racketeering activity was the but-for and proximate cause of the plaintiffs' injuries. *See Simpson*, 744 F.3d 705, 712; *see also Ray v. Spirit Airlines, Inc.*, 838 F.3d 1340, 1349 (11th Cir. 2016). Plaintiffs' Second Amended Complaint satisfies none of these elements.

In part I, this memorandum addresses the failure of the Second Amended Complaint to allege an actionable "pattern of racketeering activity." In part II, the failure of the Second Amended Complaint to allege cognizable RICO injury is discussed. Finally, in part III, the

lack of allegations of concrete facts to show but-for and proximate cause of the plaintiffs' alleged injuries is briefed.

## I.  COUNT I OF PLAINTIFFS SECOND AMENDED COMPLAINT FAILS TO PROPERLY ALLEGE A "PATTERN OF RACKETEERING" UNDER RICO

To state a prima facie civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must establish, *inter alia,* that "the defendant committed a pattern of RICO predicate acts under 18 U.S.C. § 1962[.]" *Simpson*, 744 F.3d 702, 704 (11th Cir. 2014). Stated another way, the plaintiff must prove four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bahamas Sales Associate, LLC v. Byers*, 2017 WL 3782804, at *6 (M.D. Fla. August 31, 2017); *see also Lockheed Martin Corp. v. Boeing Co.*, 357 F.Supp.2d 1350, 1371 (M.D. Fla. 2005) (stating "[a]ll claims under § 1962 must allege 'a pattern of racketeering activity.'").

Plaintiffs' Second Amended Complaint fails to meet the latter two of these four elements.[5]

### A.  Plaintiffs' Complaint Fails to Properly Allege Sufficient "Predicate Acts" under RICO

#### 1.  Most of the Predicate Acts Alleged in the Second Amended Complaint are not "Racketeering Activity" and Should Therefore be Stricken

Section 1961(1) defines "racketeering activity" to include a number of state and federal criminal offenses, including any act indictable under 18 U.S.C. section 1341 (mail fraud) and 18 U.S.C. section 1343 (wire fraud). Section 1961(1) also defines "racketeering activity" to include any act involving crimes such as murder, kidnapping, gambling, robbery,

---

[5] The Second Amended Complaint also fails to meet the "enterprise" element, as argued persuasively in defendant George Albertelli's motion to dismiss. *See* G. Albertelli Motion at 5-7.

bribery and extortion which are "chargeable under State law and punishable by imprisonment for more than one year[.]" *See id.* § 1961(1)(A). Predicate acts are, by definition, crimes.

The Second Amended Complaint lists numerous acts purported to be predicate acts supporting the plaintiffs' RICO claim, but which are not crimes and are not predicate acts:

- Florida U.C.C. – Negotiable Instruments (Fla. Stat. § 673.1011 et seq.);
- Minnesota Theft by Contractor Act (Minn. Stat. § 514.02);
- Florida Civil Theft Act (Fla. Stat. § 772.22);
- Florida Prompt Payment Act (Fla. Stat. § 715.12(2));
- Minnesota Prompt Payment Act (Minn. Stat. § 337.10 subdiv. 3);
- Texas Prompt Payment Act (Tex. Prop. Code Ann. § 28.002);
- Colorado Theft Act (C.R.S.A. § 18-4-401 et seq.);
- perjury on sworn statements;
- violations of constructive trusts; and
- "other illegal acts."

*See id.,* ¶ 64. None of these statutes or activities are in any way referenced in § 1961(1) either expressly or by implication as predicate acts of "racketeering activity." Most are not even criminal statutes. These allegations, therefore, should be stricken.

Other allegations of predicate acts are sprinkled throughout the Second Amended Complaint which likewise are not listed as predicate acts in § 1961(1):

- nonpayment of subcontractors (¶ 133);
- submitting change order requests without proper documentation (¶ 137);
- a request for early payment which allegedly was not spent on bringing the project current (¶ 138);
- installation of non-approved substitute materials (¶ 139);
- fraudulent mechanic's liens (¶ 141); and

- "fraud, conversion and intentional breaches of contract." (¶¶ 144, 162, 166 & 174).

These allegations are not tied to any of the crimes listed as predicate acts in § 1961(1), and therefore should be stricken. Striking the above allegations leaves plaintiffs with their various fraud claims and their commercial bribery claim, addressed below.

