UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONTINENTAL 332 FUND, LLC,
CONTINENTAL 298 FUND LLC,
CONTINENTAL 306 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 347 FUND LLC,
CONTINENTAL 355 FUND LLC,
CONTINENTAL 342 FUND LLC, and
CONTINENTAL 245 FUND LLC,

     Plaintiffs,

v.                                                        Case No: 2:17-cv-41-FtM-38MRM

DAVID ALBERTELLI, ALBERTELLI
CONSTRUCTION INC., GEORGE
ALBERTELLI, WESTCORE
CONSTRUCTION, LLC, NATIONAL
FRAMING, LLC, MFDC, LLC, TEAM
CCR, LLC, BROOK KOZLOWSKI,
JOHN SALAT, KEVIN BURKE,
ANGELO EQUIZABAL, BRAVO21, LLC,
KERRY HELTZEL, AMY BUTLER, US
CONSTRUCTION TRUST,
FOUNDATION MANAGEMENT, LLC,
KMM CONSTRUCTION, LLC, and
WESTCORE CONSTRUCTION, L.L.C.,

     Defendants.
_____/

## OPINION AND ORDER[1]

This matter comes before the Court on nine motions to dismiss filed by Defendants David Albertelli (Doc. 80); Albertelli Construction, Inc. ("ACI") (Doc. 81); George Albertelli

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

(Doc. 82); Amy Butler (Doc. 83); Brook Kozlowski (Doc. 84); Kevin Burke (Doc. 85); John Salat (Doc. 86); Kerry Heltzel (Doc. 87); and Foundation Management, LLC, KIMM Construction, LLC, MFDC, LLC, National Framing, LLC, Team CCR, LLC, US Construction Trust, Westcore Construction, LLC (Del.) ("Westcore I") and Westcore Construction L.L.C. (Nev.) ("Westcore II")[2] (Doc. 88). Plaintiffs' have filed an Omnibus Response (Doc. 97). This matter is ripe for review.

## BACKGROUND

The 130-page Second Amended Complaint alleges that Defendants, a group of interrelated individuals and companies, perpetrated a pattern of fraud and other acts on apartment construction projects around the country. (Docs. 49; 49-1). Plaintiffs are single-purpose entities that fund apartment complex construction projects. (Doc. 49 at ¶¶ 15-24, 3 n. 1). They allege Defendants George Albertelli and his son David Albertelli (collectively, the "Albertellis") provided bribes to an official from Plaintiffs' parent company to secure inside information and $202,696,588.38 in construction contracts. (Doc. 49 at ¶¶ 50, 78-79, 86, 116 - 123). Each Plaintiff contracted with either ACI or Westcore to build eight apartment complexes in five states:

- Continental 245 Fund LLC and ACI for a project in Lexington, Kentucky (the "Lexington Project");

- Continental 298 Fund LLC and ACI for a project in Savage, Minnesota (the "Savage Project");

- Continental 306 Fund LLC and ACI for a project in New Braunfels, Texas (the "New Braunfels Project");

- Continental 332 Fund, LLC and ACI for a project in Fort Myers, Florida (the "Fort Myers Project");

---

[2] The Court will utilize the term "Westcore" to refer to Westcore I and Westcore II in the alternative.

2

- Continental 326 Fund, LLC and ACI for a project in Rochester, Minnesota (the "Rochester Project");

- Continental 355 Fund LLC and Westcore I for a project in Bryan, Texas (the "Bryan Project");

- Continental 347 Fund LLC and Westcore I for a project in Waco, Texas (the "Waco Project"); and

- Continental 342 Fund LLC and Westcore I for a project in Longmont, Colorado (the "Longmont Project").

(Doc. 49 at ¶¶ 116 - 123).

After the contracts were executed, Defendants allegedly engaged in coordinated schemes to enrich the Albertellis. (Doc. 49 at ¶¶ 128-229). On this basis, the Second Amended Complaint lodges counts ranging from the Racketeer Influenced and Corrupt Organizations Act ("RICO") to professional negligence. (Doc. 49). Defendants move to dismiss arguing the Second Amended Complaint violates Federal Rule of Civil Procedure 8(a) and 9(b). (Docs. 80, 81, 82, 83, 84, 85, 86, 87, 88).

