UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONTINENTAL 332 FUND, LLC,                        Case No. 2:17-cv-000041-SPC-MRM
CONTINENTAL 298 FUND, LLC
CONTINENTAL 306 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 347 FUND LLC,
CONTINENTAL 355 FUND LLC,
CONTINENTAL 342 FUND LLC, and
CONTINENTAL 245 FUND LLC

      Plaintiffs,

vs.

DAVID ALBERTELLI, ALBERTELLI
CONSTRUCTION, INC., GEORGE
ALBERTELLI, WESTCORE CONSTRUCTION,
LLC, (Del.), WESTCORE CONSTRUCTION,
L.L.C. (Nev.), FOUNDATION MANAGEMENT
LLC, NATIONAL FRAMING, LLC, KMM
CONSTRUCTION LLC, MFDC LLC, TEAM
CCR, LLC, BROOK KOZLOWSKI, JOHN
SALAT, KEVIN BURKE, KERRY
HELTZEL, AMY BUTLER, and US
CONSTRUCTION TRUST

      Defendants.

_____/

ALBERTELLI CONSTRUCTION, INC.,

      Counterclaim Plaintiff,

v.

CONTINENTAL 332 FUND LLC,
CONTINENTAL 298 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 306 FUND LLC, and
CONTINENTAL DEVELOPMENT
COMPANY, INC., f/k/a CONTINENTAL

PROPERTIES COMPANY, INC.,

Counterclaim Defendants.

_____/

## COUNTERCLAIM

Plaintiff, Albertelli Construction, Inc. ("Counterclaim Plaintiff" or "ACI"), by and through its undersigned counsel, sues Defendants, Continental 332 Fund LLC ("Six Mile Fund"), Continental 298 Fund LLC ("Savage Fund"), Continental 326 Fund LLC ("Rochester Fund"), Continental 306 Fund LLC ("New Braunfels Fund"), and Continental Development Company, Inc., f/k/a Continental Properties Company, Inc. ("Continental"), and alleges:

## GENERAL ALLEGATIONS

1. This is an action for damages which are in excess of $75,000.00, exclusive of interest, costs, and attorney's fees.

2. Counterclaim Plaintiff is a Florida corporation authorized to do business and doing business in the State of Florida, with its principal place of business in Jacksonville, Duval County, Florida.

3. Counterclaim Defendant Six Mile Fund is a Wisconsin limited liability company that owns an apartment complex in Ft. Myers, Lee County, Florida, known as the Springs at Six Mile Cypress (the "Six Mile Project"), more particularly described as follows:

> TRACT "MF", OF SIX MILE CROSSING, A SUBDIVISION ACCORDING TO THE PLAT THEREOF RECORDED AS INSTRUMENT NO. 2015000032022, OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA.

(the "Six Mile Property").

2

4. Counterclaim Defendant Savage Fund is a Wisconsin limited liability company that owns an apartment complex in Savage, Minnesota, known as the Springs at Egan Drive (the "Savage Project").

5. Counterclaim Defendant Rochester Fund is a Wisconsin limited liability company that owns an apartment complex in Rochester, Minnesota, known as the Springs at South Broadway (the "Rochester Project").

6. Counterclaim Defendant New Braunfels Fund is a Wisconsin limited liability company that owns an apartment complex in New Braunfels, Texas, known as the Springs at Creekside (the "New Braunfels Project").

7. Counterclaim Defendant Continental is a Wisconsin corporation that owns and manages Six Mile Fund, Savage Fund, Rochester Fund and New Braunfels Fund on behalf of itself and certain investors.

8. This court has long-arm jurisdiction over Counterclaim Defendants Six Mile Fund and Continental as they own, possess or operate a business on real property in the State of Florida and this action arises out of said activities in the State of Florida. Additionally, each of the Counterclaim Defendants has submitted to the jurisdiction of this Court by seeking affirmative relief in this Court in their Third Amended Complaint.

9. Venue is proper in this district in that the Six Mile Property is located within this district.

10. Plaintiff has engaged the undersigned attorneys and is obligated to pay a fee for their services herein.

3

11.     All conditions precedent to the maintenance of this action have been performed, have occurred or have been waived.

## CLAIMS RELATING TO SIX MILE PROJECT

12.     ACI is a general contractor in the business of constructing, among other things, multi-family housing projects, including apartment complexes.

13.     ACI entered into negotiations with Continental to construct the Six Mile Project – a 288 unit apartment complex – in late 2014 which continued into early 2015.

14.     The negotiations led to the execution of an agreement (the "Six Mile Contract") consisting of three parts:

(1)    an AIA Document A101 – 2007 Standard Form of Agreement Between Owner and Contractor;

(2)    an AIA Document A201 – 2007 General Conditions of the Contract for Construction; and

(3)    a Contract Agreement document dated February 20, 2015, containing 28 exhibits to the Contract.

