UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONTINENTAL 332 FUND, LLC,
CONTINENTAL 298 FUND, LLC
CONTINENTAL 306 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 347 FUND LLC,
CONTINENTAL 355 FUND LLC,
CONTINENTAL 342 FUND LLC, and
CONTINENTAL 245 FUND LLC

Case No. 2:17-cv-000041-SPC-MRM

      Plaintiffs,

vs.

DAVID ALBERTELLI, ALBERTELLI
CONSTRUCTION, INC., GEORGE
ALBERTELLI, WESTCORE CONSTRUCTION,
LLC, (Del.), WESTCORE CONSTRUCTION,
L.L.C. (Nev.), FOUNDATION MANAGEMENT
LLC, NATIONAL FRAMING, LLC, KMM
CONSTRUCTION LLC, MFDC LLC, TEAM
CCR, LLC, BROOK KOZLOWSKI, JOHN
SALAT, KEVIN BURKE, KERRY
HELTZEL, AMY BUTLER, and US
CONSTRUCTION TRUST

      Defendants.

_____/

ALBERTELLI CONSTRUCTION, INC.,

      Counterclaim Plaintiff,

v.

CONTINENTAL 332 FUND LLC,
CONTINENTAL 298 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 306 FUND LLC,

      Counterclaim Defendants,
and

CONTINENTAL PROPERTIES GROUP,
INC., f/k/a CONTINENTAL
PROPERTIES COMPANY, INC.,

     Third Party Defendant.

                                    /

## SECOND AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Plaintiff, Albertelli Construction, Inc. ("Counterclaim Plaintiff" or "ACI"), by and through its undersigned counsel, sues Counterclaim Defendants, Continental 332 Fund LLC ("Six Mile Fund"), Continental 298 Fund LLC ("Savage Fund"), Continental 326 Fund LLC ("Rochester Fund"), Continental 306 Fund LLC ("New Braunfels Fund"), and Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc. ("Continental"), and alleges:

## GENERAL ALLEGATIONS

1.     This is an action for damages which are in excess of $75,000.00, exclusive of interest, costs, and attorney's fees.

2.     Counterclaim Plaintiff is a Florida corporation authorized to do business and doing business in the State of Florida, with its principal place of business in Jacksonville, Duval County, Florida.

3.     Counterclaim Defendant Six Mile Fund is a Wisconsin limited liability company that owns an apartment complex in Ft. Myers, Lee County, Florida, known as the Springs at Six Mile Cypress (the "Six Mile Project"), more particularly described as follows:

> TRACT "MF", OF SIX MILE CROSSING, A SUBDIVISION
> ACCORDING TO THE PLAT THEREOF RECORDED AS
> INSTRUMENT NO. 2015000032022, OF THE PUBLIC
> RECORDS OF LEE COUNTY, FLORIDA.

(the "Six Mile Property").

4.      Counterclaim Defendant Savage Fund is a Wisconsin limited liability company that owns an apartment complex in Savage, Minnesota, known as the Springs at Egan Drive (the "Savage Project").

5.      Counterclaim Defendant Rochester Fund is a Wisconsin limited liability company that owns an apartment complex in Rochester, Minnesota, known as the Springs at South Broadway (the "Rochester Project").

6.      Counterclaim Defendant New Braunfels Fund is a Wisconsin limited liability company that owns an apartment complex in New Braunfels, Texas, known as the Springs at Creekside (the "New Braunfels Project").

7.      Third Party Defendant Continental is a Wisconsin corporation that owns and manages Six Mile Fund, Savage Fund, Rochester Fund and New Braunfels Fund on behalf of itself and certain investors.  All actions alleged herein to have been taken by Continental were made in its capacity as manager of, and on behalf of, Six Mile Fund, Savage Fund, Rochester Fund or New Braunfels Fund, as applicable, except where specifically alleged otherwise.

8.      This court has long-arm jurisdiction over Counterclaim Defendant Six Mile Fund and Third Party Defendant Continental as they own, possess or operate a business on real property in the State of Florida and this action arises out of said activities in the State of Florida.  Additionally, each of the Counterclaim Defendants has submitted to the jurisdiction of this Court by seeking affirmative relief in this Court in their Third Amended Complaint.

9.      Venue is proper in this district in that the Six Mile Property is located within this district.

3

10. Plaintiff has engaged the undersigned attorneys and is obligated to pay a fee for their services herein.

11. All conditions precedent to the maintenance of this action have been performed, have occurred or have been waived.

## CLAIMS RELATING TO THE SIX MILE PROJECT

12. ACI is a general contractor in the business of constructing, among other things, multi-family housing projects, including apartment complexes.

13. ACI entered into negotiations with Continental to construct the Six Mile Project – a 288 unit apartment complex – in late 2014 which continued into early 2015.

14. The negotiations led to the execution of an agreement between ACI and the Six Mile Fund (the "Six Mile Contract") consisting of three parts:

    (1) an AIA Document A101 – 2007 Standard Form of Agreement Between Owner and Contractor;

    (2) an AIA Document A201 – 2007 General Conditions of the Contract for Construction; and

    (3) a Contract Agreement document dated February 20, 2015, containing 28 exhibits to the Contract.

15. The Six Mile Contract is in the possession of Six Mile Fund and is too voluminous to attach as an exhibit to this Counterclaim.

**Contractor Clarifications Fraud**

16. The "Contract Agreement" portion of the Six Mile Contract was materially and fraudulently altered by Justin Sell, the associate project manager for the Six Mile Project for Continental. In particular, ACI submitted its Exhibit F "Contractor Clarifications" in the

form attached hereto as **Exhibit A**. However, without informing ACI, and with the intent to deceive ACI, Sell switched out the Exhibit F "Contractor Clarifications" submitted by ACI for the set attached as **Exhibit B** that were purportedly included in the "Contract Agreement" portion of the Six Mile Contract.

17. The Exhibit F "Contractor Clarifications" fraudulently inserted into the Contract in lieu of those submitted by ACI were substantially more favorable to Continental to the tune of hundreds of thousands of dollars of items that Sell fraudulently and surreptitiously inserted into ACI's scope of work without ACI's knowledge or consent.

18. Once ACI discovered Sell's fraudulent switch-out of its Contractor Clarifications, Continental conceded several items of work that Sell had surreptitiously inserted were not, in fact, part of ACI's contract. Nevertheless, ACI still suffered damages from Continental's attempt to dupe ACI into performing work which it was not obligated to perform and for which Continental had paid no consideration.

**<u>Delays Occurring During Course of Construction</u>**

19. ACI began site work activities in March 2015, including earthwork, construction of access roads, installation of underground utilities and building pad construction.

20. ACI's site work activities were on the critical path for construction because, until these activities were completed, ACI could not obtain approval from government authorities to commence work on vertical construction.

21. During the period from March 2015 to January 2016, site work activities were negatively affected by significant and, in some cases, severe rainfall. In the month of July

2015 alone, the site received nearly double the historical average for rainfall in the month of July.

22. The severe rainfall resulted in unfavorable site conditions which prevented work from progressing as planned and hindered the productivity of ACI and its subcontractors.

23. The soil conditions on site did not allow water to percolate after each rain event, resulting in standing water on the site for extended periods of time.

24. Due to the soil conditions on site, and rainfall typically encountered in Ft. Myers over the planned course of the project, it was reasonably foreseeable that dewatering would be required in order to allow site work and underground utility work to be performed. However, Continental failed to apply for a dewatering permit until nearly five months after site work began. As a result, ACI was not able to remove water from the site after each rainfall event. This resulted in unfavorable conditions for site work multiple days after each rain event.

25. The inability to dewater the site for those five months due to the lack of a permit, coupled with rainfall during the month of July 2015 that was nearly double the historical average, and severe rainfall experienced in subsequent months, caused substantial delays to the project in general and the site work and underground utility work in particular.

26. The unfavorable site conditions had a direct and significant negative impact on the start of vertical construction. Vertical construction activities could not proceed until the waterline/fire hydrant clearances were issued, which was dependent upon the installation of necessary underground utilities. Underground utilities work was most susceptible to the

flooding caused by the rain events and lack of dewatering. The final waterline clearance was not issued until January 11, 2016.

27. The unfavorable conditions caused by the lack of dewatering and extreme rainfall events required material changes to ACI's means and methods of construction and caused substantial delays to ACI's work on the Six Mile Project. ACI incurred extended general conditions and other costs as a result of these delays which were compensable delays under the Six Mile Contract.

