UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONTINENTAL 332 FUND, LLC,
CONTINENTAL 298 FUND LLC,
CONTINENTAL 306 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 347 FUND LLC,
CONTINENTAL 355 FUND LLC,
CONTINENTAL 342 FUND LLC,
CONTINENTAL 245 FUND LLC and
KMM CONSTRUCTION OF FLORIDA,
LLC,

       Plaintiffs,

v.                                                       Case No.: 2:17-cv-41-FtM-38MRM

DAVID ALBERTELLI, ALBERTELLI
CONSTRUCTION INC.,
WESTCORE CONSTRUCTION,
LLC, NATIONAL FRAMING, LLC,
MFDC, LLC, TEAM CCR, LLC,
BROOK KOZLOWSKI, JOHN
SALAT, KEVIN BURKE, KERRY
HELTZEL, AMY BUTLER, US
CONSTRUCTION TRUST,
FOUNDATION MANAGEMENT,
LLC, KMM CONSTRUCTION, LLC,
GEORGE ALBERTELLI, GREGORY
HILZ and GREAT AMERICAN
INSURANCE COMPANY,

       Defendants.
_____/

**OPINION AND ORDER**[1]

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink.

Before the Court are three motions to dismiss Albertelli Construction Inc.'s Fourth Amended Counterclaim and Third-Party Complaint, filed by Angelo Eguizabal (Doc. 298), Continental Properties Company, Inc. (Doc. 303), and four Counter-Defendants[2] (Doc. 302) and Counter-Plaintiff Albertelli Construction, Inc. (ACI)'s responses (Doc. 326; Doc. 327; Doc. 328).

**Background**

This case is a tangle of claims arising from apartment construction projects around the country. Broadly speaking, the owners of the projects sued some of its contractors and subcontractors for conducting a fraudulent scheme to siphon off millions of dollars. Some of those contractors and subcontractors have countersued for nonpayment, and ACI filed third-party claims against Eguizabal and Continental Properties. The Court has summarized the facts according to Plaintiffs in previous orders. In this Order, the Court will focus on the facts presented by ACI in its Fourth Amended Counterclaim and Third-Party Complaint, which the Court must take as true in deciding the Motions. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

Continental Properties owns and manages the Funds, who in turn each own an apartment complex. ACI was the general contractor for each of the Funds' complexes. And Eguizabal was Continental Properties' Vice President of Construction from 2007 to 2017. In its Fourth Amended Counterclaim and Third-Party Complaint, ACI asserts

---

Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Continental 332 Fund LLC (Six Mile Fund), Continental 298 Fund LLC (Savage Fund), Continental 306 Fund (New Braunfels Fund), and Continental 326 Fund (Rochester Fund) (collectively, the Funds).

nineteen counts, and the Movants here seek dismissal of thirteen of them under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007). A claim is facially plausible when the Court can draw a reasonable inference from the facts pled that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. But "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a twostep approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Claims alleging fraud must also state (1) precisely what statement was made; (2) the time and place of each statement and who made it; (3) the content of each statement and how it misled the plaintiff; and (4) what the defendant gained from the fraud. *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 694 (11th Cir. 2015).

## Discussion

The overlapping Motions present arguments that fall into six categories: (1) ACI lacks standing under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA); (2)

3

ACI's tort and equity claims are barred by express contracts; (3) ACI's fraud-in-inducement claims were not properly pled; (4) ACI's RICO claims are barred by *in pari delicto* and (5) the statute of limitations; and (6) the facts pled do not support ACI's RICO claims.

### A. Standing under the FDUTPA

In Count 3 of the Fourth Amended Counterclaim and Third-Party Complaint, ACI claims that Continental Properties and the Six Mile Fund violated the FDUTPA by duping ACI into performing extra work by surreptitiously replacing part of a contract. (Doc. 294 at 3, 12). During negotiations over a contract to construct the Six Mile apartment complex, a Continental Properties employee swapped out the Contractor Clarifications submitted by ACI for one that increased ACI's scope of work. (Doc. 294 at 3). ACI did not discover the deception until after it executed the contract. (Doc. 294 at 11). The parties disagree whether ACI can bring a FDUTPA claim based on these facts.