### 2. Plaintiffs' Commercial Bribery Allegations Fail to State a Claim for a RICO Predicate Act

As noted above, § 1961(1)(A) defines "racketeering activity" to include any act involving the crime of bribery "which is chargeable under State law and punishable by imprisonment for more than one year[.]" In order to properly allege a state law bribery offense as a RICO predicate act, the plaintiff must "reference a state statute from which it can be ascertained . . . what elements must be satisfied to establish a violation" and whether a violation of the statute is punishable by imprisonment for more than one year. *Lockheed Martin Corp.*, 357 F.Supp.2d at 1377. This requirement is to provide fair notice to the defendant of the elements of the plaintiffs' claim. *See id.* at 1375.

In their Second Amended Complaint, plaintiffs reference no such Florida criminal statute. Moreover, the only statute in Florida which purports to criminalize bribery of "[a]n agent or employee of another" (as opposed to a public official) has been declared unconstitutional by the Florida Supreme Court. *See Roque v. State*, 664 So.2d 928, 930 (Fla. 1995).[6] As such, the Second Amended Complaint fails to allege a predicate act involving bribery "which is chargeable under State law and punishable by imprisonment for more than

---

[6] *Roque* technically invalidated Fla. Stat. § 838.15, which purported to criminalize "commercial bribe receiving." However, the basis for the court's decision was that statute's use of the term "common law duty," which the court found unconstitutionally vague. *See Roque*, 664 So.2d at 930. Fla. Stat. § 838.16, which purports to criminalize commercial bribery, incorporates by reference § 838.15(1) and its reference to "common law duty" that the court found unconstitutionally vague in *Roque*. Therefore, the logic of the *Roque* decision applies with equal force to any purported violation of § 838.16.

one year" because no such criminal statute exists in Florida. *See also Helicopter Support Systems, Inc. v. Hughes Helicopters, Inc.*, 1984 WL 3238 (M.D. Fla. June 22, 1984) (stating "Plaintiff has presented no authority for the proposition that commercial bribery constitutes a predicate criminal offense under RICO.").

Accordingly, Count I, to the extent it purports to state a RICO claim based on allegations of bribery of Angelo Eguizabal, an employee of Continental, is due to be dismissed with prejudice as a matter of law.

### 3. Plaintiffs' Claims of Mail Fraud and Wire Fraud are not Properly Alleged

With very few exceptions (discussed in part I.B. below), plaintiffs' remaining claims of mail fraud and wire fraud are not properly pled as a matter of law. "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property, and (2) uses the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir. 1991). RICO claims asserting predicate acts of mail fraud and wire fraud "must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard, which requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 11th Cir. 2010) (quoting Fed.R.Civ.P. 9(b)). As noted by this court, pleading a predicate act of mail or wire fraud with particularity "requires the complaint to answer the familiar questions of 'who, when, where, how, and why.'" *DeBacco v. DeBacco,* 2012 WL 3609844, at *9 (M.D. Fla. Aug. 6, 2012) (quoting *Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F.Supp.2d 1276, 1282 (M.D. Fla. 1999)).

The Eleventh Circuit has outlined four separate elements that must be pled with particularity to state a civil RICO claim based on fraud, as follows:

> . . . (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) **what the Defendants gained by the alleged fraud.**

*Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (citations omitted) (emphasis added). In addition, in a case involving more than one defendant, the complaint "'should inform each defendant of the nature of his alleged participation in the fraud.'" *Id.* at 1317 (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)). Thus, it is improper in a civil RICO count to lump all defendants together with generalized allegations of fraud. *See id.*

Plaintiffs' Second Amended Complaint comes nowhere close to meeting this standard. Although some examples are cited, with few exceptions they are woefully deficient on details such as "the precise statements made", the time, place and person making the statements, how the statements were misleading or what defendants' gained by the alleged misrepresentations. The following discussion will address first the alleged misrepresentations made with respect to Westcore, followed by the alleged misrepresentations made with respect to ACI.