## STANDARD

Federal Rule of Civil Procedure 8(a)(2) states that a pleading must contain a short and plain statement of a claim showing that the pleader may have relief. Rule 8(a)(2)'s purpose is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

Fraud allegations are subject to heightened pleading standards under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Generally, this occurs where the pleading alleges

3

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
>
> (3) the content of such statements and the manner in which they misled the plaintiff, and
>
> (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted). Allegations relating to "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 1370-71 (internal quotations omitted). Although it imposes a heightened pleading standard, the Eleventh Circuit has cautioned that "Rule 9(b) must not be read to abrogate [R]ule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985). Courts have found requisite particularity in a pleading that lacked specifics but presented sufficient description to apprise defendants of the allegations against them. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (list containing fraud allegations and nature of statements found to meet the Rule 9(b) threshold, even though precise words were not alleged); *see also Brooks*, 116 F.3d at 1371 ("alternative means are also

4

available to satisfy the rule."). Though "[i]t is certainly true that allegations of date, place or time [are traditional indicia of particularity] . . . nothing in the rule requires them." *Seville Indus. Mach. Corp.*, 742 F.2d at 791.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a pleading for failure to state a claim upon which relief can be granted. The *Twombly–Iqbal* plausibility standard guides such dismissals. This standard requires a plaintiff to allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support a claim. *Twombly,* 550 U.S. at 556. The court must accept all factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This acceptance is limited to well-pleaded factual allegations. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Alleging "the-defendant-unlawfully harmed me" is insufficient. *Iqbal,* 556 U.S. at 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted).

## DISCUSSION

Defendants argue that nearly all the forty-four counts in the Second Amended Complaint should be dismissed. Some arguments apply to more than one count. The Court will address each.

**A. RICO - Counts 1-3[3]**

Count 1 alleges that Defendants violated the RICO Act by perpetrating several schemes to defraud Plaintiffs on construction projects across the country. (Doc. 49 at ¶¶ 62-236). Counts 2 and 3 incorporate the entire pleading with Count 1 to allege

---

[3] The Court recognizes that the Second Amended Complaint styled the counts in roman numerals. But for comprehension, the Court will refer to them as numbers.

5

Defendants conspired to violate Florida's RICO Act and did so. (Doc. 49 at ¶¶ 237-57). Defendants argue these counts should be dismissed because they do not satisfy Rules 8(a) or 9(b). The Court agrees.

First, the 76 pages of allegations to support Count 1 do not constitute short or plain statements under Rule 8(a)(2). Although Count 1's allegations are complex, Plaintiff must still satisfy the pleading requirements. "While a complaint containing RICO claims is often required to be somewhat lengthier than other complaints, the assertion of RICO claims does not in itself excuse a plaintiff from satisfying the requirements of Rule 8(a)(2) and Rule 8[(d)(1)]." *Thomas v. Am. Tobacco Co.*, 173 F.R.D. 546, 547 (M.D. Ga. 1997).

Second, Count 1's allegations are redundant and confusing. In 257 paragraphs, the allegations to support Count 1 appear twice in the body of the pleading and at least twice more in Count 1. (Doc. 49 at ¶¶ 1-14, 48-61, 63-67, 68-115, 128-217, 223-229). Count 1 alleges out of chronological order over ten fraudulent schemes on eight construction sites across the country. Complicating matters, Plaintiff pleads different levels of specificity.

Third, and perhaps most confusing, the RICO allegations switch vantage points between the actions of select parties and the broadly-described "schemes" perpetrated by the Defendants. (Doc. 49 at ¶¶ 88-115, 128-217). This structure convolutes Count I to a point of near unreadability. This unreadability breaks with Rule 8(a)(2)'s command for a "simple, concise, and direct" pleading. *See Kleinschmidt v. Liberty Mut. Ins. Co.*, 142 F.R.D. 502, 504 (S.D. Fla. 1992) (affirming report and recommendation for dismissal of RICO claim for failure to comply with Rule 8(a)(2)).