15.     The Six Mile Contract is in the possession of Continental and is too voluminous to attach as an exhibit to this Counterclaim.

### Contractor Clarifications Fraud

16.     The "Contract Agreement" portion of the Six Mile Contract was materially and fraudulently altered by Justin Sell, the associate project manager for the Six Mile Project for Continental.  In particular, ACI submitted its Exhibit F "Contractor Clarifications" in the form attached hereto as **Exhibit A**.  However, without informing ACI, and with the intent to

4

deceive ACI, Sell switched out the Exhibit F "Contractor Clarifications" submitted by ACI for the set attached as **Exhibit B** that were purportedly included in the "Contract Agreement" portion of the Six Mile Contract.

17.    The Exhibit F "Contractor Clarifications" fraudulently inserted into the Contract in lieu of those submitted by ACI were substantially more favorable to Continental to the tune of hundreds of thousands of dollars of items that Sell fraudulently and surreptitiously inserted into ACI's scope of work without ACI's knowledge or consent.

18.    Once ACI discovered Sell's fraudulent switch-out of its Contractor Clarifications, Continental conceded several items of work that Sell had surreptitiously inserted were not, in fact, part of ACI's contract.  Nevertheless, ACI still suffered damages from Continental's attempt to dupe ACI into performing work which it was not obligated to perform and for which Continental had paid no consideration.

### Delays Occurring During Course of Construction

19.    ACI began site work activities in March 2015, including earthwork, construction of access roads, installation of underground utilities and building pad construction.

20.    ACI's site work activities were on the critical path for construction because, until these activities were completed, ACI could not obtain approval from government authorities to commence work on vertical construction.

21.    During the period from March 2015 to January 2016, site work activities were negatively affected by significant and, in some cases, severe rainfall.  In the month of July

5

2015 alone, the site received nearly double the historical average for rainfall in the month of July.

22.    The severe rainfall resulted in unfavorable site conditions which prevented work from progressing as planned and hindered the productivity of ACI and its subcontractors.

23.    The soil conditions on site did not allow water to percolate after each rain event, resulting in standing water on the site for extended periods of time.

24.    Due to the soil conditions on site, and rainfall typically encountered in Ft. Myers over the planned course of the project, it was reasonably foreseeable that dewatering would be required in order to allow site work and underground utility work to be performed. However, Continental failed to apply for a dewatering permit until nearly five months after site work began. As a result, ACI was not able to remove water from the site after each rainfall event. This resulted in unfavorable conditions for site work multiple days after each rain event.

25.    The inability to dewater the site for those five months due to the lack of a permit, coupled with rainfall during the month of July 2015 that was nearly double the historical average, and severe rainfall experienced in subsequent months, caused substantial delays to the project in general and the site work and underground utility work in particular.

26.    The unfavorable site conditions had a direct and significant negative impact on the start of vertical construction. Vertical construction activities could not proceed until the waterline/fire hydrant clearances were issued, which was dependent upon the installation of necessary underground utilities. Underground utilities work was most susceptible to the

6

flooding caused by the rain events and lack of dewatering. The final waterline clearance was not issued until January 11, 2016.

27.    The unfavorable conditions caused by the lack of dewatering and extreme rainfall events required material changes to ACI's means and methods of construction and caused substantial delays to ACI's work on the Six Mile Project. ACI incurred extended general conditions and other costs as a result of these delays which were compensable delays under the Contract.

28.    Continental also actively interfered with ACI's supervision and direction of the work under the Contract, by communicating directly with ACI's subcontractors, by directing ACI's subcontractors to perform the work contrary to ACI's directions and out-of-sequence with ACI's project schedule, and otherwise. Continental's active interference also delayed the progress of ACI's work under the Contract.

29.    Despite demand, Six Mile Fund failed and refused to approve appropriate extensions of the Contract time to account for the weather impact delays and the delays caused by the owner's active interference, and further failed to approve change orders for ACI's resulting extended general conditions and other costs.

**<u>Continental's Failure to Pay in Accordance with the Contract</u>**

30.    From the beginning of the project, Continental insisted upon using a new system for processing payment – known as the Textura system – which was a web-based system for processing payments. Use of the Textura system was not required by the contract, but Continental insisted it would only process payments submitted through Textura.

31.     The Textura system was new to Continental and ACI frequently was required to obtain system support from Continental's Information Technology (IT) employees who, in turn, had to obtain updates and fixes to address problems with the system that repeatedly held up payment.