28. Continental, acting as manager of Six Mile Fund, also actively interfered with ACI's supervision and direction of the work under the Contract, by communicating directly with ACI's subcontractors, by directing ACI's subcontractors to perform the work contrary to ACI's directions and out-of-sequence with ACI's project schedule, and otherwise. Continental's active interference also delayed the progress of ACI's work under the Six Mile Contract.

29. Despite demand, Six Mile Fund failed and refused to approve appropriate extensions of the contract time to account for the weather impact delays and the delays caused by the owner's active interference, and further failed to approve change orders for ACI's resulting extended general conditions and other costs.

**<u>Continental's Failure to Pay in Accordance with the Contract</u>**

30. From the beginning of the Six Mile Project (and on the Rochester Project, as alleged more particularly in Count XII below), Continental insisted upon using a new system for processing payment – known as the Textura system – which was a web-based system for processing payments. Use of the Textura system was not required by the contract, but Continental insisted it would only process payments submitted through Textura.

7

31. The Textura system was new to Continental and ACI frequently was required to obtain system support from Continental's Information Technology (IT) employees who, in turn, had to obtain updates and fixes to address problems with the system that repeatedly held up payment.

32. Despite the numerous technical difficulties ACI encountered with Textura, Continental refused to process payments until they were cleared through Textura, resulting in delays of weeks and, in some cases, months before payment would be processed.

33. Continental also delayed payments to ACI over exceedingly minor discrepancies in supporting paperwork submitted by ACI or its subcontractors, holding up millions of dollars in payments to downstream subcontractors.

34. Continental's failure to pay ACI except through Textura, and its late payment to ACI through its use and implementation of Textura, was a breach of the duties of Six Mile Fund under the Six Mile Contract, as nothing in the Six Mile Contract required ACI to submit its payments through that system, and Continental implemented payment through Textura in an unreasonable way which interfered with ACI's performance under the Six Mile Contract.

35. Continental's failure to pay timely negatively affected ACI's ability to perform under the Six Mile Contract and damaged ACI's relationship with its subcontractors whose payments were delayed because of the Textura issues.

**Continental's Unwarranted Withholding of Payment**

36. Beginning in March 2015, ACI submitted regular monthly applications for payment for progress payment amounts which were then reviewed and certified by the architect in accordance with the terms of the Six Mile Contract.

37. In spite of multiple delays in payment as previously alleged, in general, Continental, acting as manager of Six Mile Fund, would process ACI's payment applications for the amounts certified by the architect.

38. However, beginning with the application for payment for the month of September 2016, Continental began withholding amounts certified by the architect. Despite the architect's certification of the amount submitted by ACI as due and owing for the month of September 2016, Continental unilaterally decided it would process ACI's payment application only for the amounts due and owing to ACI's subcontractors and suppliers. Continental withheld payment of the balance of ACI's monthly payment applications for September and October 2016 for the amounts attributable to ACI's general conditions expenses, buyout savings, and fee. On the September 2016 payment application, Continental withheld $36,667.19, and on the October 2016 payment application, Continental withheld $176,251.13, even though these amounts were certified as due and owing by the architect.

39. Continental's alleged justification for this withholding was its contention that ACI was liable for liquidated damages for late delivery of portions of the project. However, Continental's withholding was not in accordance with the Six Mile Contract, because no proper notification was provided to ACI regarding the reasons for the withholding and, in any event, it is the architect who is empowered to withhold certificates for payment under the Six Mile Contract, and the architect had instead certified these amounts as due and payable to ACI.

40. Continental's withholding also was in breach of the Six Mile Fund's duties under the Six Mile Contract because the delays for which Continental asserted liquidated damages were in part caused by the adverse weather conditions previously described.

Continental never provided notice to ACI of the amount of liquidated damages withheld or how they were computed, nor did it account for the compensable delays experienced by ACI. Instead, Continental arbitrarily withheld payment of amounts certified by the architect as due to ACI.

41. Continental's improper withholding of ACI's payments in breach of Six Mile Fund's duties under the Six Mile Contract negatively impacted ACI's ability to continue performing under the Six Mile Contract.

### Continental's Refusal to Process Change Orders

42. ACI also performed extra work having a value of over $383,000 for which it requested change orders from Continental. Attached hereto as **Exhibit C** is a summary description of such extra work and the amount attributable to each item of extra work.

43. ACI submitted requests for change orders for most or all of the amounts reflected in Exhibit C in accordance with the requirements of the Six Mile Contract. However, Continental wrongfully and in breach of the duties of Six Mile Fund under the Six Mile Contract failed and refused to process change orders for the extra work ACI performed.

### Contract Termination

44. On December 23, 2016, ACI placed Six Mile Fund, through Continental, on notice of its payment defaults and of ACI's reservation of its right to stop work under the Six Mile Contract if the payment default was not cured within seven (7) days.

45. Six Mile Fund did not cure its payment default. Accordingly, by letter dated January 5, 2017, ACI gave notice that it would begin demobilizing from the Six Mile Project.

46. The next day, January 6, 2017, Continental, as manager of the Six Mile Fund, purported to terminate ACI's right to perform work on the Six Mile Project.

<u>**ACI's Damages**</u>

47.    ACI has suffered damages due to Six Mile Fund's:  (a) refusal to grant extensions of the contract time for delays beyond ACI's control, (b) failure to pay in accordance with the Contract; (c) improper withholding of payment to ACI; (d) refusal to process and pay for valid change orders for costs ACI incurred which were beyond its scope of work under the Contract, (e) improper withholding of payment from ACI for work performed, and (f) improper termination of the Contract.

<u>**COUNT I – BREACH OF CONTRACT – SIX MILE PROJECT**</u>

48.    Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 47 above and incorporates the same herein by reference.

49.    ACI substantially performed its obligations under the Six Mile Contract up until the termination of the Six Mile Contract.

50.    The Six Mile Fund materially breached the Six Mile Contract by its failure to make payment to ACI and other breaches as alleged herein.

51.    ACI's damages due to Six Mile Fund's breach of the Six Mile Contract include, without limitation, unpaid interest on payments not timely paid under the Six Mile Contract; the amounts improperly withheld by Six Mile Fund, together with accrued interest; the contract balance earned through performance as of the date of the improper termination; the value of the extra work performed by ACI without compensation by Six Mile Fund; ACI's extended general conditions costs and other costs occasioned by the delays in the project that were beyond its control; and other damages, in an amount to be proven at trial.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund, LLC for damages together with prejudgment interest, court costs and such other relief as the court deems just.

### COUNT II – FRAUD – SIX MILE PROJECT

52. Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 18 above and incorporates the same herein by reference.

53. Continental, acting through Justin Sell, its Associate Project Manager and agent, misrepresented the Contractor Clarifications included in the Contract Agreement document to be the Contractor Clarifications submitted by ACI which formed the basis of the Six Mile Contract, when in fact Sell had altered the Contractor Clarifications document to make it more favorable to Continental.

54. Continental intended to and did induce ACI to enter into the Six Mile Contract based on his false representation.

55. ACI acted in reliance upon Sell's misrepresentation by entering into the Six Mile Contract and undertaking performance thereunder.

56. ACI has suffered damages as a result of Continental's fraud in an amount to be proven at trial.

57. ACI reserves the right to seek amendment of this count to seek punitive damages, in addition to its other damages, at the appropriate time.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund LLC and Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc., for damages together with prejudgment interest, court costs and such other relief as the court deems just.

## COUNT III – DECEPTIVE AND UNFAIR TRADE PRACTICES – SIX MILE PROJECT

58.     Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 18, and 53 through 55 above and incorporates the same herein by reference.

59.     Continental's actions in misrepresenting the Contractor Clarifications inserted into the Contract as being the same as those submitted by ACI is a deceptive and unfair trade practice.

60.     Continental's deceptive and unfair trade practices caused ACI to incur actual damages in an amount to be proven at trial.

61.     ACI seeks its attorney's fees herein pursuant to § 501.211(2), Florida Statutes.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund LLC and Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc. for damages together with prejudgment interest, court costs and attorneys' fees.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS – SIX MILE PROJECT

62.     Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 14 above and incorporates the same herein by reference.

63.     This is an action for damages for tortious interference with contractual relations which seeks relief independent of any remedies to which ACI may be entitled as against Six Mile Fund under the Six Mile Contract.

64.     ACI subcontracted portions of the work under the Six Mile Contract to various subcontractors who performed the work under ACI's supervision and direction. ACI's subcontracts required each subcontractor to follow the instructions and directions of

ACI's project superintendent and to perform its work in accordance with ACI's construction progress schedule.

65. Continental, as manager of Six Mile Fund, had knowledge of ACI's contractual relationships with the various subcontractors through, among other things, information submitted to Continental through the Textura payment system.