Continental Properties and the Six Mile Fund argue that a non-consumer can bring a claim only if it alleges injury to consumers. (Doc. 302 at 8). ACI responds that the Florida legislature eliminated the "consumer" requirement when it amended Fla. Stat. § 501.211(2) to replace "consumer" with "person." (Doc. 326 at 5-6). When it comes to interpreting the amended language, federal district courts in Florida are split between a conservative view–extending "FDUTPA protection only to persons who were deceived when buying or selling goods and services"–and the permissive view–extending "FDUTPA protection to any person injured by a deceptive or unfair practice, regardless of whether she sustained the injury in a sale or purchase." *Democratic Republic of the*

*Congo v. Air Capital Group., LLC*, 614 F. App'x 460, 468 (11th Cir. 2015) (declining to resolve the split).

The Court finds the permissive view to be correct. To start, the act states that its provisions "shall be *construed liberally*" to promote its policy goals, which includes protecting "the consuming public *and legitimate business enterprises* from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of *any trade or commerce*." Fla. Stat. § 501.202 (emphasis added). The act describes "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). And "thing of value" includes "without limitation, any moneys, donation, membership, credential, certificate, prize, award, benefit, license, professional opportunity, or chance of winning." Fla. Stat. § 501.203(9). These provisions make clear that the Florida legislature did not intend to only protect people who purchase something. In fact, even if FDUTPA protection were only available to consumers, the act's definition of the term shows that the legislature did not use the term as a limitation: "'Consumer' means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination." Fla. Stat. § 501.203(7).

Florida's intermediate courts have also adopted the permissive view. *See Vazquez v. Joseph Cory Holdings, LLC*, No. 6:16-CV-1307-ORL-40TBS, 2016 WL 11221088, at *3 (M.D. Fla. Nov. 10, 2016) (citing *Caribbean Cruise Line, Inc. v. Better*

5

*Bus. Bureau of Palm Beach Cty.*, 169 So. 3d 164 (Fla. Dist. Ct. App. 2015), *Bailey v. St. Louis*, 196 So. 3d 375 (Fla. Dist. Ct. App. 2016), and *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868 (Fla. Dist. Ct. App. 2016)). And "[a]bsent a clear decision from the Florida Supreme Court on this issue, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." *Id.* at *4 (quoting *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012)). The Court thus finds that standing under the FDUTPA does not require the involvement of a consumer, consumer transaction, or consumer injury. A deceptive act during the negotiation of a contract for professional services, as alleged here, is enough. The Movant's standing challenge fails.

### B. ACI's Equity Claims

In its Fourth Amended Counterclaim and Third-Party Complaint, ACI asserts quantum meruit (Count 5), unjust enrichment (Counts 6, 9, 13, and 15), and an equitable lien (Count 7). Continental Properties and the Funds argue that ACI's acknowledgement of express contracts bars it from asserting equity claims. (Doc. 302 at 8-13). ACI tacitly acknowledges that these counts are inconsistent with its breach-of-contract claims but argues that Federal Rule of Civil Procedure 8(d) permits pleading them in the alternative. (Doc. 326 at 6-7).