### Westcore's Alleged Misrepresentations

Prominent among the fraud allegations concerning Westcore are the allegations regarding an entity called "Team CCR." *See* Second Amended Complaint, ¶¶ 109-112. Four full paragraphs are devoted to a discussion of this entity, but noticeably absent from this

discussion are the specific representations allegedly made, when they were made and who made the representations. All the complaint tells the reader is that "Team CCR . . . submitted its payment information using Textura for the earthwork it claimed to be performing. Team CCR did not list any subcontractors, thereby representing it was performing the earthwork with its own forces." *See id.*, ¶ 109. The "precise statements" made are not provided, only the plaintiffs' characterization of those statements.

Similarly vague and insufficient allegations appear in Count I related to Westcore:

- Paragraph 130 alleges Westcore split subcontracts to "create a deceptive framework for keeping bond premium payments", but provides no details regarding which subcontracts allegedly were split, by whom, when and for what specific benefit.

- Paragraph 131 alleges Westcore "split subcontracts into multiple subcontracts and purchase orders to artificially reduce the subcontract amounts below the reporting threshold" for lien waivers, but again provides no details as to which subcontracts were split, by whom, when and for what benefit.

- Paragraph 133 alleges Westcore requested and obtained funds from Continental to pay a carpenter bi-weekly rather than monthly, but that Westcore failed to pay the carpentry subcontractor. Once again, no dates, amounts or specifics of the representations are provided.

*ACI's Alleged Misrepresentations*

The allegations directed to ACI for its projects are similarly devoid of specifics or, in some cases, the specifics provided fail to show any fraud. Following is a sampling:

- Paragraph 137 alleges that David Albertelli and ACI (and unspecified "others") routinely submitted change order requests without providing proper documentation "in an effort to obtain additional payments to which ACI <u>may not have been due</u>." (Emphasis added). Not only is the allegation equivocal in terms of any allegation of damage, but not one example is given of such a change order.

- Paragraph 138 claims that ACI and David Albertelli demanded an early payment of $310,000 following its August 2016 payment application on the Six Mile project. No details are given about this demand, who made it or how plaintiffs were misled.

- Paragraph 139 alleges that ACI and David Albertelli "intentionally installed" non-conforming materials in the projects without permission and then demanded additional compensation to replace them. However, no specific examples are given, nor is there any allegation that ACI or David Albertelli were actually paid additional compensation under the circumstances alleged.

There are too many purported fraud allegations in the Second Amended Complaint to address each of them in this memorandum without unduly burdening the narrative. To assist the court, defendant submits the chart attached hereto as Exhibit A which summarizes the deficient fraud allegations of the Second Amended Complaint and addresses its lack of compliance with *Ambrosia Coal*. Based on the discussion herein and in Exhibit A, it is apparent most of plaintiffs' allegations fail to allege actionable mail or wire fraud.[7]

---

[7] Because the pleading requirements under Florida's RICO statute (Chapter 772, Florida Statutes) are the same as those under the federal RICO act, and because Counts II and III of the Complaint simply adopt by reference (in paragraphs 237 and 250) the same deficient allegations contained in Count I in support of the federal RICO claims, Plaintiffs' claims in Counts II and III are likewise due to be dismissed. *See Bray & Gillespie Mgt. LLC v. Lexington Ins. Co.*, 527 F.Supp.2d 1355, 1364 (M.D. Fla. 2007) (Fawsett, J.) (applying *Ambrosia Coal* standard in dismissing plaintiffs' federal and Florida RICO claims).

**B.** **Count I Fails to Allege Sufficient Facts that Show any "Pattern of Racketeering Activity" under RICO**

To determine whether a "pattern of racketeering activity" is sufficiently alleged, the court must disregard those acts alleged by the plaintiff which are not, in fact, predicate RICO acts. Additionally, when considering alleged predicate acts of mail or wire fraud, the court disregards those alleged predicate acts which are not pled with particularity. *See Giuliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005).

Having thus eliminated the non-predicate acts alleged (*see supra* Sections I.A.1. and 2.) as well those fraud allegations not pled with particularity (*see supra* Section I.A.3.), plaintiffs are left with precious little in the way of alleged potential predicate acts. Plaintiffs have alleged bank fraud in violation of 18 U.S.C. § 1344 by virtue of the deposit of the joint checks, though this allegation is of doubtful viability.[8] They have also alleged mail fraud and wire fraud by virtue of David Albertelli's alleged preparation and submission of a false qualification statement for Westcore (¶¶ 101-105).[9] Assuming for discussion purposes only that these activities occurred and were, in fact, violations of the referenced statutes, they nevertheless fail to establish a "pattern of racketeering" within the meaning of 18 U.S.C. § 1962(c).