For these reasons, Count 1 must be dismissed. And because Counts 2 and 3 incorporate the allegations of Count 1, the Court dismisses them too.[4]

**B.     Shotgun pleadings – Counts 5-7, 12-19, 40-43**

Next, Defendants allege that several counts should be dismissed as improper shotgun pleadings. They are correct. Generally, shotgun pleadings "are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). The result is that the last count eventually constitutes a combination of the other counts incorporated in it. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).

> [I]f tolerated, [shotgun pleadings] harm the court by impeding its ability to administer justice. The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard. Wasting scarce judicial and parajudicial resources impedes the due administration of justice and, in a very real sense, amounts to obstruction of justice.

*Byrne v Nezhat*, 261 F.3d 1075 (11th Cir. 2001) *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (internal punctuation omitted). The Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed]" them. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008). When faced with a shotgun complaint, the Eleventh Circuit encourages courts to "demand repleading," even if such a demand comes *sua sponte*. *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008) (citations omitted); *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

---

[4] Because the Court dismisses Counts 1-3 on Rule 8(a)(2) grounds, it need not reach Defendants' alternative arguments for dismissal.

7

Here Count 5 incorporates every allegation in Count 1; Count 6 incorporates every allegation in Count 5; Count 7 incorporates every allegation in Count 4; Counts 12 to 19 incorporate the substantive allegations of Count 8; and Counts 40 to 43 incorporate paragraphs 44 to 417. (Doc. 49 at ¶¶ 266, 269, 301, 306, 310, 314, 319, 324, 328, 332, 428, 433, 437, 441). Because these Counts incorporate the substantive allegations of other counts, they must be dismissed.[5]

## C. Theft by Contractor in Minnesota - Count 8

Next, Defendants challenge Count 8, which alleges David Albertelli and ACI violated Minnesota Statute 514.02 by failing to pay subcontractors on the Savage and Rochester Projects. (Doc. 49 at ¶¶ 273-280). Defendants argue the claim fails because the statute pertains only to residential real estate properties, and the Savage and Rochester Projects do not meet this criteria as they are apartment complex construction projects.

The Court must first decide whether Minnesota law applies. A federal court sitting in diversity applies the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). That analysis need not be undertaken if the laws of the different states are (1) the same; (2) different but would produce the same outcome under the facts; or (3) when the policies of one state would be furthered by applying its laws while the policy of the other state would not be advanced by applying its laws. *Hatton v. Chrysler Canada, Inc.*, 937 F. Supp. 2d 1356, 1368 (M.D. Fla. 2013); *see also Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 1995); *Tune v. Philip Morris Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000).

---

[5] Because the Court dismisses Counts 5-7, 12-19, and 40-43 as shotgun pleadings, it need not reach Defendants' alternative arguments for dismissal.

With this in mind, Minnesota law would advance Minnesota's policy directives by allowing parties injured in Minnesota to seek redress. By contrast, Florida's interests would not be advanced by applying Florida law because the injuries did not occur here and Florida has no law like Minnesota's. Because the lack of such a law would preclude Plaintiffs from bringing Count 8, and because Florida has no cognizable interest in an out-of-state injury, the Court will apply Minnesota law here. *See Tune*, 766 So. 2d at 352.

The next issue concerns the bounds of Minnesota Statute 514.02. Subdivision 1 of the statute prohibits an entity from keeping payments distributed and then held in trust to pay for "labor, skill, material, or machinery contributing to the improvement." Minn. Stat. § 514.02 subd. 1(b). Subdivision 1a then grants a private right of action to those injured by the acts set out in Subdivision 1, allowing them to sue

> 1) against the person who committed the theft under subdivision 1; *and*
>
> 2) for an improvement to residential real estate made by a person licensed, or who should be licensed . . . against a shareholder, officer, director, or agent of a corporation who is not responsible for the theft but who knowingly receives proceeds of the payment as salary, dividend, loan repayment, capital distribution, or otherwise.

*Id.* at subd. 1a (emphasis added). Residential real estate, as mentioned in Subdivision 1a(2), is defined as "a new or existing building constructed for habitation by one to four families, and includes garages." Minn. Stat. § 326B.802 subd. 13.