32.     Despite the numerous technical difficulties ACI encountered with Textura, Continental refused to process payments until they were cleared through Textura, resulting in delays of weeks and, in some cases, months before payment would be processed.

33.     Continental also delayed payments to ACI over exceedingly minor discrepancies in supporting paperwork submitted by ACI or its subcontractors, holding up millions of dollars in payments to downstream subcontractors.

34.     Continental's failure to pay except through Textura, and its late payment as a result of Textura's glitches, was a breach of the Six Mile Contract, as nothing in the Six Mile Contract required ACI to submit its payments through that system.

35.     Continental's failure to pay timely negatively affected ACI's ability to perform under the Six Mile Contract and damaged ACI's relationship with its subcontractors whose payments were delayed because of the Textura issues.

### Continental's Unwarranted Withholding of Payment

36.     Beginning in March 2015, ACI submitted regular monthly applications for payment for progress payment amounts which were then reviewed and certified by the architect in accordance with the terms of the Six Mile Contract.

37. In spite of multiple delays in payment as previously alleged, in general, Continental would process ACI's payment applications for the amounts certified by the architect.

38. However, beginning with the application for payment for the month of September 2016, Continental began withholding amounts certified by the architect. Despite the architect's certification of the amount submitted by ACI as due and owing for the month of September 2016, Continental unilaterally decided it would process ACI's payment application only for the amounts due and owing to ACI's subcontractors and suppliers. Continental withheld payment of the balance of ACI's monthly payment applications for September and October 2016 for the amounts attributable to ACI's general conditions expenses, buyout savings, and fee. On the September 2016 payment application, Continental withheld $36,667.19, and on the October 2016 payment application, Continental withheld $176,251.13, even though these amounts were certified as due and owing by the architect.

39. Continental's alleged justification for this withholding was its contention that ACI was liable for liquidated damages for late delivery of portions of the project. However, Continental's withholding was not in accordance with the Contract, because no proper notification was provided to ACI regarding the reasons for the withholding and, in any event, it is the architect who is empowered to withhold certificates for payment under the Six Mile Contract, and the architect had instead certified these amounts as due and payable to ACI.

40. Continental's withholding also was in breach of the Six Mile Contract because the delays for which Continental asserted liquidated damages were in part caused by the adverse weather conditions previously described. Continental never provided notice to ACI

9

of the amount of liquidated damages withheld or how they were computed, nor did it account for the compensable delays experienced by ACI. Instead, Continental arbitrarily withheld payment of amounts certified by the architect as due to ACI.

41.    Continental's improper withholding of ACI's payments in breach of the Contract negatively impacted ACI's ability to continue performing under the Contract.

### Continental's Refusal to Process Change Orders

42.    Plaintiff also performed extra work having a value of over $383,000 for which it requested change orders from Continental. Attached hereto as **Exhibit C** is a summary description of such extra work and the amount attributable to each item of extra work.

43.    ACI submitted requests for change orders for most or all of the amounts reflected in Exhibit C in accordance with the requirements of the Six Mile Contract. However, Continental wrongfully and in breach of the Six Mile Contract failed and refused to process change orders for the extra work ACI performed.

### Contract Termination

44.    On December 23, 2016, ACI placed Continental on notice of its payment defaults and of ACI's reservation of its right to stop work under the Contract if Continental's payment default was not cured within seven (7) days.

45.    Continental did not cure its payment default. Accordingly, by letter dated January 5, 2017, ACI gave notice that it would begin demobilizing from the Six Mile Project.

46.    The next day, January 6, 2017, Continental, as manager of the Six Mile Fund, purported to terminate ACI's right to perform work on the Six Mile Project.

10

**ACI's Damages**

47.     ACI has suffered damages due to Continental's:  (a) refusal to grant extensions of the contract time for delays beyond ACI's control, (b) failure to pay in accordance with the Contract; (c) improper withholding of payment to ACI; (d) refusal to process and pay for valid change orders for costs ACI incurred which were beyond its scope of work under the Contract, (e) improper withholding of payment from ACI for work performed, and (f) improper termination of the Contract.

## COUNT I – BREACH OF CONTRACT – SIX MILE PROJECT

48.     Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 45 above and incorporates the same herein by reference.

49.     ACI substantially performed its obligations under the Six Mile Contract up until the termination of the Six Mile Contract.

50.     The Six Mile Fund materially breached the Six Mile Contract by its failure to make payment to ACI and other breaches as alleged herein.

51.     ACI's damages due to Continental's breach of the Six Mile Contract, include, without limitation, unpaid interest on payments not timely paid under the Contract; the amounts improperly withheld by Continental, together with accrued interest; the Contract balance earned through performance as of the date of the improper termination; the value of the extra work performed by ACI without compensation by Continental; ACI's extended general conditions costs and other costs occasioned by the delays in the project that were beyond its control; and other damages, in an amount to be proven at trial.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund, LLC for damages together with prejudgment interest, court costs and such other relief as the court deems just.