66. Continental knowingly and intentionally procured the breach by various subcontractors of their contractual duty to follow the directions and instructions of ACI's project superintendent by, among other things, contacting ACI's subcontractors and directing them to perform their work contrary to ACI's instructions.

67. Continental further knowingly and intentionally procured the breach by various subcontractors of their contractual duty to perform their work in accordance with ACI's construction progress schedule by, among other things, contacting ACI's subcontractors and directing them to perform their work out of sequence with ACI's construction progress schedule.

68. Continental further knowingly and intentionally interfered with ACI's contractual relations with its subcontractors by causing ACI's payments under the Six Mile Contract to be improperly withheld and delayed and then falsely telling ACI's subcontractors that ACI was the cause of the payment delay.

69. Continental further knowingly and intentionally interfered with ACI's contractual relations with its subcontractors by refusing to process payment for ACI's general conditions and fees based on alleged claims for liquidated damages, while insisting on full payment to ACI's subcontractors, directly undermining ACI's supervision of its

subcontractors and preventing ACI from passing through the alleged liquidated damages to the responsible subcontractors in accordance with its subcontracts.

70. ACI suffered damages as a result of Continental's tortious interference with ACI's contractual relationships with its subcontractors, including without limitation delays to the performance of the work, inefficiency in the performance of the work and other costs to attempt to overcome the effects of Continental's tortious interference.

71. ACI reserves the right to seek amendment of this count to seek punitive damages at the appropriate time.

WHEREFORE, Counterclaim Plaintiff demands judgment against Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

### COUNT V – QUANTUM MERUIT – SIX MILE PROJECT

72. Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 13 above and incorporates the same herein by reference.

73. This is an action against in the alternative to Count I for relief based on a contract implied-in-fact.

74. ACI provided labor, services and materials consisting of construction of an apartment complex on Six Mile Fund's Property (the "services").

75. Six Mile Fund and Continental, as manager and owner of Six Mile Fund, had knowledge of, assented to, and received a benefit from ACI's services.

76. Six Mile Fund and Continental knew that ACI was not volunteering its services and expected compensation. Under the circumstances, a reasonable person receiving Plaintiff's services would expect to pay for them.

77. Despite demand, Six Mile Fund and Continental have refused to pay the reasonable value of ACI's services.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund LLC and Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

### COUNT VI – UNJUST ENRICHMENT – SIX MILE PROJECT

78. Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 13 above and incorporates the same herein by reference.

79. This is an action in the alternative to Counts I, II and V for relief based on a contract implied in law to prevent unjust enrichment.

80. ACI provided labor, services and materials consisting of construction of an apartment complex on Six Mile Fund's Property (the "benefits") to improve the Six Mile Property at the owner's request.

81. Six Mile Fund and Continental, as manager and owner of Six Mile Fund, had knowledge of, assented to, accepted, and retained the benefits conferred by ACI.

82. Under the circumstances, it would be inequitable for Six Mile Fund and Continental to retain the benefits conferred by ACI without paying a sum representing the reasonable value of the benefits conferred.

83. Six Mile Fund and Continental have not paid for the benefits conferred by ACI and, thus, have been unjustly enriched to the extent of the benefit conferred.

84. ACI has no adequate remedy at law.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund LLC and Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

### COUNT VII – EQUITABLE LIEN – SIX MILE PROJECT

85. Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 13, 16 through 18, 53 through 56, and 80 through 84 above and incorporates the same herein by reference.

86. This is an action in the alternative to Counts I, II and V for imposition of an equitable lien.

87. Counterclaim Plaintiff is entitled to an equitable lien on the Six Mile Property based on defendants' fraud and misrepresentation regarding the Contractor Clarifications incorporated into the Six Mile Contract.

88. Counterclaim Plaintiff is also entitled an equitable lien on the Six Mile Property to prevent the unjust enrichment of Six Mile Fund and Continental at Counterclaim Plaintiff's expense.

WHEREFORE, Counterclaim Plaintiff demands judgment adjudicating an equitable lien in favor of Counterclaim Plaintiff as against the interest of Counterclaim Defendant Continental 332 Fund LLC and Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc. in the Six Mile Property in the amount of

Counterclaim Plaintiff's damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

## CLAIMS RELATING TO THE SAVAGE PROJECT

89. This action involves real property located in Scott County, Minnesota and is comprised of the lot described as follows:

Lot One (1), Block One (1), Springs at Egan Drive, Scott County, Minnesota (the "Real Property"), which is located at 14125 Louisiana Avenue South in Savage, Minnesota, and identified as Parcel No. 264560010.

(the "Savage Property").

90. Savage Fund is the current fee owner of the Savage Property and was the fee owner of said property at all times material to this action.

## COUNT VIII – BREACH OF CONTRACT – SAVAGE PROJECT

91. Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 89 through 90 above and incorporates same herein.

92. ACI and Savage Fund entered into a contract (the "Savage Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at Egan Drive (the "Savage Project"), all of which related to the permanent development and improvement of the Savage Property.

93. Savage Fund is in possession of the Savage Contract, a copy of which is too voluminous to attach. The Savage Contract includes plans, specifications, and other such documents identified in the Savage Contract.

94. In consideration for the labor, material, and general contractor services ACI provided for the Project on the Savage Property, Continental agreed to pay ACI in accordance with the Savage Contract and the payment applications submitted by ACI.

18

95. Pursuant to the Savage Contract, ACI provided the necessary labor, skill, material and general contractor services for the Savage Project and has completed its work in connection with the Savage Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the Savage Contract.

96. Despite the foregoing and ACI's demands, Savage Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the Savage Project and the permanent development and improvement to the Savage Property.

97. ACI encountered work on the Savage Project that was not part of the original Savage Contract.

98. ACI submitted proposed change orders for this extra work.

99. Savage Fund unjustifiably and in breach of the Savage Contract refused to execute said proposed change orders or enter into good faith negotiations with ACI over the proposed change orders.

100. ACI encountered conditions over which it had no control that extended the time period needed to complete the Savage Contract.

101. ACI requested time extensions to the Savage Contract period as a result of these conditions.

102. Savage Fund unjustifiably and in breach of the Savage Contract refused to grant said time extensions, or granted time extensions in change order 10 which depended on Savage Fund performing actions in a timely manner so that ACI could meet the extended deadlines, and Savage Fund failed or refused to perform said actions.

103. ACI submitted payment applications to Savage Fund during the Project.

104. Savage Fund unjustifiably and in breach of the Savage Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms, improperly delayed payments, improperly withheld payments and improperly reduced payments due and owing to ACI.

105. A condition precedent to ACI's duties to perform the work under the Savage Contract included Savage Fund's duty to provide permits and design documents in a timely manner during the course of the Savage Project.

106. Savage Fund did not provide permits and design documents in a timely manner during the Savage Project.

107. Savage Fund's failure to provide permits and design documents in a timely fashion delayed ACI's work and made it more expensive to perform. Among other things, ACI incurred costs to attempt to assist the Savage Fund with design issues and permitting delays for which Savage Fund provided no compensation to ACI.

108. The Savage Contract included an allowance for winter conditions.

109. Per the Savage Contract, the allowance was to be adjusted based on the actual cost for winter conditions.

110. Savage Fund unjustifiably and in breach of the Savage Contract refused to adjust the contract price based on the actual cost for winter conditions.

111. There is in every contract an implied promise of good faith and fair dealing.

112. Savage Fund improperly asserted liquidated damages for delays against ACI, when in fact Savage Fund's own actions on the Savage Project and other factors beyond ACI's control caused many of the delays.

113.     Savage Fund consistently interfered with ACI's subcontracts during the Savage Project.

114.     Savage Fund's actions were in breach of the duty of good faith and fair dealing.

115.     Savage Fund provided the Plans and Specifications for the Savage Project.

116.     By providing the Plans and Specifications for the Savage Project, Savage Fund impliedly warranted the adequacy of the plans and specifications for construction of the Savage Project.

117.     The Plans and Specifications provided by Savage Fund were not adequate for the purposes of completing the Savage Project.

118.     Savage Fund's actions as alleged herein constitute a breach of the Savage Contract.

119.     As a direct and proximate result of Savage Fund's breach of the Savage Contract, ACI has suffered damages in excess of $3,000,000, including unpaid interest on payments not timely paid under the Contract; the unpaid contract balance plus accrued interest thereon; the value of the extra work performed by ACI without compensation by Continental; ACI's extended general conditions costs and other costs occasioned by the delays in the project that were beyond its control; and other damages, in an amount to be proven at trial.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 298 Fund LLC for its damages, together with interest, costs and such other relief as may be appropriate.

## COUNT IX — UNJUST ENRICHMENT – SAVAGE PROJECT

120.   Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 89 through 90 above and incorporates same herein.