#### 1. Quantum Meruit and Unjust Enrichment

The apartment complexes at the core of ACI's claims are in three states. Florida law governs Counts 5-7, Minnesota law governs Counts 9, 10, and 13, and Texas law governs Count 15. In all three states, there can be no recovery on implied contracts when

an express contract covers the same subject matter. *Corn v. Greco*, 694 So. 2d 833, 834-35 (Fla. Dist. Ct. App. 1997); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). And parties in all three states may plead an implied contract in the alternative to an express contract only when the existence of the express contract is in dispute. *Mancini Enter., Inc. v. Am. Exp. Co.*, 236 F.R.D. 695, 699 (S.D. Fla. 2006); *Cooper v. Gates*, No. 3:16-CV-2630-L, 2017 WL 3209452, at *4 (N.D. Tex. Mar. 7, 2017), *report and recommendation adopted*, No. 3:16-CV-2630-L, 2017 WL 7512934 (N.D. Tex. Aug. 11, 2017); *Nw. Airlines, Inc. v. Astraea Aviation Servs. Inc.*, 111 F.3d 1386, 1392 n.4 (8th Cir. 1997). But Texas law differs from Florida and Minnesota in one important respect: it bars third-party beneficiaries of a contract from asserting implied-contract claims. *Humana, Inc. v. Shrader & Assocs., LLP*, 584 B.R. 658, 686 (S.D. Tex. 2018) (citing *ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 663-64 (Tex. App. 2016).

All parties agree that ACI executed an express contract with each fund but not with Continental Properties. And the implied contracts asserted by ACI cover the same construction work covered by the express contracts. Each implied-contract claim seeks payment for the same work at the heart of the corresponding breach-of-contract claim. So Florida and Minnesota law bars ACI's implied-contract claims against the Funds but not against Continental Properties. Texas law, on the other hand, bars ACI's implied-contract claims against the Funds and third-party beneficiary Continental Properties. The Court will thus dismiss Counts 5 and 6 as to the Six Mile Fund, Count 9 as to the Savage Fund, Count 13 as to the Rochester Fund, and Count 15 as to the New Braunfels Fund and Continental Properties.

2. Equitable Lien

In Count 7, ACI seeks to impose an equitable lien on the Springs at Six Mile Cypress apartment complex based on the Six Mile Fund's and Continental Properties' alleged fraud and to prevent unjust enrichment. (Doc. 294 at 16). In Florida, an equitable lien cannot exist when the party claiming it has an adequate remedy at law. *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1297 (S.D. Fla. 2007). ACI does not allege why its breach-of-contract claim against Six Mile Fund, owner of the Six Mile complex, is inadequate. (Doc. 294 at 4). So Count 7 must be dismissed. *See Buffalo Tank Corp. v. Envtl. Control Equip., Inc.*, 544 So. 2d 1037, 1039 (Dist. Ct. App. Fla. 1989) (holding that an equitable lien claim should be dismissed when the plaintiff failed to allege the absence of an adequate remedy at law).

**C. ACI's Fraud-in-the-Inducement Claims**

Counts 10 and 11 are based on misrepresentations made by Continental Properties during the construction of the Springs at Egan Drive (the Savage Project) in Scott County, Minnesota. ACI alleges that Continental Properties induced it to accept Change Order 10 to the Savage Contract, which reduced ACI's fee, by falsely stating that the Savage Fund would secure government permits ACI required to finish the job. Continental Properties and the Savage Fund did not obtain the permits, which frustrated ACI's ability to meet its deadlines. (Doc. 294 at 22-23). ACI seeks to either rescind Change Order 10 or recover damages on a theory of fraud in the inducement.

Continental Properties and the Savage Fund argue that Counts 10 and 11 are barred by ACI's breach-of-contract claim (Count 8). Count 8 charges the Savage Fund with several breaches of the Savage Contract, including failure to "provide permits and

design documents in a timely manner," which "delayed ACI's work and made it more expensive to perform." (Doc. 294 at 19). ACI never tries to differentiate Counts 10 and 11 from Count 8 but argues that it can still pursue all three counts. (Doc. 326 at 7-8).