---

[8] This allegation of fraud fails to state a claim under 18 U.S.C. § 1344, since plaintiffs make no claim that David Albertelli or ACI made any affirmative misrepresentation to the bank when the checks were presented for deposit. *Cf. United States v. Gregg*, 179 F.3d 1312, 1314 (11th Cir. 1999) (affirming defendant's conviction for bank fraud for presentment of check without all required signatures based on defendant's material misrepresentation to bank teller that bank manager had approved check's deposit).

[9] The Second Amended Complaint also alleges (in ¶ 99) that David Albertelli directed that his alleged ownership in Westcore should not be disclosed on the company website or to Continental. To the extent this is alleged as a basis for a predicate act of mail fraud, it fails to state a claim. "Nondisclosure of material information can constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose, either by statute or otherwise." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002). However, the plaintiff must plead the duty to disclose and the basis for same. Where plaintiffs, as here, fail to allege any duty on the part of defendant to disclose his ownership interest, the alleged nondisclosure fails to state a claim for a RICO predicate act of mail or wire fraud. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007).

A "pattern of racketeering activity" is defined in RICO as requiring "at least two (2) acts of racketeering activity, one of which occurred after the effective date of this chapter and the last which occurred within ten (10) years…after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The U.S. Supreme Court has found that the term "pattern" is the showing of a relationship between the predicate acts and of a threat of continuing criminal activity. *See H.J., Inc. v. Northwestern Bell Telephone Co.*, 479 U.S. 229, 239 (1989). The Court's short-handed reference to these two elements was "continuity plus relationship." *See id.* The problem with Plaintiffs' Second Amended Complaint is that it fails both the relationship test as well as the continuity test.

To define the "relationship" test, the U.S. Supreme Court adopted the definition "pattern" contained in the Dangerous Special Offender Sentencing Act (Title X), then codified at 18 U.S.C. § 3575 (since repealed). Title X defined a "pattern" as: "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and *are not isolated events*." 18 U.S.C. § 3575(e) (repealed) (quoted in *H.J., Inc.*, 479 U.S. at 240) (emphasis added).

Under this definition, there is no clear relationship shown between the alleged "joint check" conspiracies (¶¶ 175 – 217) and the un-named conspiracy to fraudulently obtain business from Continental through the alleged submission of a fraudulent qualification statement for Westcore (¶¶ 101 – 105). First, conversion of joint checks for one entity has no commonality of purpose, results or methods of commission with fraudulent inducement of new construction contracts for an entirely different entity. Further, the "joint check" conspiracies as alleged were nothing other than an isolated event. The two occurrences

alleged both occurred within four days of one another and there is no allegation any such "scheme" was attempted before or since. The same can be said of the submission of the alleged false qualification statement for Westcore.

These allegations also fail to show "continuity." The Supreme Court defined "continuity" as referring "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 429 U.S. at 241. Continuity may be demonstrated under the "closed" period by "proving a series of related predicates extending over a substantial period of time." *Id.* at 247.

The two instances where the defendants allegedly wrongfully deposited joint checks from the Six Mile Project and the Rochester's Project into ACI's bank account amount to a "scheme" alleged to have lasted a total of four days – i.e., from December 5, 2016, when the first batch of checks allegedly were deposited, until December 8, 2016, when the last batch were deposited. *See* Second Amended Complaint, ¶¶ 197, 215. A pair of predicate acts taking a total of ***four days*** hardly constitute a "pattern of racketeering activity."