Defendants argue the Minnesota statute does not apply here because this case is about apartment complex construction projects, and not residential real estate. This argument asks the Court to conclude the clauses of Subdivision 1a should be construed conjunctively, allowing a private right of action against only those who committed a theft

9

in improvements to homes for one to four families. But that interpretation goes too far. The Minnesota Court of Appeals has construed the statute to extend a private right of action against those that committed theft, against the officers and agents of those who may have committed theft in relation to residential real estate, or against both. *See Amcon Block & Precast, Inc. v. Suess*, 794 N.W.2d 386, 390 (Minn. Ct. App. 2011). However, civil liability for a theft by a corporate entity does not extend to corporate principles responsible for carrying out the acts of a corporation. *Id*. Liability would only attach to a corporate principle in a theft involving improvements to residential real estate. *Id*.

Plaintiffs bring Count 8 against ACI and David Albertelli. (Doc. 49 at ¶¶ 273-280). They allege ACI received payments for work done on the Savage and Rochester Projects, that David Albertelli and ACI did not use those payments to pay subcontractors, and that David Albertelli deposited the money into ACI's bank account. (Doc. 49 at ¶ 202-217; 274-278). It also alleges that both Continental 298 Fund and Continental 326 Fund were injured. (Doc. 49 at ¶¶ 279-280). Taking the allegations as true, they state a viable claim against ACI as the entity directly responsible for theft. Although indirect liability for ACI's theft may otherwise attach to David Albertelli as the owner and principal of ACI under the second prong of subdivision 1a, Count 8 falls short because it does not allege that he "knowingly receive[d] the proceeds of the payment as salary, dividend, loan repayment, capital distribution, or otherwise." *See* Minn. Stat. § 514.02 subd. 1a(2). Count 8 is dismissed as against David Albertelli but stands as to ACI.[6]

---

[6] The Court also expresses doubt about whether the Second Amended Complaint has plausibly alleged that the relevant payments concerned residential real estate Projects as laid out by the Minnesota Statute.

**D.      Breach of Contract - Counts 20, 24, 28, 32 and 36**

Next, Defendants take aim at Counts 20, 24, 28, 32 and 36, which allege that ACI or Westcore breached contracts regarding construction projects in Florida (Count 20), Texas (Counts 24, 28 and 32), and Colorado (Count 36). Defendants argue these counts contain no particular contract terms, or allege how they were breached.

Breach-of-contract actions are governed by the law of the state where the contract is made or to be performed. *Innovak Int'l, Inc. v. Hanover Ins. Co.*, No. 8:16-CV-2453-MSS-JSS, 2017 WL 5632718, at *4 (M.D. Fla. Nov. 17, 2017). In Florida, "[a]n adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). Texas and Colorado laws have similar elements for breach of contract claims. *See Lesikar v. Moon*, No. 14-16-00299-CV, 2017 WL 4930851, at *7 (Tex. App. Oct. 31, 2017); *see also Long v. Cordain*, 2014 COA 177, ¶ 19. As a result, the Court will apply Florida law to Counts 20, 24, 28, 32 and 36. *See Tune*, 766 So. 2d at 352.

Here, reading the allegations in the light most favorable to Plaintiffs, Counts 20, 24, 28, 32 and 36 state plausible breach of contract claims. Each count alleges that ACI or Westcore owed contract-based duties to the Plaintiffs with whom they dealt, that ACI or Westcore breached those duties, and Plaintiffs were damaged. (Doc. 49 at ¶¶ 337-342, 356-360, 374-378, 392-396, 410-414). They also allege specific ways that ACI or Westcore breached the contracts. (Doc. 49 at ¶¶ 337-342, 356-360, 374-378, 392-396, 410-414). The counts sufficiently notify ACI or Westcore of the allegations against them. Therefore, Counts 20, 24, 28, 32 and 36 stand.

**E.     Breach of Express Warranty - Counts 21, 25, 29, 33 and 37**

Defendants next challenge Counts 21, 25, 29, 33 and 37 of the Second Amended Complaint, which allege that either ACI or Westcore breached express warranties in contracts they held with respective Plaintiffs in Florida (Count 21), Texas (Counts 25, 29, and 33), and Colorado (Count 37). Like their breach of contract arguments, Defendants assert the claims are defective because they fail to include specific supporting facts.