### COUNT II – FRAUD – SIX MILE PROJECT

52.     Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 17 above and incorporates the same herein by reference.

53.     Continental, acting through Justin Sell, its Associate Project Manager and agent, misrepresented the Contractor Qualifications included in the Contract Agreement document to be the Contractor Qualifications submitted by ACI which formed the basis of the Six Mile Contract, when in fact Sell had altered the Contractor Qualifications document to make it more favorable to Continental.

54.     Continental intended to and did induce ACI to enter into the Six Mile Contract based on his false representation.

55.     ACI acted in reliance upon Sell's misrepresentation by entering into the Six Mile Contract and undertaking performance thereunder.

56.     ACI has been damaged by Continental's fraud in an amount to be proven at trial.

57.     ACI reserves the right to seek amendment of this count to seek punitive damages at the appropriate time.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendants Continental 332 Fund LLC and Continental Development Company, Inc., f/k/a

12

Continental Properties Company, Inc., for damages together with prejudgment interest, court costs and such other relief as the court deems just.

### COUNT III – DECEPTIVE AND UNFAIR TRADE PRACTICES – SIX MILE PROJECT

58. Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 17, and 51 through 53 above and incorporates the same herein by reference.

59. Continental's actions in misrepresenting the Contractor Clarifications inserted into the Contract as being the same as those submitted by ACI is a deceptive and unfair trade practice.

60. Continental's deceptive and unfair trade practices caused ACI to incur actual damages in an amount to be proven at trial.

61. ACI seeks its attorney's fees herein pursuant to § 501.211(2), Florida Statutes.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendants Continental 332 Fund LLC and Continental Development Company, Inc., f/k/a Continental Properties Company, Inc. for damages together with prejudgment interest, court costs and attorneys' fees.

### COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS – SIX MILE PROJECT

62. Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 13 and 27 above and incorporates the same herein by reference.

63. In accordance with the Six Mile Contract, ACI subcontracted portions of the work to various subcontractors who performed the work under ACI's supervision and direction.

13

64.     ACI entered into subcontracts with each subcontractor which required the subcontractor to follow the instructions and directions of ACI's project superintendent and to perform its work in accordance with ACI's construction progress schedule.

65.     Continental, as manager of Six Mile Fund, had knowledge of ACI's contractual relationships with the various subcontractors through, among other things, information submitted to Continental through the Textura payment system.

66.     Continental knowingly and intentionally procured the breach by various subcontractors of their contractual duty to follow the directions and instructions of ACI's project superintendent by, among other things, contacting ACI's subcontractors and directing them to perform their work contrary to ACI's instructions.

67.     Continental further knowingly and intentionally procured the breach by various subcontractors of their contractual duty to perform their work in accordance with ACI's construction progress schedule by, among other things, contacting ACI's subcontractors and directing them to perform their work out of sequence with ACI's construction progress schedule.

68.     Continental further knowingly and intentionally interfered with ACI's contractual relations with its subcontractors by improperly withholding and delaying payment to ACI and then falsely telling ACI's subcontractors that ACI was the cause of the payment delay.

69.     Continental further knowingly and intentionally interfered with ACI's contractual relations with its subcontractors by refusing to process payment for ACI's general conditions and fees based on alleged claims for liquidated damages, while insisting on full

14

payment to ACI's subcontractors, directly undermining ACI's supervision of its subcontractors and preventing ACI from passing through the alleged liquidated damages to the responsible subcontractors in accordance with its subcontracts.

70.     ACI suffered damages as a result of Continental's tortious interference with ACI's contractual relationships with its subcontractors, including without limitation delays to the performance of the work, inefficiency in the performance of the work and the resulting extended overhead and other costs to attempt to overcome the effects of the owner's active interference with the work.

71.     ACI reserves the right to seek amendment of this count to seek punitive damages at the appropriate time.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendants Continental 332 Fund LLC and Continental Development Company, Inc., f/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

### **COUNT V – QUANTUM MERUIT – SIX MILE PROJECT**

72.     Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 45 above and incorporates the same herein by reference.

73.     This is an action against in the alternative to Count I for relief based on a contract implied-in-fact.

74.      ACI provided labor, services and materials consisting of construction of an apartment complex on Six Mile Fund's Property (the "services").

15

75. Six Mile Fund and Continental, as manager and owner of Six Mile Fund, had knowledge of, assented to, and received a benefit from ACI's services.

76. Six Mile Fund and Continental knew that ACI was not volunteering its services and expected compensation. Under the circumstances, a reasonable person receiving Plaintiff's services would expect to pay for them.