121.   This is an action in the alternative to Count VIII for relief based on a contract implied in law to prevent unjust enrichment.

122.   ACI provided labor, services and materials consisting of construction of an apartment complex on Savage Fund's property to improve said property at Savage Fund's request.

123.   Savage Fund and Continental, as manager and owner of Savage Fund, had knowledge of, assented to, accepted, and retained the benefits conferred by ACI.

124.   Savage Fund and Continental have failed and refused to pay ACI for the labor, material, and general contractor services provided by ACI.

125.   The reasonable value of the labor, material, and general contractor services that remains unpaid exceeds $3,000,000.

126.   By retaining the labor, material, and general contractor services furnished by ACI without making payment to ACI for same, Savage Fund and Continental have received a benefit of value and have been unjustly enriched in a manner that is illegal or unlawful.

127.   To prevent the unjust enrichment of Savage Fund and Continental, ACI is entitled to judgment against Savage Fund and Continental for damages exceeding $3,000,000, together with the maximum interest allowable by law, and ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 298 Fund LLC  and Third Party Defendant Continental Properties

Group, Inc., f/k/a Continental Properties Company, Inc. for its damages, together with interest, costs and such other relief as may be appropriate.

<u>**COUNT X – FRAUD IN THE INDUCEMENT OF CHANGE ORDER 10 – RESCISSION**</u>

128. Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11, 89 through 90 above and incorporates same herein.

129. This is an action for rescission of change order 10 to the Savage Contract. The relief sought herein is in the alternative to any remedies with respect to change order 10 prayed for in Counts VIII or XI.

130. To induce ACI to enter into change order 10, which reduced the contract balance by an amount representing liquidated damages claimed by Continental acting as manager and agent for Savage Fund, Continental, acting as Savage Fund's agent and manager, represented to ACI that it would cause Savage Fund to perform the duties necessary to allow ACI to perform in accordance with the revised turnover dates set forth in change order 10.

131. Both the revised turnover dates and Continental's representation that it would cause Savage Fund to perform the duties that were necessary to perform if ACI was to be able to perform in accordance with the revised turnover dates, were material inducements to ACI in agreeing to enter into change order 10.

132. ACI reasonably and justifiably relied on Continental's representations as alleged herein.

133. Continental failed to perform in accordance with its representations to ACI. Among other things, Savage Fund failed to secure required governmental permits so that ACI

would be able to call in timely inspections of the buildings so as not to slow the progress of the work.

134. At the time Continental made its representations to ACI, Continental had no intention of performing as represented to ACI or had formed a positive intent not to perform as represented.

135. As a result of Continental's fraud in the inducement of change order 10, ACI is entitled to rescission of change order 10.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 298 Fund LLC for rescission of change order 10 and such other relief as the court deems just.

## COUNT XI – FRAUD IN THE INDUCEMENT OF CHANGE ORDER 10 – DAMAGES

136. Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11, 89 through 90 and 130 through 134 above and incorporates same herein.

137. This is an action for damages for fraud in the inducement of change order 10. The relief sought herein is in the alternative to any remedies with respect to change order 10 prayed for in Counts VIII or X.

138. As a result of Continental's fraud in the inducement of change order 10, ACI has suffered damages in an amount to be proven at trial.

WHEREFORE, Counterclaim Plaintiff demands judgment against Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc. for its damages, together with interest, costs and such other relief as may be appropriate.

<u>**CLAIMS RELATING TO THE ROCHESTER PROJECT**</u>

139.    This action involves real property located at 305 28th SE, Rochester, Minnesota (the "Rochester Property").

140.    Rochester Fund is the current fee owner of the Rochester Property and was the fee owner of said property at all times material to this action.

<u>**COUNT XII – BREACH OF CONTRACT – ROCHESTER PROJECT**</u>

141.    Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11, 30 through 33, and 139 through 140 above and incorporates same herein.

142.    ACI and Rochester Fund entered into a contract (the "Rochester Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at South Broadway (the "Rochester Project"), all of which related to the permanent development and improvement of the Rochester Property.

143.    Rochester Fund is in possession of the Rochester Contract, a copy of which is too voluminous to attach. The Rochester Contract includes plans, specifications, and other such documents identified in the Rochester Contract.

144.    In consideration for the labor, material, and general contractor services ACI provided for the Project on the Rochester Property, Rochester Fund agreed to pay ACI in accordance with the Rochester Contract and the payment applications submitted by ACI.

145.    Pursuant to the Rochester Contract, ACI provided the necessary labor, skill, material and general contractor services for the Rochester Project and has completed its work in connection with the Rochester Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the Rochester Contract.

146. Despite the foregoing and ACI's demands, Rochester Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the Rochester Project and the permanent development and improvement to the Rochester Property.

147. ACI encountered work on the Rochester Project that was not part of the original Rochester Contract.

148. ACI submitted proposed change orders for this extra work.

149. Rochester Fund unjustifiably and in breach of the Rochester Contract refused to execute said change orders or enter into good faith negotiations with ACI over the proposed change orders.

150. ACI encountered conditions over which it had no control that extended the time period needed to complete the Rochester Contract.

151. ACI requested time extensions to the Rochester Contract period as a result of these conditions.

152. Rochester Fund unjustifiably and in breach of the Rochester Contract refused to grant said time extensions.

153. ACI submitted payment applications to Rochester Fund during the Project.

154. Rochester Fund unjustifiably and in breach of the Rochester Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms, improperly delayed payments, improperly conditioned payments on extra-contractual conditions, improperly withheld payments and improperly reduced payments due and owing to ACI.

155. As with the Six Mile Project, Continental, acting as manager of Rochester Fund, refused to process ACI's payment applications for the Rochester Project except through Textura, even though use of Textura was not a requirement of the Rochester Contract. And much like what happened on the Six Mile Project, payment to ACI on the Rochester Project was delayed due to software glitches in Textura and Continental's insistence on delaying payments to ACI over exceedingly minor discrepancies in supporting paperwork submitted by ACI or its subcontractors.

156. Continental's failure to pay ACI except through Textura, and its late payment to ACI through its use and implementation of Textura, was a breach of the duties of Rochester Fund under the Rochester Project, as nothing in the Rochester Contract required ACI to submit its payments through that system, and Continental implemented payment through Textura in an unreasonable way which interfered with ACI's performance under the Rochester Contract.

157. There is in every contract an implied promise of good faith and fair dealing.

158. Rochester Fund improperly asserted liquidated damages for delays against ACI, when in fact Rochester Fund's own actions on the Rochester Project and other factors beyond ACI's control caused many of the delays.

159. Rochester Fund consistently interfered with ACI's subcontracts during the Rochester Project.

160. Rochester Fund's actions were in breach of the duty of good faith and fair dealing.

161. Rochester Fund provided the Plans and Specifications for the Rochester Project.

162. By providing the Plans and Specifications for the Rochester Project, Rochester Fund impliedly warranted the adequacy of the plans and specifications for construction of the Rochester Project.

163. The Plans and Specifications provided by Rochester Fund were not adequate for the purposes of completing the Rochester Project.

164. Rochester Fund's actions as alleged herein constitute a breach of the Rochester Contract.

165. As a direct and proximate result of Rochester Fund's breach of the Rochester Contract, ACI has suffered damages in the principal amount of $4,357,112.18, inclusive of amounts for which ACI remains potentially liable to its subcontractors and suppliers for work performed.

166. ACI is entitled to judgment against Rochester Fund for the total principal sum of $4,357,112.18, together with the maximum interest allowable by law, ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 326 Fund LLC for its damages, together with interest, costs and such other relief as may be appropriate.

## COUNT XIII – UNJUST ENRICHMENT – ROCHESTER PROJECT

167. Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 139 through 140 above and incorporates same herein.

168. This is an action in the alternative to Count XII for relief based on a contract implied in law to prevent unjust enrichment.

169. ACI provided labor, services and materials consisting of construction of an apartment complex on Rochester Fund's property to improve said property at Rochester Fund's request.

170. Rochester Fund and Continental, as manager and owner of Rochester Fund, had knowledge of, assented to, accepted, and retained the benefits conferred by ACI.

171. Rochester Fund and Continental have failed and refused to pay ACI for the labor, material, and general contractor services provided by ACI.

172. The reasonable value of the labor, material, and general contractor services that remains unpaid is the principal sum of $4,357,112.18.

173. By retaining the labor, material, and general contractor services furnished by ACI without making payment to ACI for same, Rochester Fund and Continental have received a benefit of value and have been unjustly enriched in a manner that is illegal or unlawful.