Continental Properties, the Savage Fund, and ACI all rely solely on *Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302 (Ct. App. Minn. 1992).[3] The *Hanks* court explains that parties may not convert contract claims to tort claims, but "[e]xtra-contract damages are recoverable when there is an independent tort." *Hanks*, 493 N.W.2d at 307. "To recover under theories of both contract and tort, a plaintiff must prove separate damages for fraud and for breach." *Id.* at 308. "The test is whether a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself." *Id.*

ACI's fraud claim is that Continental Properties lied when it said Savage Fund would timely secure permits necessary for the project. But the Savage Fund's obligation to secure the permits is a basis for ACI's breach-of-contract claim. Counts 10 and 11 are thus not independent of Count 8, and Minnesota law limits ACI to remedies for breach of contract. *See AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086-87 (8th Cir. 1998). So Counts 10 and 11 will be dismissed, and the Court need not address the remaining challenges to those claims.

**D. ACI's RICO claims**

Counts 16-19 are based on two alleged conspiracies. They first accuse Continental Properties and Eguizabal of conspiring to enrich themselves by using mail and wire communications to defraud ACI and other contractors. The scheme used false

---

[3] The Savage Fund also cites a Florida case, which the Court disregards because Minnesota law controls this issue.

promises to induce contractors to waive legitimate claims for change orders, forego rights to compensation, and allow their compensation to be offset by liquidated damages. In the second scheme, Eguizabal solicited bribes and kickbacks from ACI and other contractors in exchange for contracts to build Continental Properties' projects. The proceeds of both schemes were reinvested into the conspiracies. (Doc. 294 at 33-37).

Counts 16-19 charge Eguizabal and Continental Properties with violating 18 U.S.C. § 1962(a)-(d). Eguizabal and Continental Properties argue the RICO counts are barred by *in pari delicto* and the statute of limitations, and that they fail to meet the requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6). The Court will dismiss Counts 16-19 because neither underlying conspiracy is actionable as pled: the kickback scheme is barred by the statute of limitations, and the fraud scheme does not satisfy Rule 9(b).

### 1. The Kickback Conspiracy

Continental Properties first awarded ACI with a construction project in 2011, and the conspiracies started soon after. Between September 2011 and May 2012, Eguizabal required ACI to pay him $77,800 and provide "private vacations, entertainment and other items" to ensure Continental Properties would continue to pay ACI for its work. (Doc. 294 at 42). In April 2013, Eguizabal and ACI executed a Commission Sales Agreement, which provided that ACI would pay Eguizabal a "commission" for each contract Continental Properties awarded to ACI. (Doc. 294 at 43-44; Doc. 307). From November 2011 to October 2015, ACI paid Eguizabal $1,065,623 in bribes and kickbacks. (Doc. 294 at 44). By mid-2015, Eguizabal stopped funneling new Continental Properties contracts to ACI. (Doc. 294 at 45). In April 2016, ACI stopped paying Eguizabal, who harassed ACI by

interfering with its subcontractors. Ultimately, ACI ceased work on its construction projects because "Eguizabal and Continental choked it to financial death." (Doc. 294 at 50).

In a RICO case, the four-year statute of limitations begins to run when the plaintiff discovers or should have discovered the injury, no matter when the pattern of racketeering is discovered. *Rotella v. Wood*, 528 U.S. 549 (2000). The Eleventh Circuit's "separate accrual" rule "provides that if a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by the new act." *Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013). An injury is not "new and independent" when it is a continuation of an initial injury. *Id.* And a predicate act is not "new" if it is "merely a reaffirmation of a previous act." *Id.* ACI may recover for new injuries discovered or discoverable after December 3, 2014, so long as the predicate acts that caused the injuries were "new." As ACI acknowledges, it cannot use the "separate accrual" rule to revive claims based on predicate acts discovered outside the limitations period. (Doc. 327 at 10).