Adding to these events the alleged submission of the allegedly fraudulent qualification statement for Westcore, alleged to have occurred in November 2015 (*see id.*, ¶¶ 101-105), also does not satisfy continuity, as these alleged events from start to finish occurred in the space of just over twelve months. The U.S. Supreme Court already has held that predicate acts "extending over a few weeks or months" do not rise to the level of a pattern under the "close ended" definition of a "pattern of racketeering activity." *See H.J., Inc.,* 492 U.S. at 242. The Eleventh Circuit has followed suit. *See Jackson v. BellSouth*

*Telecommunications,* 372 F.3d 1250, 1266 (11th Cir. 2004) (affirming dismissal of complaint alleging closed-ended continuity based on nine months of activity).[10]

The Second Amended Complaint also does not allege any facts supporting a "threat of repetition" of the alleged past conduct, *see H.J., Inc.,* 492 U.S. at 241, at least as to ACI. The Second Amended Complaint alleges that on December 29, 2016, plaintiffs gave notice to ACI that they were terminating ACI's opportunity to "perform any more work on the Rochester Project and the Six Mile Project" and that the plaintiffs' termination of ACI's opportunity to perform work became effective on January 6, 2017. *See* Second Amended Complaint, ¶ 220. Thus, on its face, the Second Amended Complaint precludes any future opportunity for ACI to engage in the conduct complained of as it relates to the plaintiffs and their respective construction projects.[11]

### C. The Remaining Allegations of Count I Fail to Allege Predicate Acts of "Racketeering Activity", But Instead Allege Breaches of Contract

A breach of contract clearly is not a RICO predicate act. *See* 18 U.S.C. § 1961(1). Yet, apart from the activities discussed in Section I.B. above, the "fraud" allegations of Count I all relate to matters that are the subject of written contracts with the various plaintiff entities. The Second Amended Complaint carried forward the allegations in the Amended

---

[10] This argument applies with equal force to the Plaintiffs' claims in Counts II and III, which seek relief under the Florida Civil Remedies for Criminal Practices Act and Florida RICO (Racketeer Influenced and Corrupt Organization) Act (hereinafter "Florida RICO"). *See State v. Lucas,* 600 So.2d 1093, 1094 (Fla. 1992) (citing *H.J. Inc. v. Northwestern Bell,* 492 U.S. 229, 242, 109 S.Ct. 2893, 2901–02, 106 L.Ed.2d 195 (1989) and applying the continuity analysis of *H.J. Inc.* to a prosecution under the Florida RICO statute); *see also Jackson,* 372 F.3d at 1268 (affirming dismissal of federal RICO and Florida Chapter 772 claims based on failure to adequately plead continuity). Thus, Counts II and III should likewise be dismissed with prejudice.

[11] The attempt to inject the allegations of another owner concerning an entirely different project (a hotel) does not salvage Count I on this point. Contrary to how they are characterized in the Second Amended Complaint, the allegations in the Texas petition alleged different issues with ACI and, in any event, also concerns a project on which ACI is no longer performing. There is no allegation in the Texas petition, for example, that ACI converted joint check funds or that it may do so in the future.

Complaint relating to the existence of written contracts for each project, and the alleged violations of various provisions of those contracts as it relates to the processing of payment applications, supervision and management of the project, and alleged untimely and defective work. *See* Second Amended Complaint, ¶¶ 116-123, 137-174.

Matters like the amounts due to subcontractors, the time for making payments to subcontractors, and ACI's entitlement to change orders for additional work performed are all extensively addressed in the subject construction contracts. It would be impossible to know, for example, what "late delivery" of the project would mean without reference to the relevant contract's terms.[12] The schemes alleged in Count I relating to things like "unwarranted change orders requests" or "late delivery of buildings", therefore, are nothing more than breach of contract claims masquerading as civil RICO claims.[13]

## II. PLAINTIFFS' SECOND AMENDED COMPLAINT FAILS TO ALLEGE ACTIONABLE "INJURY TO BUSINESS OR PROPERTY" UNDER RICO

RICO provides a civil remedy to one who has been "injured in his business or property" by reason of a violation of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c). Under RICO, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property *by the conduct constituting the violation*." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985) (emphasis added).

---

[12] Indeed, "late delivery of buildings" is later pled as breaches of contract in plaintiffs' breach of contract counts for seven out of the eight projects. *See* Second Amended Complaint, ¶¶ 303.a., 321.a., 339.a., 358.a., 376.a., 394.a. and 412.a.

[13] *See Robert Suris Gen. Contractor Corp.*, 873 F.2d at 1404; *see also Banco Latino Int'l v. Gomez Lopez, et al.*, 95 F.Supp.2d 1327, 1333 (S.D. Fla. 2000) (stating "RICO's civil remedy was not intended to create a new means of recovery in garden variety commercial disputes and commercial litigators cannot transform every commercial dispute into a civil RICO action, in which treble damages are available, by contorting the facts of the dispute to resemble vaguely a criminal undertaking."); *In re Jackson*, 1990 WL 10625270, at *2 (S.D. GA. June 5, 1990) (stating "Congress did not intend to federalize every tort or breach of contract in business transactions involving the use of the mails.").