State law governs express warranty claims. *Hinkle v. Cont'l Motors, Inc.*, No. 8:16-CV-2966-T-36MAP, 2017 WL 3131465, at *5 (M.D. Fla. July 24, 2017). To state a claim for breach of express warranty in Florida, a pleading must allege

> 1) facts in respect to sale of the product or other circumstances giving rise to warranty, express or implied, identifying the type of warranties accompanying the pertinent transactions involved.
>
> 2) reliance upon the representations by the seller or skill and judgment of the seller where the action is based upon express warranty or warranty of fitness for a particular purpose.
>
> 3) circumstances of the injury as caused by the breach of warranty.
>
> 4) notice of breach of warranty.
>
> 5) injuries sustained and damages.

*Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 104 (Fla. 4th DCA 1969). This substantially matches the laws of Texas and Colorado. *See Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 886 (Tex. App. 2007); *Scott v. Honeywell Int'l Inc.*, No. 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015); *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 205-208 (Colo. 1984). The Court will apply Florida law to Counts 25, 29, 33 and 37. *See Tune*, 766 So. 2d at 352.

Each breach of express warranty count alleges that ACI or Westcore owed a select Plaintiff several express warranties, the warranties were breached, and the respective Plaintiff was damaged. (Doc. 49 at ¶¶ 343-346, 361-364, 379-382, 397-400, 415-418). They do not allege, however, *what* warranties were breached. Instead, each count simply states that ACI or Westcore "breached one or more of those warranties." (Doc. 49 at ¶¶ 308, 326, 345, 363, 381, 399, 417). These allegations contravene *Twombly*'s directive that a pleading "give the defendant fair notice of what the claim is and the grounds upon which it rests." *See Twombly*, 550 U.S. at 555 (internal punctuation altered). As a result, Counts 21, 25, 29, 33 and 37 are legally insufficient and dismissed.

**F.     Breach of Implied Warranty - Counts 22, 26, 30, 34 and 38**

Defendants move to dismiss Counts 22, 26, 30, 34 and 38, which allege that either ACI or Westcore breached implied warranties of (1) workmanlike quality; (2) fitness for a particular purpose; (3) merchantability; and (4) habitability on every relevant project. (Doc. 49 at ¶¶ 347-350, 365-368, 383-386, 401-404, 419-422). Defendants again argue that dismissal is warranted because the Second Amended Complaint provides no factual allegations or explanations how they allegedly breached implied warranties. The counts concern injuries sustained in Florida (Count 22), Texas (Counts 26, 30, and 34), and Colorado (Counts 38). The Court will address each implied warranty claim.

   *1. Implied Warranty of Workmanlike Quality*

In Florida, a contractor must "deliver services performed in a good and workmanlike manner." *Lochrane Eng'g, Inc. v. Willingham Realgrowth Inv. Fund, Ltd.*, 552 So. 2d 228, 232 (Fla. 5th DCA 1989). Texas and Colorado laws are substantially similar. *See Barnett v. Coppell N. Texas Court*, Ltd., 123 S.W.3d 804, 823 (Tex. App.

2003); *see also* Shiffers v. Cunningham Shepherd Builders Co., 470 P.2d 593, 595 (Colo. App. 1970); Erickson v. Oberlohr, 749 P.2d 996, 999 (Colo. App. 1987). The Court will apply Florida law to the breach of implied warranty of workmanlike quality claims in Counts 26, 30, 34 and 38. *See* Tune, 766 So. 2d at 352.

Although the Second Amended Complaint alleges either ACI or Westcore breached the implied warranty of workmanlike quality, it does not detail *how* ACI or Westcore failed to provide construction services in a skillful or workmanlike manner. At best, it alleges ACI and David Albertelli intentionally installed non-conforming materials into each project "without following the contractual process for having substitutions of materials approved by the architect." (Doc. 49 at ¶ 139). And the allegations do not explain how the installation of non-conforming materials ultimately damaged the Plaintiffs. Thus, the implied warranty of workmanlike quality claims are dismissed.