77. Despite demand, Six Mile Fund and Continental have refused to pay the reasonable value of ACI's services.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendants Continental 332 Fund LLC and Continental Development Company, Inc., f/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

**COUNT VI – UNJUST ENRICHMENT**

78. Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 45 above and incorporates the same herein by reference.

79. This is an action in the alternative to Counts I and IV for relief based on a contract implied in law to prevent unjust enrichment.

80. ACI provided labor, services and materials consisting of construction of an apartment complex on Six Mile Fund's Property (the "benefits") to improve the Six Mile Property at the owner's request.

81. Six Mile Fund and Continental, as manager and owner of Six Mile Fund, had knowledge of, assented to, accepted, and retained the benefits conferred by ACI.

16

82.    Under the circumstances, it would be inequitable for Six Mile Fund and Continental to retain the benefits conferred by ACI without paying a sum representing the reasonable value of the benefits conferred.

83.    Six Mile Fund and Continental have not paid for the benefits conferred by ACI and, thus, have been unjustly enriched to the extent of the benefit conferred.

84.    ACI has no adequate remedy at law.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendants Continental 332 Fund LLC and Continental Development Company, Inc., f/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

### COUNT VII – EQUITABLE LIEN – SIX MILE PROJECT

85.    Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 45, 51 through 53 and 72 through 76 above and incorporates the same herein by reference

86.    Counterclaim Plaintiff is entitled to an equitable lien on the Property based on defendants' fraud and misrepresentation regarding the Contractor Clarifications incorporated into the Contract.

87.    Counterclaim Plaintiff is also entitled an equitable lien on the Property to prevent the  unjust enrichment of Six Mile Fund and Continental at Counterclaim Plaintiff's expense.

WHEREFORE, Counterclaim Plaintiff demands judgment adjudicating an equitable lien in favor of Counterclaim Plaintiff as against the interest of Counterclaim Defendants Continental 332 Fund LLC and Continental Development Company, Inc., f/k/a Continental

Properties Company, Inc. in the Six Mile Property in the amount of Counterclaim Plaintiff's damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

**CLAIMS RELATING TO SAVAGE PROJECT**

88.    This action involves real property located in Scott County, Minnesota and is comprised of the lot described as follows:

> Lot One (1), Block One (1), Springs at Egan Drive, Scott County, Minnesota (the "Real Property"), which is located at 14125 Louisiana Avenue South in Savage, Minnesota, and identified as Parcel No. 264560010.

(the "Savage Property").

89.    Savage Fund is the current fee owner of the Savage Property and was the fee owner of said property at all times material to this action.

**COUNT VIII – BREACH OF CONTRACT – SAVAGE PROJECT**

90.    Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 10 and 88 through 89 above and incorporates same herein.

91.    ACI and Savage Fund entered into a contract (the "Savage Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at Egan Drive (the "Savage Project"), all of which related to the permanent development and improvement of the Savage Property.

92.    Savage Fund is in possession of the Savage Contract, a copy of which is too voluminous to attach. The Savage Contract includes plans, specifications, and other such documents identified in the Savage Contract.

18

93.    In consideration for the labor, material, and general contractor services ACI provided for the Project on the Savage Property, Continental agreed to pay ACI in accordance with the Savage Contract and the payment applications submitted by ACI.

94.    Pursuant to the Savage Contract, ACI provided the necessary labor, skill, material and general contractor services for the Savage Project and has completed its work in connection with the Savage Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the Savage Contract.

95.    Despite the foregoing and ACI's demands, Savage Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the Savage Project and the permanent development and improvement to the Savage Property.

96.    ACI encountered work on the Savage Project that was not part of the original Savage Contract.

97.    ACI submitted proposed change orders for this extra work.

98.    Savage Fund unjustifiably and in breach of the Savage Contract refused to execute said proposed change orders or enter into good faith negotiations with ACI over the proposed change orders.

99.    ACI encountered conditions over which it had no control that extended the time period needed to complete the Savage Contract.

100.    ACI requested time extensions to the Savage Contract period as a result of these conditions.

101.    Savage Fund unjustifiably and in breach of the Savage Contract refused to grant said time extensions, or granted time extensions in change order 10 which depended on

19

Savage Fund performing actions in a timely manner so that ACI could meet the extended deadlines, and Savage Fund failed or refused to perform said actions.

102.    ACI submitted payment applications to Savage Fund during the Project.

103.    Savage Fund unjustifiably and in breach of the Savage Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms, improperly delayed payments, improperly withheld payments and improperly reduced payments due and owing to ACI.