174. To prevent the unjust enrichment of Rochester Fund and Continental, ACI is entitled to judgment against Rochester Fund and Continental for the total principal sum of $4,357,112.18, together with the maximum interest allowable by law, and ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 326 Fund LLC and Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc., for its damages, together with interest, costs and such other relief as may be appropriate.

<u>**CLAIMS RELATING TO THE NEW BRAUNFELS PROJECT**</u>

175.     This action involves real property located in New Braunfels, Texas as more particularly described as follows:

> Property located at the municipal address of 2980 CREEK BEND DR., NEW BRAUNFELS, TX 78130-6474, in the county of COMAL, TX, legally described as C306 FUND, BLOCK 1, LOT 1, APN 389681., Municipality / Township of NEW BRAUNFELS, Census Tract 3104.01, in the Subdivision of C306 FUND, Legal Bloc 1, Legal Lot 1, in the school district of CIS.

(the "New Braunfels Property").

176.     New Braunfels Fund is the current fee owner of the New Braunfels Property and was the fee owner of said property at all times material to this action.

<u>**COUNT XIV – BREACH OF CONTRACT – NEW BRAUNFELS PROJECT**</u>

177.     Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 175 through 176 above and incorporates same herein.

178.     ACI and New Braunfels Fund entered into a contract (the "New Braunfels Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at Creekside (the "New Braunfels Project"), all of which related to the permanent development and improvement of the New Braunfels Property.

179.     New Braunfels Fund is in possession of the New Braunfels Contract, a copy of which is too voluminous to attach. The New Braunfels Contract includes plans, specifications, and other such documents identified in the New Braunfels Contract.

180.     In consideration for the labor, material, and general contractor services ACI provided for the Project on the New Braunfels Property, New Braunfels Fund agreed to pay

30

ACI in accordance with the New Braunfels Contract and the payment applications submitted by ACI.

181. Pursuant to the New Braunfels Contract, ACI provided the necessary labor, skill, material and general contractor services for the New Braunfels Project and has completed its work in connection with the New Braunfels Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the New Braunfels Contract.

182. Despite the foregoing and ACI's demands, New Braunfels Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the New Braunfels Project and the permanent development and improvement to the New Braunfels Property.

183. ACI encountered work on the New Braunfels Project that was not part of the original New Braunfels Contract.

184. ACI submitted proposed change orders for this extra work.

185. New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract refused to execute said change orders or enter into good faith negotiations with ACI over the proposed change orders.

186. ACI encountered weather and other conditions over which it had no control that extended the time period needed to complete the New Braunfels Contract.

187. ACI requested time extensions to the New Braunfels Contract period as a result of these conditions.

188. New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract refused to grant said time extensions, and instead purported to impose liquidated damages on ACI for delays not caused by ACI.

189. ACI submitted payment applications to New Braunfels Fund during the New Braunfels Project.

190. New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms.

191. There is in every contract an implied promise of good faith and fair dealing.

192. New Braunfels Fund improperly asserted liquidated damages for delays against ACI, when in fact New Braunfels Fund's own actions on the New Braunfels Project and other factors beyond ACI's control caused many of the delays.

193. New Braunfels Fund consistently interfered with ACI's subcontracts during the New Braunfels Project.

194. New Braunfels Fund's actions were in breach of the duty of good faith and fair dealing.

195. New Braunfels Fund's actions as alleged herein constitute a breach of the New Braunfels Contract.

196. As a direct and proximate result of New Braunfels Fund's breach of the New Braunfels Contract, ACI has suffered damages in the principal amount of $301,308.83.

197. ACI is entitled to judgment against New Braunfels Fund for the total principal sum of $301,308.83, together with the maximum interest allowable by law, ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 306 Fund LLC for its damages, together with interest, costs and such other relief as may be appropriate.

**COUNT XV – UNJUST ENRICHMENT – NEW BRAUNFELS PROJECT**

198. Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 175 through 176 above and incorporates same herein.

199. This is an action in the alternative to Count XIV for relief based on a contract implied in law to prevent unjust enrichment.

200. ACI provided labor, services and materials consisting of construction of an apartment complex on New Braunfels Fund's property to improve said property at New Braunfels Fund's request.

201. New Braunfels Fund and Continental, as manager and owner of New Braunfels Fund, had knowledge of, assented to, accepted, and retained the benefits conferred by ACI.

202. New Braunfels Fund and Continental have failed and refused to pay ACI for the labor, material, and general contractor services provided by ACI.

203. The reasonable value of the labor, material, and general contractor services that remains unpaid is the principal sum of $301,308.83.

204. The actions of New Braunfels Fund in retaining the labor, material, and general contractor services without making payment to ACI constitute unjust enrichment to the New Braunfels Fund and Continental.

205. To prevent the unjust enrichment of New Braunfels Fund and Continental, ACI is entitled to judgment against New Braunfels Fund and Continental for the total

33

principal sum of $301,308.83, together with the maximum interest allowable by law, and ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 306 Fund LLC and Third Party Defendant Continental Properties Group, Inc., f/k/a Continental Properties Company, Inc., for its damages, together with interest, costs and such other relief as may be appropriate.

## JURY TRIAL DEMAND

Counterclaim Plaintiff Albertelli Construction, Inc. hereby demands trial by jury on all claims herein so triable under applicable law.

Dated this 25th day of September, 2018.

GRAYROBINSON, P.A.

By: /s/ *Reese J. Henderson, Jr.*
Reese J. Henderson, Jr.
Florida Bar No. 969273
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
Phone: (904) 598-9929
Facsimile: (904) 598-9109
*reese.henderson@gray-robinson.com*
*maria.daniels@gray-robinson.com*
Attorneys for Plaintiff Albertelli
Construction, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Reese J. Henderson, Jr.*

# Exhibit A

*ACI Exec. Version*

**CONTINENTAL PROPERTIES COMPANY, INC.**
**CONTRACT DOCUMENTS**

**EXHIBIT F – Contractor Clarifications**
To the
Agreement between Continental 332 Fund LLC and <u>Contractor</u>
Dated <u>2 /20/ 15</u> for the Springs at Six Mile Cypress
<u>Fort Myers, FL</u>

*As Attached pages 1-8*

GC INITIAL ___                              26                    OWNER INITIAL JS



ACI

Springs at Six Mile
Fort Myers, FL

## Assumptions & Clarifications
### 02.18.15

**Division 1 – General Requirements:**

1. In this document, Continental Properties Company, Inc. will be referred to as CPCI, and Albertelli Construction, Inc. will be referred to as ACI.

2. This document must be attached to and made a part of any contract agreement associated with the project for which it was prepared. In this case, the Springs at Six Mile, Fort Myers Florida

3. NA

4. NA

5. Building Permit fees are excluded from this proposal. ACI will pay for all plan review fees, General Building Permit Fees at time of issuance. Owner shall reimburse ACI for these fees.

6. Builders Risk Insurance will be provided by the Owner. ACI will be listed as "additional insured" for the project. All deductibles will be paid by the Owner.

7. All bonds are excluded from this proposal including but not limited to right of way bonds, maintenance bonds, termite bonds, payment and performance bond, etc.

8. NA

9. All local, state, & municipal impact fees, and water, sewer, tap fees, right of way bonds, off-site work bonds and permits are excluded from this proposal.

10. Utilities (power, water, sewer, cable and phone) are to be made available to the project site by the Owner.

11. Photometric study (for both site & pool area) and Energy Modeling are excluded from this proposal. Additional lighting and/or revisions for energy savings which may be required to satisfy any local codes that are not shown on the plans will be at additional cost to the project.

12. It is assumed that the buildings will have (1) point of power, on the end of the building, but the buildings will not require a fire separation wall.

13. NA

14. Owner will pay for all 3rd party testing services required by specifications.

15. Any fees or payments for Special Inspections and Material testing have been excluded.

16. Water intrusion testing or consultants are not included.

17. Professional Surveys are excluded.

18. The one (1) year warranty period begins from the date of substantial completion or issuance of a Certificate of Occupancy for each building structure. The contractually required turnover documents must be executed prior to release of keys.

19. All costs, unless specifically noted otherwise, are based upon manufacturer's standard listings

Page 1





*A CI*

Springs at Six Mile
Fort Myers, FL

of color, finish and style.

20. NA

21. All change orders must have the original proposal and all back up documents associated with the change attached to and made a part of the actual change order.

22. The cost herein is based on commodities pricing at the time of issuance. Any increase in said pricing that effects material and/or labor costs are NOT included. ACI is NOT responsible for any cost or scheduling issues that are a result of commodities or their availability.