Eguizabal and Continental Properties argue that ACI's RICO claims are barred by the four-year statute of limitations, which they say began to run in 2011 when ACI started doing business with Continental Properties and paid its first bribe to Eguizabal. (Doc. 298 at 13-14). The Fourth Amended Complaint indeed alleges that the kickback conspiracy began in 2011. (Doc. 294 at 36). But ACI relies on the "separate accrual" rule to restart the limitations clock with "at least one bribe (Doc. 294 at ¶ 233) and a multitude of other predicate acts that occurred within the applicable statute of limitations (*Id.* at ¶¶ 238 – 252)." (Doc. 327 at 10). ACI paid its final bribe to Eguizabal in March 2016. And based

11

on the cited paragraphs, these are the "other predicate acts" to which ACI refers: Eguizabal and David Albertelli created contractors and subcontractors (e.g., Westcore) to work on Continental Properties projects and false resumes and financial reports for the new entities; Continental Properties awarded Westcore three contracts; ACI continued to struggle to receive payment from Continental; Eguizabal continued to demand kickbacks; ACI stopped paying the kickbacks; and Eguizabal interfered with ACI's subcontractors. (Doc. 294 at 42-45).

ACI's claims based on the kickback conspiracy first accrued when ACI learned that Eguizabal would hinder its business with Continental Properties unless ACI paid him bribes. ACI discovered the full extent of the scheme, at the very latest, when it executed the Commission Sales Agreement on April 5, 2013. In that agreement, ACI promised to pay kickbacks (called "commissions" in the contract) on all future Continental Properties projects. So ACI cannot plausibly claim that it discovered a new injury each time it made a payment to Eguizabal. The bribery payments were not sufficiently independent of the Commission Sales Agreement to restart the civil RICO clock.

### 2. The Conspiracy to Defraud Contractors

Under RICO, fraudulent predicate acts must meet Rule 9(b)'s heightened pleading threshold. *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008). This normally means "a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (internal quotations omitted). Eguizabal and Continental Properties argue that ACI's allegations of mail fraud and wire

fraud, the fraud scheme's predicate acts, fall short of the Rule 9(b) standard. ACI did not directly respond to this argument.

The crux of the fraud conspiracy is that Continental induced contractors to forgo payments for ongoing projects by falsely promising them future work. ([Doc. 294 at 34-35](Doc. 294 at 34-35)). ACI asserts mail fraud and wire fraud as the predicate acts. But it does not allege the time, place, or substance of any fraudulent promises or who made them. Nor does ACI state a time it was injured by this scheme. ACI gets closest in Paragraph 250 of its Fourth Amended Counterclaim and Third-Party Complaint by alleging, "ACI continued to struggle to receive sufficient payments from Continental to keep its projects moving forward and continue to pay Eguizabal." ([Doc. 294 at 48](Doc. 294 at 48)). But Paragraph 250 is woefully insufficient. Under RICO, at least two acts of racketeering activity are required to show a pattern; ACI has not alleged with specificity even one fraudulent act. ACI's RICO claims thus cannot be predicated on the fraud conspiracy.

Because both of ACI's RICO theories fail, Counts 16-19 must be dismissed, and the Movants' remaining arguments are moot.

Accordingly, it is now

**ORDERED:**

Third Party Defendant Angelo Eguizabal's Motion to Dismiss ([Doc. 298](Doc. 298)), Third Party Defendant Continental Properties Company, Inc.'s Motion to Dismiss ([Doc. 303](Doc. 303)), and Counter-Defendants' Motion to Dismiss ([Doc. 302](Doc. 302)) are **GRANTED in part and DENIED in part**.

(1) Counts 5 and 6 are **DISMISSED** as to Continental 332 Fund, LLC (Six Mile Fund) but not as to Continental Properties Company, Inc.

(2) Count 9 is **DISMISSED** as to Continental 298 Fund, LLC (Savage Fund) but not as to Continental Properties Company, Inc.

(3) Counts 10, 11, 15, 16, 17, 18, and 19 are **DISMISSED**.

(4) Albertelli Construction, Inc. is **ORDERED** to file a Fifth Amended Complaint asserting only the surviving counts on or before **May 20, 2019**, and Third-Party Defendants and Counter Defendants shall file answers within fourteen (14) days thereafter.

**DONE** and **ORDERED** in Fort Myers, Florida this 7th day of May, 2019.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record