Thus, even assuming a defendant commits an act of racketeering, the defendant "'is not liable for treble damages *to everyone he might have injured by other conduct*, nor is the defendant liable to those who have not been injured.'" *Id.* (quoting *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (1984), *aff'd*, 473 U.S. 606 (1985)) (emphasis added).

Count I appears to allege violation of all four subsections of § 1962, all of which fail because plaintiffs do not properly allege injury to their "business or property."

### A. The Second Amended Complaint Fails to State a Claim for Injury under 18 U.S.C. §§ 1962(a) or (b)

Under 18 U.S.C. § 1962(a), it is unlawful for any person "who has received any income derived, directly or indirectly, from a pattern of racketeering activity" to "use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise [engaged in or affecting interstate commerce.]" The majority view is that "a claimant under § 1962(a) must plead an injury which stems not 'from the racketeering predicate acts themselves' but from the 'use or investment of … racketeering income.'" *Lockheed Martin Corp.*, 357 F.Supp.2d at 1369 (quoting *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 895 (8th Cir. 1999)). This is referred to as the "investment injury" requirement for purposes of § 1962(a). *See id.* at 1371.

Plaintiff's Second Amended Complaint largely repeats the allegations of the Amended Complaint that defendants "obtain money on false pretenses that they then use to invest in companies within the construction industry, many of which they use as subcontractors on projects without disclosing an ownership interest." *Compare* Second

Amended Complaint, ¶ 60 *with* Amended Complaint, ¶ 20. However, the Second Amended

Complaint still does not allege any investment injury as would state a claim under § 1962(a).

The law is clear that merely reinvesting racketeering proceeds back into the same

RICO enterprise does not satisfy the investment injury rule. *See Lockheed Martin Corp.*,

357 F.Supp.2d at 1371 (adopting "majority view" that "the 'mere reinvestment of the

racketeering proceeds into a business activity is not sufficient for § 1962(a) standing.'"

(quoting *Vicom v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 n.6 (7th Cir. 1994)).

Plaintiffs have not alleged the investment of racketeering proceeds into anything other than

the defendants' own alleged enterprise itself. *See, e.g.,* Second Amended Complaint, ¶ 67

(alleging ". . . some of which money Defendants invested in an *enterprise of construction*

*companies* that were in turn used to perpetrate other acts of fraud . . . ." (emphasis added)).

Thus, Count I fails to state a claim for relief under § 1962(a).

Similarly, § 1962(b) makes it unlawful to acquire or maintain, through a pattern of

racketeering activity, an interest in an "enterprise." Thus, to state a claim under § 1962(b), a

complaint must allege injury flowing from the defendant's *acquisition or maintenance* –

through a pattern of racketeering activity – of an interest in or control of an enterprise. As

one court has put it: "[j]ust as § 1962(a) requires an investment injury, § 1962(b) requires an

acquisition injury." *Fuller v. Home Depot Services, LLC*, 512 F.Supp.2d 1289, 1294 (N.D.

Ga. 2007); *accord Black Diamond Land Mgt., LLC v. Twin Pines Coal Co., Inc.*, 2016 WL

3617974 (N.D. Ala. July 6, 2016).

Plaintiffs allege in Count I that the "Defendants" used proceeds from the alleged

"Corrupt Enterprise" (defined in paragraph 68 as the defendants themselves) to "acquire

ownership interests in or form companies such as Foundation Management, MFDC, FCS, Westcore I, Westcore II, Team CCR, National Framing and KMM with the purpose of perpetuating the fraud and other racketeering." *See* Second Amended Complaint, ¶ 73. However, there is no allegation of injury flowing to plaintiffs directly from these alleged acquisitions, separate and apart from the alleged injuries flowing as a result of the alleged predicate acts themselves. In effect, plaintiffs are again simply alleging reinvestment of the proceeds back into the racketeering enterprise itself. Thus, Count I is also due to be dismissed with respect to any purported claim under § 1962(b).