*2. Implied Warranties of Fitness for a Particular Purpose and Merchantability*

In Florida, whether a contractor has breached implied warranties of fitness and merchantability in a construction context hinges on "whether the premises meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality." *Maronda Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass'n, Inc.*, 127 So. 3d 1258, 1268 (Fla. 2013); *Biscayne Roofing Co. v. Palmetto Fairway Condo. Ass'n, Inc.*, 418 So. 2d 1109, 1110 (Fla. 3d DCA 1982); *see also* David v. B & J Holding Corp., 349 So. 2d 676, 677 (Fla. 3d DCA 1977). This breach includes situations in which contractors breach the building contract by deviating from pre-drawn specifications. *David*, 349 So. 2d at 678.

Texas and Colorado have not applied the implied warranties of fitness for a particular purpose or merchantability to construction projects. *G-W-L, Inc. v. Robichaux*, 643 S.W.2d 392, 394 (Tex. 1982), overruled on other grounds by *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex. 1987); *Tile Design Studio, Inc. v. Rosendahl*, No. 94CA0060, 1995 WL 761995, at *1 (Colo. App. 1995). Rather, implied warranties of fitness and merchantability only arise in transactions for goods. *G-W-L, Inc.,* 643 S.W.2d at 394; *Texas Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 881 (Tex. App. 2003); *see also Palmer v. A.H. Robins Co.*, 684 P.2d 187, 208 (Colo. 1984). Generally, goods are all things movable at the time of sale. Tex. Bus. & Com. Code Ann. § 2.105(a); *see also* Colo. Rev. Stat. § 4-2-105(a). When a contract calls for a mix of goods and services, the court derives a contract's overarching purpose by looking to its nature. *Texas Dev. Co.*, 119 S.W.3d at 881; *Colorado Carpet Installation, Inc.*, 668 P.2d at 1388.

Here, the first issue is whether Count 22's Florida-based breach of implied warranty of fitness and merchantability claim is legally sufficient. According to Plaintiffs, ACI and David Albertelli intentionally installed non-conforming materials in the projects, and demanded money to fix the error with conforming materials. (Doc. 49 at ¶ 139). Because Plaintiffs allege that they deviated from their contract with the non-conforming goods, this is enough to state a plausible breach of implied warranty of fitness and merchantability claim. *David*, 349 So. 2d at 678.

Next, the Court addresses Texas and Colorado-based claims in Counts 26, 30, 34, and 38. A conflict-of-law analysis is necessary because Florida law differs from Texas and Colorado laws. Florida courts apply the "most significant relationship" test in the Restatement (Second) of Conflict of Laws. *Bishop v. Florida Specialty Paint Co.*, 389 So.

2d 999, 1001 (Fla. 1980). This test weighs "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2) (1971). Normally, "[t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law." *Bishop*, 389 So. 2d at 1001. This rule is only limited where the use of foreign law would offend Florida public policy. *See State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1164 (Fla. 2006).

Here, both and the conduct causing the injuries, and the actual injuries themselves occurred in Texas and Colorado where the projects were performed. (Doc. 49 at ¶¶ 118, 121-123). In Counts 26, 30, 34 and 38 while no party alleges to be domiciled in Texas or Colorado, all contracts focused on performance there. The application of Texas and Colorado law would not offend Florida public policy because Florida's implied warranty of fitness and merchantability laws exist to protect purchasers of Florida real estate. *See Gable v. Silver*, 258 So. 2d 11, 17 (Fla. 4th DCA 1972), opinion adopted, 264 So. 2d 418 (Fla. 1972). Because Plaintiffs in Counts 26, 30, 34 and 38 did not purchase Florida real estate, the Court will apply Texas and Colorado laws. As stated, under Colorado and Texas laws, the implied warranties of fitness and merchantability only arise in transactions for goods. *See G-W-L, Inc.*, 643 S.W.2d at 394; *see also Palmer*, 684 P.2d 187, 208 (Colo. 1984). Because construction services – and not goods – were the main focus of the relevant contracts, the implied warranty of fitness and merchantability claims in Counts 26, 30, 34 and 38 fail.