104.    A condition precedent to ACI's duties to perform the work under the Savage Contract included Savage Fund's duty to provide permits and design documents in a timely manner during the course of the Savage Project.

105.    Savage Fund did not provide permits and design documents in a timely manner during the Savage Project.

106.    Savage Fund's failure to provide permits and design documents in a timely fashion delayed ACI's work and made it more expensive to perform.  Among other things, ACI incurred costs to attempt to assist the Savage Fund with design issues and permitting delays for which Savage Fund provided no compensation to ACI.

107.    The Savage Contract included an allowance for winter conditions.

108.    Per the Savage Contract, the allowance was to be adjusted based on the actual cost for winter conditions.

109.    Savage Fund unjustifiably and in breach of the Savage Contract refused to adjust the contract price based on the actual cost for winter conditions.

110.    There is in every contract an implied promise of good faith and fair dealing.

20

111. Savage Fund improperly asserted liquidated damages for delays against ACI, when in fact Savage Fund's own actions on the Savage Project and other factors beyond ACI's control caused many of the delays.

112. Savage Fund consistently interfered with ACI's subcontracts during the Savage Project.

113. Savage Fund's actions were in breach of the duty of good faith and fair dealing.

114. Savage Fund provided the Plans and Specifications for the Savage Project.

115. By providing the Plans and Specifications for the Savage Project, Savage Fund impliedly warranted the adequacy of the plans and specifications for construction of the Savage Project.

116. The Plans and Specifications provided by Savage Fund were not adequate for the purposes of completing the Savage Project.

117. Savage Fund's actions as alleged herein constitute a breach of the Savage Contract.

118. As a direct and proximate result of Savage Fund's breach of the Savage Contract, ACI has suffered damages in excess of $3,000,000, including unpaid interest on payments not timely paid under the Contract; the unpaid contract balance plus accrued interest thereon; the value of the extra work performed by ACI without compensation by Continental; ACI's extended general conditions costs and other costs occasioned by the delays in the project that were beyond its control; and other damages, in an amount to be proven at trial.

WHEREFORE, Counterclaim Plaintiff demands judgment against Savage Fund for its damages, together with interest, costs and such other relief as may be appropriate.

### COUNT IX — UNJUST ENRICHMENT

119. Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 10, 88, 89 and 94 above and incorporates same herein.

120. Savage Fund received a benefit as a result of the labor, material, and general contractor services provided by ACI in furtherance of the construction of the Savage Project.

121. Savage Fund has failed and refused to pay ACI for the labor, material, and general contractor services provided by ACI.

122. The reasonable value of the labor, material, and general contractor services that remains unpaid exceeds $3,000,000.

123. The actions of Savage Fund in retaining the labor, material, and general contractor services without making payment to ACI constitute unjust enrichment.

124. To prevent the unjust enrichment of Savage Fund, ACI is entitled to judgment against Savage Fund for damages exceeding $3,000,000, together with the maximum interest allowable by law, and ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Savage Fund for its damages, together with interest, costs and such other relief as may be appropriate.

### COUNT X – FRAUD IN THE INDUCEMENT OF CHANGE ORDER 10

125. Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 10, 88, 89 and 101 above and incorporates same herein.

22

126.    To induce ACI to enter into change order 10, which reduced the contract balance by an amount representing liquidated damages claimed by Continental acting as manager and agent for Savage Fund, Continental, acting as Savage Fund's agent and manager, represented to ACI it would perform the duties necessary to allow ACI to perform in accordance with the revised turnover dates set forth in change order 10.

127.    Both the revised turnover dates and Continental's representation that it would perform its duties that were necessary to perform if ACI was to be able to perform in accordance with the revised turnover dates, were material inducements to ACI in agreeing to enter into change order 10.

128.    ACI reasonably and justifiably relied on Continental's representations as alleged herein.

129.    Continental failed to perform in accordance with its representations to ACI. Among other things, Continental failed to secure required governmental permits so that ACI would be able to call in timely inspections of the buildings so as not to slow the progress of the work.

130.    At the time Continental made its representations to ACI, Continental had no intention of performing said duties as represented to ACI or had formed a positive intent not to perform such duties.

131.    As a result of Continental's fraud in the inducement, ACI is entitled to either: (a) rescission of change order 10; or alternatively, (b) its actual damages incurred as a result of Continental's fraudulent misrepresentations, plus interest thereon and punitive damages.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendants Continental 298 Fund LLC and Continental Development Company, Inc., f/k/a Continental Properties Company, Inc., for rescission or, alternatively, actual and punitive damages together with prejudgment interest, court costs and such other relief as the court deems just.

**CLAIMS RELATING TO ROCHESTER PROJECT**

132.     This action involves real property located at 305 28th SE, Rochester, Minnesota (the "Rochester Property").

133.     Rochester Fund is the current fee owner of the Rochester Property and was the fee owner of said property at all times material to this action.