23. We have included cost based on **Non-Union (open shop)** labor.

24. The Assumptions & Clarifications (this document) shall take precedence over any other contract document referenced or included in the contract.   In the case of a conflict, this document enumerating our understanding, assumptions and clarifications shall take precedence over any other document or opinion as it relates to the conflict.

### Division 2 – Sitework

1. Price based on one mobilization.

2. Erosion control and dewatering are per plan.

3. We have not included any cost for items that may be reference or specifically called out in the geotechnical report.   Given we are not the designer, we have assumed that any items that require our attention have been shown on the actual civil plans.

4. Inspections regarding saved trees from a certified arborist are to be by Owner if not properly identified as being part of the work.  Any resultant cost from the mitigation cost as a result is by the Owner.

5. NA

6. NA

7. NA

8. FDC connections are assumed to be on the building and NOT located remotely.

9. Price assumes local water company to provide and install 1 water meter assembly with backflow preventer for each building structure with water service.

10. Pressure indicator valves (PIV) and/or pressure reducing valves (PRV) are excluded from this contract.

11. Contractor is not responsible for any hazardous waste material removal, including but not limited to, asbestos, septic fields, lead, PCB, TCP or other waste or containment, unsuitable soils and any other unforeseen sub-surface conditions.  Contractor has included earthwork per the design.   If soils conditions vary from those reasonably expected from the geotech report additional cost may be incurred (ie. Excess topsoil).

12. NA

13. Environmental remediation at the site is not included.

14. Monument sign, water features, trash cans, picnic tables, park benches, and Pergola / Gazebo





*ACI*

Springs at Six Mile
Fort Myers, FL

have been excluded.

### Division 3 – Concrete

1. Slabs will be provided design build by the contractor.
2. Porch and entrance stoops are to be poured separately after the building slab on grade and will receive a "broom" finish.
3. Termite treatment is included. ACI reserves the option to pretreat under the slab or post treat the studs using an approved system.
4. We have excluded any stone stone, gravel and / or porous fill under the slab. No means of radon mitigation has been included.
5. Seal coating and/or sealer on light weight 2nd floor porches is excluded.
6. Sealing of all concrete is excluded.
7. All bollards are excluded except at the 4 dumpster enclosures.

### Division 4 – Masonry

1. Stone included where shown on the plans. Stone columns will be provided only where indicated on the plans.

### Division 5 – Metals

1. 42" balcony railings at Apartment Unit Balconies are included; ACI reserves the right to use aluminum, metal or vinyl railings.
2. Aluminum Canopy at Clubhouse exterior entry is included.
3. Entry gates will be on an Access control system with card reader devices. (1 ½ card readers/unit)
4. NA

### Division 6 – Rough Carpentry

1. NA
2. Lumber is a traded commodity, therefore pricing is based on current cost at the time of purchase. ACI reserves the right to recoup additional costs from the owner for Substantial increases in SYP products or other commodities.
3. All framing will be per the plans and specifications, and current local and State building codes including all wood stair systems.
4. Roof Trusses are rated for a 35# Live load and 20# Dead load.
5. Finish Carpentry per plans and specifications or as used in previous building construction when specifications are vague.
6. NA
7. NA





*ACI*

Springs at Six Mile
Fort Myers, FL

8. NA

9. We have included standard house wrap and associated details over standard OSB.

10. ZIP system is NOT included.

11. Fypon brackets may be substituted.

### Division 6 – Exterior Finishes (Cementious Siding)

1. Exterior siding is cementious, pre-primed fiber material by Hardie, LP, Certainteed or equal.

2. All fiber-cement lap siding will be 7" exposure. Not 4" exposure will be used.

3. NA

4. NA

5. NA

### Division 7 – Roofing / Insulation

1. All insulation per the plans and specifications, and local and State codes.

2. Roof shingles are Tamko 30 year class B or equal, architectural style: Heritage Series, color: Weathered Wood over 15# felt.

3. Standing Seam / Metal roofing is included where shown.

4. NA

5. Aluminum Gutters will be 5" with 3"x4" downspouts and 4" diverters at all valleys.

6. ACI will tie-in each downspout to yard drains where applicable and indicated on Civil drawings.

### Division 8 – Windows & Glazing

1. Windows are included per plans.

2. Curtain Wall glass system, storefront system and interior glass windows in Clubhouse are included. We have included mill finish.

3. Mirrors at Clubhouse fitness room are included.

### Division 8 – Doors / Interior Finish Carpentry

1. Finish Carpentry per plans and specifications or as used in previous building construction when specifications are vague.

2. NA

3. Shoe molding is not included in the bid price.

4. NA

5. NA

6. Clubhouse Fireplace mantel on the exterior side and interior side of the fireplace are included.

 **ALBERTELLI** CONSTRUCTION

 *ACI*

Springs at Six Mile
Fort Myers, FL

7. not used

8. NA

9. NA

10. Patio doors are "8 lite" metal, tempered, Low-E glass.

11. not used

12. not used

13. NA

## Division 8 – Garage Doors

1. Garage Doors provided per plans and are not insulated.

## Division 9 --Finishes (Drywall)

1. Draft-stopping as indicated per plans.
2. Metal 90 degree corner bead is included. Rounded edge corner bead is not included.
3. 5/8" type X drywall included for walls and lids.
4. 5/8" type WR board in all wet areas.
5. A double layer of 5/8" exterior soffit board is included at balcony lids with smooth finish and paint.
6. Drywall "knockdown" finish on walls and ceilings shall be approved by Owner.
7. One (1) attic access panel per building included.

## Division 9 –Finishes (Flooring)

1. Vinyl Flooring - manufactured by Shaw, style: Array Cameron Plank LS VPS25, size 7"x48" is included.
2. Cork underlayment under Vinyl Flooring at 2nd floor Units is excluded.
3. Carpet Flooring – manufactured by Shaw, style: Criteria PS528, color: 00747 Thornwood on ½" thick, 5lb re-bond pad is included.
4. Rubber transition strips at Stair where carpet meets vinyl is included.
5. Sound backing on vinyl floors is NOT included.
6. Sport floor in club house will be gray vinyl in lieu of rubber.
7. No tile will be included for back splashes in concierge units.

## Division 9 –Finishes (Paint)

1. Paints by Sherwin Williams or Pittsburg Paints products per the finish schedules. Where name or number is not stipulated, products are based on materials considered industry standard for low VOC paint products.



 **ALBERTELLI** CONSTRUCTION



Springs at Six Mile
Fort Myers, FL

2. Apartments are to be one color walls & ceilings.  Concierge Units to have "white" ceilings with different wall color.  One (1) accent color wall is included for each Concierge Unit.

**Division 10 – Specialties**

1. Building & Unit Signage has been excluded.
2. One (1) 2-1/2 lb. ABC fire extinguisher per Apartment Unit is included.
3. Bid Price includes One (1) 1-hour rated lockable attic access door per Building.
4. All bath accessories are included.
5. TV Brackets and Televisions are not included.
6. One (2) sided gas fireplace at Clubhouse only is included.
7. Installation of Carwash & Dog-wash equipment included (pressure washer, vacuum, and dog wash unit) all to be provided by CPCI.
8. NA







Springs at Six Mile
Fort Myers, FL

**Division 11 – Appliances are included**

**Division 12 – Cabinetry and Window Coverings**

1. 30" Base and Wall Cabinetry material to be as manufactured by Saco – style: Marius, color: "Expresso" or equal.
2. Countertops are standard pre-molded plastic laminate, Formica - color: " Jamocha Granite" or equal
3. Pull hardware to be Stain Nickel Crescent Pull #346564-SN for cabinet drawers and doors.
4. Countertops for "Concierge Units" will be level (1) granite by i-Stone or Equal, color: "Giallo Ornamental" Granite will be sourced from China.
5. 2" faux wood horizontal windows blinds, Color to be "white" are included.
6. Level 1 granite will be in kitchens only (concierge units).  Bathroom vanities in concierge units will be preformed plastic laminate.
7. Matt finish on p-lam tops

**Division 13 – Swimming Pool**

1. A Swimming pool allowance has been included.
2. The pool, pool deck, pool fencing are included assuming the same plans as previous projects
3. Pool deck shall be stamped concrete or epoxy finish in lieu of Kool Decking.

**Division 15 – Fire Protection**

1. A design-build fire system is included. The system is based on local AHJ and NFPA 13R wet fire requirements with anti-freeze, if allowable by authority having jurisdiction.

**Division 15 – Plumbing**

1. Plumbing fixtures are included as per those specified in the bid provided to CPCI.
2. NA
3. not used
4. Electric water heaters are included.
5. CPVC or PEX will be used in lieu of copper where code permits.
6. All permits related to this scope included.