### B. The Second Amended Complaint Fails to State a Claim for Injury Under 18 U.S.C. § 1962(c)

A civil claim for alleged violation of § 1962(c) requires allegation of economic injury arising from the violations themselves, as elucidated by the Eleventh Circuit as follows:

> A plaintiff asserting a claim under § 1964(c) of RICO must allege economic injury arising from the defendant's actions. A "defendant who violates section 1962 *is not liable for treble damages to everyone he might have injured by other conduct*, nor is the defendant liable to those who have not been injured." Although the Supreme Court has demanded that "RICO is to be read broadly," the injury to business or property limitation on RICO standing has a "restrictive significance[.]" It "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff."

*Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1361 (11th Cir. 2011) (citations omitted) (emphasis added).

Plaintiffs' allegations fail to distinguish "injury to business or property" arising from the alleged predicate acts themselves from any injury caused by defendants' "other conduct" such as the alleged contract defaults also alleged in their complaint. Paragraph 233 contains

the plaintiffs' allegations of their damages for which they seek recovery in Count I of the

Second Amended Complaint:

> The Funds were further damaged by defendants' other schemes
> and are entitled to treble damages arising from those schemes.
> Those damages include, but are not limited to, *costs of
> correcting ACI's defective work, cost of completing ACI's
> scope of work, costs of payments to subcontractors, costs of
> removing or addressing mechanic's liens, costs of adding
> crews to complete work and recover time on schedules, costs of
> adding supervision to Projects, costs of additional management
> time for the Projects*, costs of legal services, additional interest
> on loans, additional payments to investors, payments of fines
> and other costs.

*See id.*, ¶ 233 (emphasis added).[14]   The above damages are indistinguishable from the

damages for which plaintiffs seek recovery under their breach of contract counts.  *See, e.g.,*

¶ 303 (alleging, with respect to the Savage project, "defective construction", "failing to

provide enough qualified supervisory personnel", "failing to pay amounts due" to

subcontractors, "late delivery of the buildings" and recording an "overstated" mechanic's

lien).  Each item of damage alleged in paragraph 233 is also sought as an item of damage in

each breach of contract count included in plaintiffs' complaint.  In short, plaintiffs have

shown no injury from the predicate acts themselves that is not already an injury resulting

from the alleged contract breaches.

This is reinforced by the fact that many of the "fraud" allegations fail to allege what

loss plaintiffs supposedly suffered as a result of the alleged fraud.  For example, paragraphs

108 through 112 go to great lengths to allege that defendants set up "artificial" subcontracts

and billed through these artificial entities in an alleged effort to "front-load the project

---

[14] These allegations are in addition to the plaintiffs' claim to the joint check funds which, if plaintiffs are
permitted leave to re-plead, they will be required to candidly disclose to the court in said re-pleading that the
joint check funds have been refunded to Continental.

payments." *See* Second Amended Complaint, ¶ 112. But apart from alleging that Continental was placed "at greater risk of contractor default and greater damages" in the event of a default, *See id.,* the Second Amended Complaint nowhere alleges that the claimed fraud *actually did* lead to any contractor default or greater (or any) damages. Merely alleging they incurred additional risk of loss as a result of the alleged fraud does not satisfy plaintiffs' burden of pleading "actual injury" for purposes of RICO. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (rejecting lender's claim that fraudulently induced loans caused actual injury for RICO purposes due to increased risk of loss resulting from under collateralization of the loans, because the loans had not yet been foreclosed such that "the actual damages [the lender] will suffer, if any, are yet to be determined").

Plaintiffs' insinuation that Westcore having an earthwork allocation greater than the earthwork subcontractor was somehow improper begs the question whether Continental actually suffered any *damage* as a result of any such discrepancy – i.e., did Continental pay *more than* the contract price *between Westcore and Continental* for such work. Plaintiffs' complaint simply does not say. Exhibit A sets forth numerous similar examples where the purported fraud is not connected with any purported injury to plaintiffs.