### 3. Implied Warranty of Habitability

Last, Plaintiffs allege ACI or Westcore owed them implied warranties of habitability for each project, the duties were breached, and Plaintiffs were injured. In Florida, a contractor breaches the implied warranty of habitability when the dwelling fails to meet the "ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality." *Hesson v. Walmsley Const. Co.*, 422 So. 2d 943, 945 (Fla. 2d DCA 1982). Because Texas and Colorado laws are substantially the same the Court will apply Florida law. *See Centex Homes v. Buecher*, 95 S.W.3d 266, 273 (Tex. 2002); *Beeftu v. Creekside Ventures LLC*, 37 P.3d 526, 528 (Colo. App. 2001); *see also Tune*, 766 So. 2d at 352.

Even with the most favorable reading of the operative pleading, Plaintiffs state no plausible claim for implied warranty of habitability. There are no allegations the completed projects did not conform to ordinary or normal standards for "living quarters of comparable kind and quality." *See Hesson*, 422 So. 2d at 945. As a result, the Court dismisses the implied warranty of habitability claims in Counts 22, 26, 30, 34 and 38.

### G. Professional Negligence - Counts 23, 27, 31, 35, and 39

Defendants challenge Counts 23, 27, 31, 35 and 39 which allege either ACI or Westcore are liable for professional negligence. They argue the claims allege no facts to support any breach of care. These Counts regard injuries arising in Florida (Count 23), Texas (Counts 27, 31, and 35), and Colorado (Count 39).

In Florida, the elements of a negligence claim are "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to

17

plaintiff." *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015). The Court will apply Florida law as the laws of Texas and Colorado are substantially similar. *See Kemp v. Jensen*, 329 S.W.3d 866, 869 (Tex. App. 2010); *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992).

Here, the negligence claims specify no particular duties ACI or Westcore owed the respective Plaintiffs or how either Defendant breached those duties. Plaintiffs professional negligence claims are the "defendant-unlawfully harmed me accusation[s]" that *Iqbal* prohibits. *Iqbal*, 556 U.S. at 677. The Court will dismiss Counts 23, 27, 31, 35, and 39.

### H. Motion to Strike Punitive Damages Claim - Count 44

Finally, Defendants move to strike the request for punitive damages in Count 44. According to Plaintiffs, ACI is liable for slander of title because it recorded an overstated, fraudulent, and unenforceable mechanic's lien on the Fort Myers Project, which damaged Continental 332 Fund. (Doc. 49 at 447-450). Defendants seek dismissal because Count 44 fails to allege ACI acted with intentional misconduct or gross negligence that would justify punitive damages.

But the problems in Count 44 are more fundamental than potential insufficiency in a punitive damages prayer, as the claim itself fails to pass Rule 12(b)(6) muster. In Florida, the elements of a slander of title action are

> (1) [a] falsehood (2) [that] has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood.

*McAllister v. Breakers Seville Ass'n, Inc.*, 981 So. 2d 566, 573 (Fla. 4th DCA 2008). Taking the allegations as true, Plaintiffs allege that ACI recorded an unwarranted mechanics lien against the Fort Myers Project. (Doc. 49 at ¶¶ 447-449). It does not, however, allege ACI knew its actions would likely cause others to avoid dealing with Continental 332 Fund, or that ACI's actions induced others to avoid dealing with Continental 332 Fund. Without such allegations, the request for punitive damages is not plausible. The Court strikes the request for punitive damages in Count 44.

Accordingly, it is now

**ORDERED:**

1. Defendants' motions to dismiss (Docs. 80, 81, 82, 83, 84, 85, 86, 87, 88) are **GRANTED IN PART** and **DENIED IN PART**.

    a. Counts 1-3, 5-7, 12-19, 21, 23, 25-27, 29-31, 33-35, and 37-44 are **DISMISSED without prejudice**.

    b. Count 8 is **DISMISSED without prejudice** as to Defendant David Albertelli.

    c. Count 22 alleging the implied warranty of workmanlike quality and implied warranty of habitability claims are **DISMISSED without prejudice.**

2. Plaintiffs may file a Third Amended Complaint on or before **February 27, 2018**.

**DONE** and **ORDERED** in Fort Myers, Florida this 13th day of February, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record