**COUNT XI – BREACH OF CONTRACT – ROCHESTER PROJECT**

134.     Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 10, 30-33, 132 and 133 above and incorporates same herein.

135.     ACI and Rochester Fund entered into a contract (the "Rochester Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at South Broadway (the "Rochester Project"), all of which related to the permanent development and improvement of the Rochester Property.

136.     Rochester Fund is in possession of the Rochester Contract, a copy of which is too voluminous to attach. The Rochester Contract includes plans, specifications, and other such documents identified in the Rochester Contract.

24

137.    In consideration for the labor, material, and general contractor services ACI provided for the Project on the Rochester Property, Continental agreed to pay ACI in accordance with the Rochester Contract and the payment applications submitted by ACI.

138.    Pursuant to the Rochester Contract, ACI provided the necessary labor, skill, material and general contractor services for the Rochester Project and has completed its work in connection with the Rochester Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the Rochester Contract.

139.    Despite the foregoing and ACI's demands, Rochester Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the Rochester Project and the permanent development and improvement to the Rochester Property.

140.    ACI encountered work on the Rochester Project that was not part of the original Rochester Contract.

141.    ACI submitted proposed change orders for this extra work.

142.    Rochester Fund unjustifiably and in breach of the Rochester Contract refused to execute said change orders or enter into good faith negotiations with ACI over the proposed change orders.

143.    ACI encountered conditions over which it had no control that extended the time period needed to complete the Rochester Contract.

144.    ACI requested time extensions to the Rochester Contract period as a result of these conditions.

145.    Rochester Fund unjustifiably and in breach of the Rochester Contract refused to grant said time extensions.

146.    ACI submitted payment applications to Rochester Fund during the Project.

147.    Rochester Fund unjustifiably and in breach of the Rochester Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms, improperly delayed payments, improperly conditioned payments on extra-contractual conditions, improperly withheld payments and improperly reduced payments due and owing to ACI.

148.    There is in every contract an implied promise of good faith and fair dealing.

149.    Rochester Fund improperly asserted liquidated damages for delays against ACI, when in fact Rochester Fund's own actions on the Rochester Project and other factors beyond ACI's control caused many of the delays.

150.    Rochester Fund consistently interfered with ACI's subcontracts during the Rochester Project.

151.    Rochester Fund's actions were in breach of the duty of good faith and fair dealing.

152.    Rochester Fund provided the Plans and Specifications for the Rochester Project.

153.    By providing the Plans and Specifications for the Rochester Project, Rochester Fund impliedly warranted the adequacy of the plans and specifications for construction of the Rochester Project.

154. The Plans and Specifications provided by Rochester Fund were not adequate for the purposes of completing the Rochester Project.

155. Rochester Fund's actions as alleged herein constitute a breach of the Rochester Contract.

156. As a direct and proximate result of Rochester Fund's breach of the Rochester Contract, ACI has suffered damages in the principal amount of $4,357,112.18, inclusive of amounts for which ACI remains potentially liable to its subcontractors and suppliers for work performed.

157. ACI is entitled to judgment against Rochester Fund for the total principal sum of $4,357,112.18, together with the maximum interest allowable by law, ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Rochester Fund for its damages, together with interest, costs and such other relief as may be appropriate.

### COUNT XII – UNJUST ENRICHMENT – ROCHESTER PROJECT

158. Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 10, 132, 133 and 138 above and incorporates same herein.

159. Rochester Fund received a benefit as a result of the labor, material, and general contractor services provided by ACI in furtherance of the construction of the Rochester Project.

160. Rochester Fund has failed and refused to pay ACI for the labor, material, and general contractor services provided by ACI.

161.    The reasonable value of the labor, material, and general contractor services that remains unpaid is the principal sum of $4,357,112.18.

162.    The actions of Rochester Fund in retaining the labor, material, and general contractor services without making payment to ACI constitute unjust enrichment.

163.    To prevent the unjust enrichment of Rochester Fund, ACI is entitled to judgment against Rochester Fund for the total principal sum of $4,357,112.18, together with the maximum interest allowable by law, and ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Rochester Fund for its damages, together with interest, costs and such other relief as may be appropriate.

### CLAIMS RELATING TO THE NEW BRAUNFELS PROJECT

164.    This action involves real property located in New Braunfels, Texas as more particularly described as follows:

> Property located at the municipal address of 2980 CREEK BEND DR., NEW BRAUNFELS, TX 78130-6474, in the county of COMAL, TX, legally described as C306 FUND, BLOCK 1, LOT 1, APN 389681., Municipality / Township of NEW BRAUNFELS, Census Tract 3104.01, in the Subdivision of C306 FUND, Legal Bloc 1, Legal Lot 1, in the school district of CIS.