**Division 15 – HVAC**

1. The Condensing / Air Handler & Furnace is included in our base bid are based on a minimum 14 SEER equipment.  They HVAC system will be fully value engineered to meet code minimum.
2. Not used

---



 **ALBERTELLI** CONSTRUCTION



Springs at Six Mile
Fort Myers, FL

3. All duct systems will be fully value engineered utilizing flex ducts and duct boards.

4. not used

5. Fan coil units, condensing units, furnace are sized based on each Apartment's cubic foot requirements included per plans.

6. Bathroom exhaust fans and dryer ducting are included.

7. Comfort air balance is included, certified air balance is excluded.

8. One (1) digital non-programmable thermostat for each unit is included.

9. Outside air fans, dampers and sheet metal duct are not included in our bid.

10. not used..

11. The HVAC system meets all local building requirements.

12. All permits related to this scope of work are included.

13. Duct air leakage will be per code and not at 5% as specified.

**Division 16 – Electrical**

1. Lighting will be provided per plans or equal.

2. They electrical system will be fully value engineered to meet code minimum.

3. Primary Electrical, Transformers, phone and cable wiring are excluded.

4. Telephone prewire is included, but cable pre-wire is assumed to be by the cable company. We will install all rough in boxes as required.

5. Secondary feeds from the transformers are provided by the utility company.

6. All service gear will be sized to meet code.

7. All circuits will be size to meet code requirements.

8. A wireless fire alarm will be used in lieu of a hard wired system.

9. Phone / Cable Television structured wiring box by Others

10. All electrical transformers and metering will by local power company and are not included.

11. Punch boards, data loops & required raceways required for phone & internet by Others (cable provider).

12. not used

13. not used

14. Security, Data, Low Voltage wiring at the Clubhouse is included typical per plan on previous projects. Equipment for these items are not included in the bid price.

15. Bollards for protection of transformers, Fire Hydrants, FDC connections or any other items are excluded.

16. All work was priced per code, not per plans.

17. All fees and permits for electrical scope of work are included.



# Exhibit B

*CPCI EXEC. VERSION*

## CONTINENTAL PROPERTIES COMPANY, INC.
### CONTRACT DOCUMENTS

## EXHIBIT F – Contractor Clarifications
To the
Agreement between Continental 332 Fund LLC and <u>Contractor</u>
Dated _2_ / _20_ / _15_ for the Springs at Six Mile Cypress
<u>Fort Myers, FL</u>

*As ATTACHED Imgs 1-8*

GC INITIAL _____        26        OWNER INITIAL _JS_



CPCI

Springs at Six Mile
Fort Myers, FL

## Assumptions & Clarifications
### 02.18.15

**Division 1 – General Requirements:**

1. In this document, Continental Properties Company, Inc. will be referred to as CPCI, and Albertelli Construction, Inc. will be referred to as ACI.

2. This document must be attached to and made a part of any contract agreement associated with the project for which it was prepared.  In this case, the Springs at Six Mile Cypress, Fort Myers Florida

3. NA

4. All items are based on the "Typical Apartment" finishes in the attached interior and exterior finish schedules.

5. Building Permit fees are excluded from this proposal.  ACI will pay for all plan review fees, General Building Permit Fees at time of issuance.  Owner shall reimburse ACI for these fees.

6. Builders Risk Insurance will be provided by the Owner. ACI will be listed as "additional insured" for the project. All deductibles will be paid by the Owner.

7. All bonds are excluded from this proposal including but not limited to right of way bonds, maintenance bonds, termite bonds, payment and performance bond, etc.

8. NA

9. All local, state, & municipal impact fees, and water, sewer, tap fees, right of way bonds, off-site work bonds and permits are excluded from this proposal.

10. Utilities (power, water, sewer, cable and phone) are to be made available to the project site by the Owner.

11. Photometric study (for both site & pool area) and Energy Modeling are excluded from this proposal.  Additional lighting and/or revisions for energy savings which may be required to satisfy any local codes that are not shown on the plans will be at additional cost to the project.

12. It is assumed that the buildings will have (1) point of power, on the end of the building, but the buildings will not require a fire separation wall.

13. NA

14. Owner will pay for all 3rd party testing services required by specifications.  Reinpsections due to contractor or subcontractor failures will be at the cost of the contractor.

15. Any fees or payments for Special Inspections and Material testing have been excluded.

16. Water intrusion testing or consultants are not included.

17. Professional Surveys are excluded.  Slab certifications and as built utility record drawings to be provided by the contractor.

18. The one (1) year warranty period begins from the date of substantial completion or issuance

Page 1



*CRCI*

**Springs at Six Mile**
**Fort Myers, FL**

of a Certificate of Occupancy for each building structure. The contractually required turnover documents must be executed prior to release of keys. A list of open and incomplete items must be completed within 2 weeks.

19. All costs, unless specifically noted otherwise, are based upon manufacturer's standard listings of color, finish and style.

20. NA

21. All change orders must have the original proposal and all back up documents associated with the change attached to and made a part of the actual change order; and will be provided to the Owner no later than 30 days after the event.

22. The cost herein is based on commodities pricing at the time of issuance. Any increase in said pricing that effects material and/or labor costs are NOT included. ACI is NOT responsible for any cost or scheduling issues that are a result of commodities or their availability. All commodities, purchases, and contracts to be completed no later than 30 days after contract.

23. We have included cost based on **Non-Union (open shop)** labor.

24. The Assumptions & Clarifications (this document) shall take precedence over any other contract document referenced or included in the contract. In the case of a conflict, this document enumerating our understanding, assumptions and clarifications shall take precedence over any other document or opinion as it relates to the conflict.


**Division 2 – Sitework**

1. Price based on one mobilization.

2. Erosion control and dewatering are per plan.

3. NA

4. Inspections regarding saved trees from a certified arborist are to be by Owner if not properly identified as being part of the work. Any resultant cost from the mitigation cost as a result is by the Owner.

5. NA

6. NA

7. NA

8. FDC connections are per plans.

9. Price assumes 1 main master water meter and meter pit per plan.

10. Pressure indicator valves (PIV) and/or pressure reducing valves (PRV) are included.

11. Contractor is not responsible for any hazardous waste material removal, including but not limited to, asbestos, septic fields, lead, PCB, TCP or other waste or containment, unsuitable soils and any other unforeseen sub-surface conditions. Contractor has included earthwork per the design. If soils conditions vary from those reasonably expected from the geotech report additional cost may be incurred (ie. Excess topsoil).

12. NA


**ALBERTELLI**
CONSTRUCTION

*CPC*

Springs at Six Mile
Fort Myers, FL

13. Environmental remediation at the site is not included.

14. Monument sign, water features, trash cans, picnic tables, park benches, and Pergola / Gazebo have been excluded.

## Division 3 – Concrete

1. Slabs will be provided design build by the contractor.

2. Porch and entrance stoops are to be poured separately after the building slab on grade and will receive a "broom" finish.

3. Termite treatment is included. ACI reserves the option to pretreat under the slab or post treat the studs using an approved system. A 5-year bond will be provided.

4. We have excluded any stone stone, gravel and / or porous fill under the slab. No means of radon mitigation has been included.

5. Seal coating and/or sealer on light weight 2nd floor porches is excluded.

6. Sealing of all concrete is excluded.

7. All bollards are excluded except at the compactor and dumpster enclosures.

8. Acoustic sound insulation mat ¼" thick will be installed below gypcrete per plans.

## Division 4 – Masonry

1. Stone included where shown on the plans. Stone columns will be provided only at the vehicle gates.

## Division 5 – Metals

1. 42" metal balcony railings at Apartment Unit Balconies are included.

2. Entry Canopy/roof at Clubhouse exterior entry is included as designed.

3. Entry gates will be on an Access control system with card reader devices. (1 ½ card readers/unit)

4. NA

## Division 6 – Rough Carpentry

1. NA

2. Lumber is a traded commodity, therefore pricing is based on current cost at the time of purchase. ACI reserves the right to recoup additional costs from the owner for Substantial increases in SYP products or other commodities. Lumber must be purchased within 30 days of contract.

3. All framing will be per the plans and specifications, and current local and State building codes including all wood stair systems.

4. Roof Trusses are rated for a 35# Live load and 20# Dead load.

5. Finish Carpentry per plans and specifications or as used in previous building construction when specifications are vague.