## III.  THE SECOND AMENDED COMPLAINT FAILS TO PROPERLY ALLEGE THAT THE CLAIMED RACKETEERING ACTIVITY WAS THE "BUT-FOR" AND PROXIMATE CAUSE OF THE PLAINTIFFS' INJURIES

In addition to showing a distinct injury arising from the racketeering activity in question, a RICO complaint must also allege that the racketeering activity directly and proximately caused the injury. As summarized by the Eleventh Circuit:

> [P]leading a civil RICO claim requires that plaintiffs plead
> facts sufficient to give rise to a reasonable inference that the
> claimed racketeering activity. . . was the but-for <u>and</u> proximate
> cause of the plaintiffs' injuries. . . . The injurious conduct need
> not be the sole cause of the plaintiffs' injuries, but there must
> be "some direct relation" between the conduct and the injury to
> sustain a claim.

*Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016). "The mere fact of having been misled does not ineluctably give rise to a RICO cause of action unless the act of misleading the plaintiffs actually caused them injury in their business or to their property *that they would not otherwise have suffered.*" *Id.* at 1350 (emphasis added).

Plaintiffs' complaint utterly fails to allege how the claimed racketeering activity was the direct, "but-for" and proximate cause of their alleged injuries. The claimed racketeering activity – consisting mostly of alleged fraud in the performance of the alleged contracts (*see, e.g.,* Second Amended Complaint, ¶¶ 108 – 174) – simply cannot be plausibly connected to the damages alleged in Count I of the Second Amended Complaint. For example, paragraph 233 of the Second Amended Complaint alleges as part of plaintiffs' damages the "costs of correcting ACI's defective work." However, there is no allegation in the Second Amended Complaint to show how these damages were the direct product of a specific fraudulent misrepresentation as opposed to a breach of the applicable contract's requirements. Indeed, the plaintiffs' pleading specifically references ACI's "incompetence" and "not adequately staffing the project with supervision" which are descriptive of breaches of contract, not actionable fraud. *See* Second Amended Complaint, ¶¶ 168 – 169.

In absence of allegations connecting an alleged fraudulent misstatement with the *fact of* ACI's defective work or the *necessity to correct* such work, it is impossible to find that

such misstatement misled the plaintiffs *and* caused them injury "that they would not otherwise have suffered." *Ray*, 836 F.3d at 1350; *see also Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006) (upholding dismissal of RICO claims based on failure to allege proximate cause where "plaintiffs' injuries, if proven, come not from [the alleged] misrepresentations, but from [the defendant's] alleged breach of the Agreement . . . ."); *Chandradat v. Navillus Tile*, 2004 WL 2186562, at *6 (S.D.N.Y. Sept. 28, 2004) (dismissing RICO complaint due to failure to allege proximate cause, finding: "Chandradat simply cannot contort RICO law into providing him a civil remedy for what appears to be a standard breach of contract claim.")

The terms of the parties' construction contracts already provide remedies for the type of damages alleged in Count I. Attached as Exhibit B is a chart that matches the damages alleged in Count I with the contract remedies provided for in the general conditions of the contract (*see* Second Amended Complaint, Ex. 16). Defendants, in short, have *not* alleged how the alleged predicate acts were the "but-for" and proximate cause of their damages.

## CONCLUSION

Plaintiffs' Second Amended Complaint fails to state a claim under the federal and state RICO acts and therefore should be dismissed with prejudice as to Counts I through III. Alternatively, plaintiffs' Second Amended Complaint should be dismissed with prejudice as to their § 1962(a) and § 1962(b) claims, and their § 1962(c) claims with respect to the non-predicate acts addressed in Section I.A. above, and dismissed with leave to amend as to their remaining § 1962(c) claims, provided plaintiffs' file a RICO Case Statement together with their Third Amended Complaint.

Dated this 11th day of October, 2017.

GRAYROBINSON, P.A.

*/s/ Reese J. Henderson, Jr.*
Reese J. Henderson, Jr. Esq.
Florida Bar No. 969273
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
Telephone: (904) 598-9929
Facsimile:  (904) 598-9109
*reese.henderson@gray-robinson.com*

-and-

OLSON CONSTRUCTION LAW, P.C.

Thomas R. Olson (MN#169079)
1898 Livingston Avenue
Saint Paul, MN 55118
Telephone: (651) 298-9884
Facsimile: (651) 298-0056
*trolson@olsonconstructionlaw.com*

*Attorneys for Defendants David Albertelli And Albertelli Construction, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 11, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Reese J. Henderson, Jr.*

# 1575934 v4

26