(the "New Braunfels Property").

165.    New Braunfels Fund is the current fee owner of the New Braunfels Property and was the fee owner of said property at all times material to this action.

## COUNT XIII – BREACH OF CONTRACT – NEW BRAUNFELS PROJECT

166.   Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 10, 164 and 165 above and incorporates same herein.

167.   ACI and New Braunfels Fund entered into a contract (the "New Braunfels Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at Creekside (the "New Braunfels Project"), all of which related to the permanent development and improvement of the New Braunfels Property.

168.   New Braunfels Fund is in possession of the New Braunfels Contract, a copy of which is too voluminous to attach. The New Braunfels Contract includes plans, specifications, and other such documents identified in the New Braunfels Contract.

169.   In consideration for the labor, material, and general contractor services ACI provided for the Project on the New Braunfels Property, Continental agreed to pay ACI in accordance with the New Braunfels Contract and the payment applications submitted by ACI.

170.   Pursuant to the New Braunfels Contract, ACI provided the necessary labor, skill, material and general contractor services for the New Braunfels Project and has completed its work in connection with the New Braunfels Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the New Braunfels Contract.

171.   Despite the foregoing and ACI's demands, New Braunfels Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the

29

New Braunfels Project and the permanent development and improvement to the New Braunfels Property.

172.   ACI encountered work on the New Braunfels Project that was not part of the original New Braunfels Contract.

173.   ACI submitted proposed change orders for this extra work.

174.   New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract refused to execute said change orders or enter into good faith negotiations with ACI over the proposed change orders.

175.   ACI encountered weather and other conditions over which it had no control that extended the time period needed to complete the New Braunfels Contract.

176.   ACI requested time extensions to the New Braunfels Contract period as a result of these conditions.

177.   New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract refused to grant said time extensions, and instead purported to impose liquidated damages on ACI for delays not caused by ACI.

178.   ACI submitted payment applications to New Braunfels Fund during the New Braunfels Project.

179.   New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms.

180.   There is in every contract an implied promise of good faith and fair dealing.

30

181.    New Braunfels Fund improperly asserted liquidated damages for delays against ACI, when in fact New Braunfels Fund's own actions on the New Braunfels Project and other factors beyond ACI's control caused many of the delays.

182.    New Braunfels Fund consistently interfered with ACI's subcontracts during the New Braunfels Project.

183.    New Braunfels Fund's actions were in breach of the duty of good faith and fair dealing.

184.    New Braunfels Fund's actions as alleged herein constitute a breach of the New Braunfels Contract.

185.    As a direct and proximate result of New Braunfels Fund's breach of the New Braunfels Contract, ACI has suffered damages in the principal amount of $301,308.83.

186.    ACI is entitled to judgment against Continental for the total principal sum of $301,308.83, together with the maximum interest allowable by law, ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against New Braunfels Fund for its damages, together with interest, costs and such other relief as may be appropriate.

## COUNT XIV – UNJUST ENRICHMENT – NEW BRAUNFELS PROJECT

187.    Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 10, 164, 165 and 170 above and incorporates same herein.

188.    New Braunfels Fund received a benefit as a result of the labor, material, and general contractor services provided by ACI in furtherance of the construction of the New Braunfels Project.

31

189.     New Braunfels Fund has failed and refused to pay ACI for the labor, material, and general contractor services provided by ACI.

190.     The reasonable value of the labor, material, and general contractor services that remains unpaid is the principal sum of $301,308.83.

191.     The actions of New Braunfels Fund in retaining the labor, material, and general contractor services without making payment to ACI constitute unjust enrichment to the New Braunfels Fund.

192.     To prevent the unjust enrichment of New Braunfels Fund, ACI is entitled to judgment against New Braunfels Fund for the total principal sum of $301,308.83, together with the maximum interest allowable by law, and ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against New Braunfels Fund for its damages, together with interest, costs and such other relief as may be appropriate.

## JURY TRIAL DEMAND

Counterclaim Plaintiff Albertelli Construction, Inc. hereby demands trial by jury on all claims herein so triable under applicable law.

Dated this 3rd day of August, 2018.

GRAYROBINSON, P.A.

By: /s/ *Reese J. Henderson, Jr.*
Reese J. Henderson, Jr.
Florida Bar No. 969273
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
Phone: (904) 598-9929
Facsimile: (904) 598-9109
*reese.henderson@gray-robinson.com*

32

_maria.daniels@gray-robinson.com_
Attorneys for Plaintiff Albertelli
Construction, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 3, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ _Reese J. Henderson, Jr._