*CPCI*

Springs at Six Mile
Fort Myers, FL

6. NA

7. NA

8. NA

9. We have included standard house wrap and associated details over standard OSB.

10. ZIP system is NOT included.

11. Fypon brackets or comparable are included.

### Division 6 – Exterior Finishes (Cementious Siding)

1. Exterior siding is cementious, pre-primed fiber material by Hardie, LP, Certainteed or equal.
2. All fiber-cement lap siding will be 7" exposure. Not 4" exposure will be used.
3. NA
4. NA
5. NA

### Division 7 – Roofing / Insulation

1. All insulation per the plans and specifications, and local and State codes.
2. Roof shingles are Tamko 30 year architectural grade, style: Heritage Series, color: Weathered Wood over 15# felt.
3. Standing Seam / Metal roofing is included where shown.
4. NA
5. Aluminum Gutters will be 5" with 3"x4" downspouts and 4" diverters at all valleys.
6. ACI will tie-in each downspout to yard drains.

### Division 8 –Windows & Glazing

1. Windows are included per plans.
2. Curtain Wall glass system, storefront system and interior glass windows in Clubhouse are included. We have included mill finish.
3. Mirrors at Clubhouse fitness room are included.

### Division 8 – Doors / Interior Finish Carpentry

1. Finish Carpentry per plans and specifications or as used in previous building construction when specifications are vague.
2. NA
3. Cabinet and Base shoe molding is included in the bid price.
4. NA

 **ALBERTELLI** CONSTRUCTION

CPC1

Springs at Six Mile
Fort Myers, FL

5. NA

6. Clubhouse Fireplace mantel on the exterior side and interior side of the fireplace are included.

7. not used

8. NA

9. NA

10. Patio doors are "8 lite" metal, tempered, Low-E glass; impact rated and meets code

11. not used

12. not used

13. NA

### Division 8 – Garage Doors

1. Garage Doors provided per plans with two remote operators, belt drive motor and emergency key release on all doors.

### Division 9 –Finishes (Drywall)

1. Draft-stopping as indicated per plans.

2. Metal 90 degree corner bead is included. Rounded edge corner bead is not included.

3. 5/8" type X drywall included for walls and lids.

4. 5/8" type WR board in all wet areas.

5. A double layer of 5/8" exterior soffit board is included at balcony lids with smooth finish and paint. ¼" painted fiber cement beaded porch panel fastened to soffit board.

6. Drywall "knockdown" finish on walls and ceilings shall be approved by Owner.

7. One (1) attic access panel per building included.

### Division 9 –Finishes (Flooring)

1. Vinyl Flooring - Included per finish schedule.

2. Cork underlayment under Vinyl Flooring at 2nd floor Units is excluded.

3. Carpet Flooring – Included per finish schedule.

4. Rubber transition strips at Stair where carpet meets vinyl is included.

5. Sound backing on vinyl floors is NOT included.

6. Sport floor in club house will be rubber.

7. No tile will be included for back splashes in concierge units.

### Division 9 –Finishes (Paint)

1. Paints by Sherwin Williams or Pittsburg Paints products per the finish schedules. Where name or number is not stipulated, products are based on materials considered industry standard for low


**ALBERTELLI** CONSTRUCTION

Springs at Six Mile
Fort Myers, FL

VOC paint products.

2. Apartments are to be one color walls & ceilings.  Concierge Units to have "white" ceilings with different wall color.  One (1) accent color wall is included for each Concierge Unit.

### Division 10 – Specialties

1. Building & Unit Signage has been excluded.  Contractor to install owner provided building and unit signage.
2. One (1)  5 lb. ABC fire extinguisher per Apartment Unit is included.
3. Bid Price includes One (1) 1-hour rated lockable attic access door per Building.
4. All bath accessories are included.
5. TV Brackets and Televisions are included.
6. One (2) sided gas fireplace at Clubhouse only is included.
7. Purchase and Installation of Carwash & Dog-wash equipment included (pressure washer, vacuum, and dog wash unit) all to be provided by the Contractor.
8. NA


**ALBERTELLI**
CONSTRUCTION

*CPCI*

Springs at Six Mile
Fort Myers, FL

**Division 11 – Appliances are included**

**Division 12 – Cabinetry and Window Coverings**
1. Base and Wall Cabinetry material to be per finish schedule.
2. Countertops are standard pre-molded plastic laminate, Formica - color as per finish schedule
3. Pull hardware to be Stain Nickel per finish schedule for cabinet drawers and doors.
4. Countertops for "Concierge Units" will be level (1) granite by i-Stone or Equal, color: "Giallo Ornamental" Granite will be sourced from China and installed in kitchens and baths.
5. 2" faux wood horizontal windows blinds, Color to be "white" are included on all windows and doors including the clubhouse
6. NA
7. Etched and Radiance finish on p-lam tops

**Division 13 – Swimming Pool**
1. A Swimming pool allowance has been included.
2. The pool, pool deck, pool fencing are included assuming the same plans as previous projects
3. Pool deck shall be Kool Decking.

**Division 15 – Fire Protection**
1. A design-build fire system is included. The system is based on local AHJ and NFPA 13R wet fire requirements with anti-freeze, if allowable by authority having jurisdiction.

**Division 15 – Plumbing**
1. Plumbing fixtures are included per those specified in the bid provided to CPCI; and specified in the finish schedule.
2. NA
3. not used
4. Electric water heaters are included.
5. CPVC or PEX will be used in lieu of copper where code permits.
6. All permits related to this scope included.

**Division 15 – HVAC**
1. The Condensing / Air Handler & Furnace is included in our base bid are based on a minimum 14 SEER equipment.
2. Not used
3.  Missing

3. All duct systems will be fully value engineered utilizing flex ducts and duct boards meeting code.



*CPCI*

Springs at Six Mile
Fort Myers, FL

4. not used
5. Fan coil units, condensing units, furnace are sized based on each Apartment's cubic foot requirements included per plans.
6. Bathroom exhaust fans and dryer ducting are included.
7. Comfort air balance is included, certified air balance is excluded.
8. One (1) digital non-programmable thermostat for each unit is included.
9. Outside air fans, dampers and sheet metal duct are not included in our bid.
10. not used..
11. The HVAC system meets all local building requirements.
12. All permits related to this scope of work are included.
13. Duct air leakage will be as specified in plans and specifications.

**Division 16 – Electrical**
1. Lighting will be provided per finish schedule.
2. They electrical system will be fully value engineered to meet code minimum.
3. Primary Electrical, Transformers, phone and cable wiring are excluded.
4. Telephone prewire is included, but cable pre-wire is assumed to be by the cable company. We will install all rough in boxes as required.
5. Secondary feeds from the transformers are included.
6. All service gear will be sized to meet code.
7. All circuits will be size to meet code requirements.
8. A wireless fire alarm will be used in lieu of a hard wired system, unless AHJ requires a hard wired system.
9. Phone / Cable Television structured wiring box by Others
10. All electrical transformers and metering will by local power company and are not included.
11. Punch boards, data loops & required raceways required for phone & internet by Others (cable provider).
12. not used
13. not used
14. Security, Data, Low Voltage wiring at the Clubhouse is included typical per AV/Low voltage plan and exhibit.
15. Bollards for protection of transformers, Fire Hydrants, FDC connections or any other items are excluded. *OLD # 16 Deleted*
16. All fees and permits for electrical scope of work are included.

04.08.2014

Page 8

*57*

# Exhibit C

| ACI COR # | Change Order Request Description | ACI COR Amt |
|---|---|---|
| | **Original Contract Amount** | |
| 4R | Dewatering Permit / NPDES Produced Groundwater Discharge Permitting | 118,496.78 |
| 8 | Provide and Install four flood lights for monument signs (revised) | 627.00 |
| 13 | Club House bump outs and light fixtures per ID dwgs | 3,799.62 |
| 14 | Garage 1 Add add drainage swale | 7,471.75 |
| 23 | Slab Elevation Certs | 2,873.75 |
| 24 | Labor to install owner supplied signage | 4,000.00 |
| 26 | Belt Drive Garage Door Openers in lieu of chain drive | 5,852.00 |
| 29 | Kool deck in lieu of stamped concrete at pool deck | 5,000.00 |
| 31R | Mold Material Testing, Treatment, Gererators | 115,596.34 |
| 32 | 1 Door access controlled at Fitness Room | 2,246.75 |
| 33 | 2nd phone dialer for vehicular access control | 7,769.58 |
| 34 | Add locking caps at FDC | 4,237.48 |
| 35 | PLAM Countertop Replacements | 18,524.72 |
| 36 | Bollards for FDC | 24,040.23 |
| | Unforseen Removal of Rocks from Soil | 54,862.50 |
| | Added Yard Drains per Kristin's request | 34,328.25 |
| | Modifications at Electrical Bank Locations | 55,719.40 |
| | Emergency Exit Gate at the Pool | 3,909.52 |
| | Various Other Credits | (86,239.00) |
| | **TOTAL:** | **$ 383,116.67** |