UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONTINENTAL 332 FUND, LLC,               Case No. 2:17-cv-000041-SPC-MRM
CONTINENTAL 298 FUND, LLC
CONTINENTAL 306 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 347 FUND LLC,
CONTINENTAL 355 FUND LLC,
CONTINENTAL 342 FUND LLC, and
CONTINENTAL 245 FUND LLC

      Plaintiffs,

vs.

DAVID ALBERTELLI, ALBERTELLI
CONSTRUCTION, INC., GEORGE
ALBERTELLI, WESTCORE CONSTRUCTION,
LLC, (Del.), WESTCORE CONSTRUCTION,
L.L.C. (Nev.), FOUNDATION MANAGEMENT
LLC, NATIONAL FRAMING, LLC, KMM
CONSTRUCTION LLC, MFDC LLC, TEAM
CCR, LLC, BROOK KOZLOWSKI, JOHN
SALAT, KEVIN BURKE, KERRY
HELTZEL, AMY BUTLER, and US
CONSTRUCTION TRUST

      Defendants.

                                /

ALBERTELLI CONSTRUCTION, INC.,

      Counterclaim and Third Party
      Plaintiff,

v.

CONTINENTAL 332 FUND LLC,
CONTINENTAL 298 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 306 FUND LLC,

Counterclaim Defendants,

and

CONTINENTAL PROPERTIES GROUP,
INC., a/k/a CONTINENTAL
PROPERTIES COMPANY, INC.,

Third Party Defendant.

_____/

## FIFTH AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT

[Document continues on next page]

2

## TABLE OF CONTENTS

**Page**

**ALLEGATIONS COMMON TO ALL COUNTS** ...........................................................1

**CLAIMS RELATING TO THE SIX MILE PROJECT**.....................................................3

    COUNT I – BREACH OF CONTRACT ......................................................10

    COUNT II – FRAUD.................................................................................10

    COUNT III – DECEPTIVE AND UNFAIR TRADE PRACTICES ..............................12

    COUNT IV – TORTIOUS INTERFERENCE................................................12

    COUNT V – QUANTUM MERUIT ..........................................................14

    COUNT VI – UNJUST ENRICHMENT.....................................................15

**CLAIMS RELATING TO THE SAVAGE PROJECT** ...................................................16

    COUNT VIII – BREACH OF CONTRACT ...................................................16

    COUNT IX — UNJUST ENRICHMENT......................................................20

**CLAIMS RELATING TO THE ROCHESTER PROJECT** ..........................................21

    COUNT XII – BREACH OF CONTRACT.....................................................21

    COUNT XIII – UNJUST ENRICHMENT ....................................................25

**CLAIMS RELATING TO THE NEW BRAUNFELS PROJECT** ................................26

    COUNT XIV – BREACH OF CONTRACT ...................................................26

**JURY TRIAL DEMAND** ..............................................................................29

**CERTIFICATE OF SERVICE**........................................................................29

Plaintiff, Albertelli Construction, Inc. ("Counterclaim Plaintiff" or "ACI"), by and through its undersigned counsel, sues Counterclaim Defendants, Continental 332 Fund LLC ("Six Mile Fund"), Continental 298 Fund LLC ("Savage Fund"), Continental 326 Fund LLC ("Rochester Fund"), Continental 306 Fund LLC ("New Braunfels Fund"), and Third Party Defendants Continental Properties Group, Inc., a/k/a Continental Properties Company, Inc. ("Continental") and Angelo Eguizabal ("Eguizabal"), and alleges:

## ALLEGATIONS COMMON TO ALL COUNTS

1.      This is an action for damages which are in excess of $75,000.00, exclusive of interest, costs, and attorney's fees.

2.      Counterclaim Plaintiff is a Florida corporation authorized to do business and doing business in the State of Florida, with its principal place of business in Jacksonville, Duval County, Florida.

3.      Counterclaim Defendant Six Mile Fund is a Wisconsin limited liability company that owns an apartment complex in Ft. Myers, Lee County, Florida, known as the Springs at Six Mile Cypress (the "Six Mile Project"), more particularly described as follows:

> TRACT "MF", OF SIX MILE CROSSING, A SUBDIVISION ACCORDING TO THE PLAT THEREOF RECORDED AS INSTRUMENT NO. 2015000032022, OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA.

(the "Six Mile Property").

4.      Counterclaim Defendant Savage Fund is a Wisconsin limited liability company that owns an apartment complex in Savage, Minnesota, known as the Springs at Egan Drive (the "Savage Project").

5. Counterclaim Defendant Rochester Fund is a Wisconsin limited liability company that owns an apartment complex in Rochester, Minnesota, known as the Springs at South Broadway (the "Rochester Project").

6. Counterclaim Defendant New Braunfels Fund is a Wisconsin limited liability company that owns an apartment complex in New Braunfels, Texas, known as the Springs at Creekside (the "New Braunfels Project").

7. Third Party Defendant Continental is a Wisconsin corporation that owns and manages Six Mile Fund, Savage Fund, Rochester Fund and New Braunfels Fund on behalf of itself and certain investors. All actions alleged herein to have been taken by Continental were made in its capacity as manager of, and on behalf of, Six Mile Fund, Savage Fund, Rochester Fund or New Braunfels Fund, as applicable, except where specifically alleged otherwise.

8. This court has long-arm jurisdiction over Counterclaim Defendant Six Mile Fund and Third Party Defendant Continental as they own, possess or operate a business on real property in the State of Florida and this action arises out of said activities in the State of Florida. Additionally, each of the Counterclaim Defendants has submitted to the jurisdiction of this Court by seeking affirmative relief in this Court in their Fourth Amended Complaint.

9. Venue is proper in this district in that the Six Mile Property is located within this district.

10. Plaintiff has engaged the undersigned attorneys and is obligated to pay a fee for their services herein.

11. All conditions precedent to the maintenance of this action have been performed, have occurred or have been waived.

## CLAIMS RELATING TO THE SIX MILE PROJECT

12.    ACI is a general contractor in the business of constructing, among other things, multi-family housing projects, including apartment complexes.

13.    ACI entered into negotiations with Continental to construct the Six Mile Project – a 288 unit apartment complex – in late 2014 which continued into early 2015.

14.    The negotiations led to the execution of an agreement between ACI and the Six Mile Fund (the "Six Mile Contract") consisting of three parts:

(1)    an AIA Document A101 – 2007 Standard Form of Agreement Between Owner and Contractor;

(2)    an AIA Document A201 – 2007 General Conditions of the Contract for Construction; and

(3)    a Contract Agreement document dated February 20, 2015, containing 28 exhibits to the Contract.

15.    The Six Mile Contract is in the possession of Six Mile Fund and is too voluminous to attach as an exhibit to this Counterclaim.

### Contractor Clarifications Fraud

16.    The "Contract Agreement" portion of the Six Mile Contract was materially and fraudulently altered by Justin Sell, the associate project manager for the Six Mile Project for Continental.  In particular, ACI submitted its Exhibit F "Contractor Clarifications" in the form attached hereto as **Exhibit A**.  However, without informing ACI, and with the intent to deceive ACI, Sell switched out the Exhibit F "Contractor Clarifications" submitted by ACI for the set attached as **Exhibit B** that were purportedly included in the "Contract Agreement" portion of the Six Mile Contract.

17.     The Exhibit F "Contractor Clarifications" fraudulently inserted into the Contract in lieu of those submitted by ACI were substantially more favorable to Continental to the tune of hundreds of thousands of dollars of items that Sell fraudulently and surreptitiously inserted into ACI's scope of work without ACI's knowledge or consent.

18.     Once ACI discovered Sell's fraudulent switch-out of its Contractor Clarifications, Continental conceded several items of work that Sell had surreptitiously inserted were not, in fact, part of ACI's contract.  Nevertheless, ACI still suffered damages from Continental's attempt to dupe ACI into performing work which it was not obligated to perform and for which Continental had paid no consideration.

### Delays Occurring During Course of Construction

19.     ACI began site work activities in March 2015, including earthwork, construction of access roads, installation of underground utilities and building pad construction.

20.     ACI's site work activities were on the critical path for construction because, until these activities were completed, ACI could not obtain approval from government authorities to commence work on vertical construction.

21.     During the period from March 2015 to January 2016, site work activities were negatively affected by significant and, in some cases, severe rainfall.  In the month of July 2015 alone, the site received nearly double the historical average for rainfall in the month of July.

22.     The severe rainfall resulted in unfavorable site conditions which prevented work from progressing as planned and hindered the productivity of ACI and its subcontractors.

4

23.     The soil conditions on site did not allow water to percolate after each rain event, resulting in standing water on the site for extended periods of time.

24.     Due to the soil conditions on site, and rainfall typically encountered in Ft. Myers over the planned course of the project, it was reasonably foreseeable that dewatering would be required in order to allow site work and underground utility work to be performed. However, Continental failed to apply for a dewatering permit until nearly five months after site work began.  As a result, ACI was not able to remove water from the site after each rainfall event.  This resulted in unfavorable conditions for site work multiple days after each rain event.

25.     The inability to dewater the site for those five months due to the lack of a permit, coupled with rainfall during the month of July 2015 that was nearly double the historical average, and severe rainfall experienced in subsequent months, caused substantial delays to the project in general and the site work and underground utility work in particular.

26.     The unfavorable site conditions had a direct and significant negative impact on the start of vertical construction.  Vertical construction activities could not proceed until the waterline/fire hydrant clearances were issued, which was dependent upon the installation of necessary underground utilities.  Underground utilities work was most susceptible to the flooding caused by the rain events and lack of dewatering.  The final waterline clearance was not issued until January 11, 2016.

27.     The unfavorable conditions caused by the lack of dewatering and extreme rainfall events required material changes to ACI's means and methods of construction and caused substantial delays to ACI's work on the Six Mile Project.  ACI incurred extended

5

general conditions and other costs as a result of these delays which were compensable delays under the Six Mile Contract.

28.     Continental, acting as manager of Six Mile Fund and on its behalf, also actively interfered with ACI's supervision and direction of the work under the Contract, by communicating directly with ACI's subcontractors, by directing ACI's subcontractors to perform the work contrary to ACI's directions and out-of-sequence with ACI's project schedule, and otherwise.  Continental's active interference also delayed the progress of ACI's work under the Six Mile Contract.

29.     Despite demand, Six Mile Fund failed and refused to approve appropriate extensions of the contract time to account for the weather impact delays and the delays caused by the owner's active interference, and further failed to approve change orders for ACI's resulting extended general conditions and other costs.

### **Continental's Failure to Pay in Accordance with the Contract**

30.     From the beginning of the Six Mile Project (and on the Rochester Project, as alleged more particularly in Count IX below), Continental insisted upon using a new system for processing payment – known as the Textura system – which was a web-based system for processing payments.  Use of the Textura system was not required by the contract, but Continental insisted it would only process payments submitted through Textura.

31.     The Textura system was new to Continental and ACI frequently was required to obtain system support from Continental's Information Technology (IT) employees who, in turn, had to obtain updates and fixes to address problems with the system that repeatedly held up payment.

32.    Despite the numerous technical difficulties ACI encountered with Textura, Continental refused to process payments until they were cleared through Textura, resulting in delays of weeks and, in some cases, months before payment would be processed.

33.    Continental also delayed payments to ACI over exceedingly minor discrepancies in supporting paperwork submitted by ACI or its subcontractors, holding up millions of dollars in payments to downstream subcontractors.

34.    Continental's failure to pay ACI except through Textura, and its late payment to ACI through its use and implementation of Textura, was a breach of the duties of Six Mile Fund under the Six Mile Contract, as nothing in the Six Mile Contract required ACI to submit its payments through that system, and Continental implemented payment through Textura in an unreasonable way which interfered with ACI's performance under the Six Mile Contract.

35.    Continental's failure to pay timely negatively affected ACI's ability to perform under the Six Mile Contract and damaged ACI's relationship with its subcontractors whose payments were delayed because of the Textura issues.

**Continental's Unwarranted Withholding of Payment**

36.    Beginning in March 2015, ACI submitted regular monthly applications for payment for progress payment amounts which were then reviewed and certified by the architect in accordance with the terms of the Six Mile Contract.

37.    In spite of multiple delays in payment as previously alleged, in general, Continental, acting as manager of Six Mile Fund, would process ACI's payment applications for the amounts certified by the architect.

7

38.     However, beginning with the application for payment for the month of September 2016, Continental began withholding amounts certified by the architect. Despite the architect's certification of the amount submitted by ACI as due and owing for the month of September 2016, Continental unilaterally processed ACI's payment application for an amount less than what was fully due (but which included all amounts due and owing to ACI's subcontractors and suppliers). Continental then withheld payment of ACI's monthly payment application for October 2016 for the amounts attributable to ACI's general conditions expenses, buyout savings, and fee, but again processed payment for all amounts due to ACI's subcontractors and suppliers. On the September 2016 payment application, Continental withheld $36,667.19 from ACI, and on the October 2016 payment application, Continental withheld $176,251.13 from ACI, even though these amounts were certified as due and owing by the architect.

39.     Continental's alleged justification for this withholding was its contention that ACI was liable for liquidated damages for late delivery of portions of the project. However, Continental's withholding caused Six Mile Fund to breach the Six Mile Contract, as no proper notification was provided to ACI regarding the reasons for the withholding and, in any event, it is the architect who is empowered to withhold certificates for payment under the Six Mile Contract, and the architect had certified these amounts as due and payable to ACI.

40.     Continental's withholding caused Six Mile Fund to breach its duties under the Six Mile Contract because the delays for which Continental asserted liquidated damages were in part caused by the adverse weather conditions previously described. Continental never provided notice to ACI of the amount of liquidated damages it was withholding on Six Mile Fund's behalf or how they were computed, nor did it account for the compensable

8

delays experienced by ACI.  Instead, Continental arbitrarily withheld payment of amounts certified by the architect as due to ACI.

41.    Continental's improper withholding of ACI's payments in breach of Six Mile Fund's duties under the Six Mile Contract negatively impacted ACI's ability to continue performing under the Six Mile Contract.

### Continental's Refusal to Process Change Orders

42.    ACI also performed extra work on the Six Mile Project having a value of over $383,000 for which it requested change orders.  Attached hereto as **Exhibit C** is a summary description of such extra work and the amount attributable to each item of extra work.

43.    ACI submitted requests for change orders for most or all of the amounts reflected in Exhibit C in accordance with the requirements of the Six Mile Contract. However, Continental wrongfully and in breach Six Mile Fund's duties under the Six Mile Contract failed and refused to process change orders for the extra work ACI performed.

### Contract Termination

44.    On December 23, 2016, ACI placed Six Mile Fund, through Continental, on notice of its payment defaults and of ACI's reservation of its right to stop work under the Six Mile Contract if the payment default was not cured within seven (7) days.

45.    Six Mile Fund did not cure its payment default.  Accordingly, by letter dated January 5, 2017, ACI gave notice that it would begin demobilizing from the Six Mile Project.

46.    The next day, January 6, 2017, Continental, as manager of the Six Mile Fund, purported to terminate ACI's right to perform work on the Six Mile Project.

### ACI's Damages

47.    ACI has suffered damages due to Six Mile Fund's:  (a) refusal to grant extensions of the contract time for delays beyond ACI's control, (b) failure to pay in accordance with the Contract; (c) improper withholding of payment to ACI; (d) refusal to process and pay for valid change orders for costs ACI incurred which were beyond its scope of work under the Contract, (e) improper withholding of payment from ACI for work performed, and (f) improper termination of the Contract.

## COUNT I – BREACH OF CONTRACT – SIX MILE PROJECT

48.    Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 47 above and incorporates the same herein by reference.

49.    ACI substantially performed its obligations under the Six Mile Contract up until the termination of the Six Mile Contract.

50.    The Six Mile Fund materially breached the Six Mile Contract by its failure to make payment to ACI and the other breaches as alleged herein.

51.    ACI's damages due to Six Mile Fund's breach of the Six Mile Contract include, without limitation, unpaid interest on payments not timely paid under the Six Mile Contract; the amounts improperly withheld by Six Mile Fund, together with accrued interest; the contract balance earned through performance as of the date of the improper termination; the value of the extra work performed by ACI without compensation by Six Mile Fund; ACI's extended general conditions costs and other costs occasioned by the delays in the project that were beyond its control; and other damages, in an amount to be proven at trial.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund, LLC for damages together with prejudgment interest, court costs and such other relief as the court deems just.

10

## COUNT II – FRAUD – SIX MILE PROJECT

52.    Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 18 above and incorporates the same herein by reference.

53.    Continental, on its own and as manager of Six Mile Fund, acting through Justin Sell, its Associate Project Manager and agent, misrepresented the Contractor Clarifications included in the Contract Agreement document to be the Contractor Clarifications submitted by ACI which formed the basis of the Six Mile Contract, when in fact Sell had altered the Contractor Clarifications document to make it more favorable to Continental.

54.    Continental, on its own and as manager of Six Mile Fund, intended to and did induce ACI to enter into the Six Mile Contract based on his false representation.

55.    ACI acted in reliance upon Sell's misrepresentation by entering into the Six Mile Contract and undertaking performance thereunder.

56.    ACI has suffered damages as a result of Continental's fraud in an amount to be proven at trial.

57.    ACI reserves the right to seek amendment of this count to seek punitive damages, in addition to its other damages, at the appropriate time.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund LLC and Third Party Defendant Continental Properties Group, Inc., a/k/a Continental Properties Company, Inc., for damages together with prejudgment interest, court costs and such other relief as the court deems just.

11

## COUNT III – DECEPTIVE AND UNFAIR TRADE PRACTICES – SIX MILE PROJECT

58.    Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 18, and 53 through 55 above and incorporates the same herein by reference.

59.    Continental's actions in misrepresenting the Contractor Clarifications inserted into the Contract as being the same as those submitted by ACI is a deceptive and unfair trade practice.

60.    Continental's deceptive and unfair trade practices caused ACI to incur actual damages in an amount to be proven at trial.

61.    ACI seeks its attorney's fees herein pursuant to § 501.211(2), Florida Statutes.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund LLC and Third Party Defendant Continental Properties Group, Inc., a/k/a Continental Properties Company, Inc. for damages together with prejudgment interest, court costs and attorneys' fees.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS – SIX MILE PROJECT

62.    Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 14 above and incorporates the same herein by reference.

63.    This is an action for damages for tortious interference with contractual relations which seeks relief independent of any remedies to which ACI may be entitled as against Six Mile Fund under the Six Mile Contract.

64.    ACI subcontracted portions of the work under the Six Mile Contract to various subcontractors who performed the work under ACI's supervision and direction. ACI's subcontracts required each subcontractor to follow the instructions and directions of

12

ACI's project superintendent and to perform its work in accordance with ACI's construction progress schedule.

65.    Continental, as manager of Six Mile Fund, had knowledge of ACI's contractual relationships with the various subcontractors through, among other things, information submitted to Continental through the Textura payment system.

66.    Continental knowingly and intentionally procured the breach by various subcontractors of their contractual duty to follow the directions and instructions of ACI's project superintendent by, among other things, contacting ACI's subcontractors and directing them to perform their work contrary to ACI's instructions.

67.    Continental further knowingly and intentionally procured the breach by various subcontractors of their contractual duty to perform their work in accordance with ACI's construction progress schedule by, among other things, contacting ACI's subcontractors and directing them to perform their work out of sequence with ACI's construction progress schedule.

68.    Continental further knowingly and intentionally interfered with ACI's contractual relations with its subcontractors by causing ACI's payments under the Six Mile Contract to be improperly withheld and delayed and then falsely telling ACI's subcontractors that ACI was the cause of the payment delay.

69.    Continental further knowingly and intentionally interfered with ACI's contractual relations with its subcontractors by refusing to process payment for ACI's general conditions and fees based on alleged claims for liquidated damages, while insisting on full payment to ACI's subcontractors, directly undermining ACI's supervision of its

13

subcontractors and preventing ACI from passing through the alleged liquidated damages to the responsible subcontractors in accordance with its subcontracts.

70.    ACI suffered damages as a result of Continental's tortious interference with ACI's contractual relationships with its subcontractors, including without limitation delays to the performance of the work, inefficiency in the performance of the work and other costs to attempt to overcome the effects of Continental's tortious interference.

71.    ACI reserves the right to seek amendment of this count to seek punitive damages at the appropriate time.

WHEREFORE, Counterclaim Plaintiff demands judgment against Third Party Defendant Continental Properties Group, Inc., a/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

## COUNT V – QUANTUM MERUIT – SIX MILE PROJECT

72.    Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 13 above and incorporates the same herein by reference.

73.    This is an action against in the alternative to Count I for relief based on a contract implied-in-fact.

74.    ACI provided labor, services and materials consisting of construction of an apartment complex on Six Mile Fund's Property (the "services").

75.    Continental, as manager and owner of Six Mile Fund, had knowledge of, assented to, and received a benefit from ACI's services.

14

76.    Continental knew that ACI was not volunteering its services and expected compensation.  Under the circumstances, a reasonable person receiving Plaintiff's services would expect to pay for them.

77.    Despite demand, Continental has refused to pay the reasonable value of ACI's services.

WHEREFORE, Counterclaim Plaintiff demands judgment against Third Party Defendant Continental Properties Group, Inc., a/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

### **COUNT VI – UNJUST ENRICHMENT – SIX MILE PROJECT**

78.    Counterclaim Plaintiff re-alleges the allegations of Paragraphs 1 through 13 above and incorporates the same herein by reference.

79.    This is an action in the alternative to Counts I, II and V for relief based on a contract implied in law to prevent unjust enrichment.

80.     ACI provided labor, services and materials consisting of construction of an apartment complex on Six Mile Fund's Property (the "benefits") to improve the Six Mile Property at the owner's request.

81.    Continental, as manager and owner of Six Mile Fund, had knowledge of, assented to, accepted, and retained the benefits conferred by ACI.

82.    Under the circumstances, it would be inequitable for Continental to retain the benefits conferred by ACI without paying a sum representing the reasonable value of the benefits conferred.

83.    Continental has not paid for the benefits conferred by ACI and, thus, has been unjustly enriched to the extent of the benefit conferred.

84.    ACI has no adequate remedy at law.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 332 Fund LLC and Third Party Defendant Continental Properties Group, Inc., a/k/a Continental Properties Company, Inc. for damages, together with prejudgment interest, court costs, and such other relief as the court deems just.

## CLAIMS RELATING TO THE SAVAGE PROJECT

85.    This action involves real property located in Scott County, Minnesota and is comprised of the lot described as follows:

Lot One (1), Block One (1), Springs at Egan Drive, Scott County, Minnesota (the "Real Property"), which is located at 14125 Louisiana Avenue South in Savage, Minnesota, and identified as Parcel No. 264560010.

(the "Savage Property").

86.    Savage Fund is the current fee owner of the Savage Property and was the fee owner of said property at all times material to this action.

## COUNT VII – BREACH OF CONTRACT – SAVAGE PROJECT

87.    Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 85 through 86 above and incorporates same herein.

88.    ACI and Savage Fund entered into a contract (the "Savage Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at Egan Drive (the "Savage Project"), all of which related to the permanent development and improvement of the Savage Property.

16

89.    Savage Fund is in possession of the Savage Contract, a copy of which is too voluminous to attach. The Savage Contract includes plans, specifications, and other such documents identified in the Savage Contract.

90.    In consideration for the labor, material, and general contractor services ACI provided for the Project on the Savage Property, Continental agreed to pay ACI in accordance with the Savage Contract and the payment applications submitted by ACI.

91.    Pursuant to the Savage Contract, ACI provided the necessary labor, skill, material and general contractor services for the Savage Project and has completed its work in connection with the Savage Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the Savage Contract.

92.    Despite the foregoing and ACI's demands, Savage Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the Savage Project and the permanent development and improvement to the Savage Property.

93.    ACI encountered work on the Savage Project that was not part of the original Savage Contract.

94.    ACI submitted proposed change orders for this extra work.

95.    Savage Fund unjustifiably and in breach of the Savage Contract refused to execute said proposed change orders or enter into good faith negotiations with ACI over the proposed change orders.

96.    ACI encountered conditions over which it had no control that extended the time period needed to complete the Savage Contract.

17

97. ACI requested time extensions to the Savage Contract period as a result of these conditions.

98. Savage Fund unjustifiably and in breach of the Savage Contract refused to grant said time extensions, or granted time extensions in change order 10 which depended on Savage Fund performing actions in a timely manner so that ACI could meet the extended deadlines, and Savage Fund failed or refused to perform said actions.

99. ACI submitted payment applications to Savage Fund during the Project.

100. Savage Fund unjustifiably and in breach of the Savage Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms, improperly delayed payments, improperly withheld payments and improperly reduced payments due and owing to ACI.

101. A condition precedent to ACI's duties to perform the work under the Savage Contract included Savage Fund's duty to provide permits and design documents in a timely manner during the course of the Savage Project.

102. Savage Fund did not provide permits and design documents in a timely manner during the Savage Project.

103. Savage Fund's failure to provide permits and design documents in a timely fashion delayed ACI's work and made it more expensive to perform. Among other things, ACI incurred costs to attempt to assist the Savage Fund with design issues and permitting delays for which Savage Fund provided no compensation to ACI.

104. The Savage Contract included an allowance for winter conditions.

105. Per the Savage Contract, the allowance was to be adjusted based on the actual cost for winter conditions.

106.    Savage Fund unjustifiably and in breach of the Savage Contract refused to adjust the contract price based on the actual cost for winter conditions.

107.    There is in every contract an implied promise of good faith and fair dealing.

108.    Savage Fund improperly asserted liquidated damages for delays against ACI, when in fact Savage Fund's own actions on the Savage Project and other factors beyond ACI's control caused many of the delays.

109.    Savage Fund consistently interfered with ACI's subcontracts during the Savage Project.

110.    Savage Fund's actions were in breach of the duty of good faith and fair dealing.

111.    Savage Fund provided the Plans and Specifications for the Savage Project.

112.    By providing the Plans and Specifications for the Savage Project, Savage Fund impliedly warranted the adequacy of the plans and specifications for construction of the Savage Project.

113.    The Plans and Specifications provided by Savage Fund were not adequate for the purposes of completing the Savage Project.

114.    Savage Fund's actions as alleged herein constitute a breach of the Savage Contract.

115.    As a direct and proximate result of Savage Fund's breach of the Savage Contract, ACI has suffered damages in excess of $3,000,000, including unpaid interest on payments not timely paid under the Contract; the unpaid contract balance plus accrued interest thereon; the value of the extra work performed by ACI without compensation by Continental; ACI's extended general conditions costs and other costs occasioned by the

19

delays in the project that were beyond its control; and other damages, in an amount to be proven at trial.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 298 Fund LLC for its damages, together with interest, costs and such other relief as may be appropriate.

## COUNT VIII — UNJUST ENRICHMENT – SAVAGE PROJECT

116.    Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 85 through 86 above and incorporates same herein.

117.    This is an action in the alternative to Count VII for relief based on a contract implied in law to prevent unjust enrichment.

118.    ACI provided labor, services and materials consisting of construction of an apartment complex on Savage Fund's property to improve said property at Savage Fund's request.

119.    Continental, as manager and owner of Savage Fund, had knowledge of, assented to, accepted, and retained the benefits conferred by ACI.

120.    Continental failed and refused to pay ACI for the labor, material, and general contractor services provided by ACI.

121.    The reasonable value of the labor, material, and general contractor services that remains unpaid exceeds $3,000,000.

122.    By retaining the labor, material, and general contractor services furnished by ACI without making payment to ACI for same, Continental has received a benefit of value and have been unjustly enriched in a manner that is illegal or unlawful.

20

123.    To prevent the unjust enrichment of Continental, ACI is entitled to judgment against Continental for damages exceeding $3,000,000, together with the maximum interest allowable by law, and ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Third Party Defendant Continental Properties Group, Inc., a/k/a Continental Properties Company, Inc. for its damages, together with interest, costs and such other relief as may be appropriate.

<b><u>CLAIMS RELATING TO THE ROCHESTER PROJECT</u></b>

124.    This action involves real property located at 305 28th SE, Rochester, Minnesota (the "Rochester Property").

125.    Rochester Fund is the current fee owner of the Rochester Property and was the fee owner of said property at all times material to this action.

<b><u>COUNT IX – BREACH OF CONTRACT – ROCHESTER PROJECT</u></b>

126.    Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11, 30 through 33, and 124 through 125 above and incorporates same herein.

127.    ACI and Rochester Fund entered into a contract (the "Rochester Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at South Broadway (the "Rochester Project"), all of which related to the permanent development and improvement of the Rochester Property.

128.    Rochester Fund is in possession of the Rochester Contract, a copy of which is too voluminous to attach. The Rochester Contract includes plans, specifications, and other such documents identified in the Rochester Contract.

129.    In consideration for the labor, material, and general contractor services ACI provided for the Project on the Rochester Property, Rochester Fund agreed to pay ACI in accordance with the Rochester Contract and the payment applications submitted by ACI.

130.    Pursuant to the Rochester Contract, ACI provided the necessary labor, skill, material and general contractor services for the Rochester Project and has completed its work in connection with the Rochester Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the Rochester Contract.

131.    Despite the foregoing and ACI's demands, Rochester Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the Rochester Project and the permanent development and improvement to the Rochester Property.

132.    ACI encountered work on the Rochester Project that was not part of the original Rochester Contract.

133.    ACI submitted proposed change orders for this extra work.

134.    Rochester Fund unjustifiably and in breach of the Rochester Contract refused to execute said change orders or enter into good faith negotiations with ACI over the proposed change orders.

135.    ACI encountered conditions over which it had no control that extended the time period needed to complete the Rochester Contract.

136.    ACI requested time extensions to the Rochester Contract period as a result of these conditions.

137.    Rochester Fund unjustifiably and in breach of the Rochester Contract refused to grant said time extensions.

22

138.    ACI submitted payment applications to Rochester Fund during the Project.

139.    Rochester Fund unjustifiably and in breach of the Rochester Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms, improperly delayed payments, improperly conditioned payments on extra-contractual conditions, improperly withheld payments and improperly reduced payments due and owing to ACI.

140.    As with the Six Mile Project, Continental, acting as manager of Rochester Fund, refused to process ACI's payment applications for the Rochester Project except through Textura, even though use of Textura was not a requirement of the Rochester Contract.  And much like what happened on the Six Mile Project, payment to ACI on the Rochester Project was delayed due to software glitches in Textura and Continental's insistence on delaying payments to ACI over exceedingly minor discrepancies in supporting paperwork submitted by ACI or its subcontractors.

141.    Continental's failure to pay ACI except through Textura, and its late payment to ACI through its use and implementation of Textura, was a breach of the duties of Rochester Fund under the Rochester Project, as nothing in the Rochester Contract required ACI to submit its payments through that system, and Continental implemented payment through Textura in an unreasonable way which interfered with ACI's performance under the Rochester Contract.

142.    There is in every contract an implied promise of good faith and fair dealing.

143.    Rochester Fund improperly asserted liquidated damages for delays against ACI, when in fact Rochester Fund's own actions on the Rochester Project and other factors beyond ACI's control caused many of the delays.

23

144. Rochester Fund consistently interfered with ACI's subcontracts during the Rochester Project.

145. Rochester Fund's actions were in breach of the duty of good faith and fair dealing.

146. Rochester Fund provided the Plans and Specifications for the Rochester Project.

147. By providing the Plans and Specifications for the Rochester Project, Rochester Fund impliedly warranted the adequacy of the plans and specifications for construction of the Rochester Project.

148. The Plans and Specifications provided by Rochester Fund were not adequate for the purposes of completing the Rochester Project.

149. Rochester Fund's actions as alleged herein constitute a breach of the Rochester Contract.

150. As a direct and proximate result of Rochester Fund's breach of the Rochester Contract, ACI has suffered damages in the principal amount of $4,357,112.18, inclusive of amounts for which ACI remains potentially liable to its subcontractors and suppliers for work performed.

151. ACI is entitled to judgment against Rochester Fund for the total principal sum of $4,357,112.18, together with the maximum interest allowable by law, ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 326 Fund LLC for its damages, together with interest, costs and such other relief as may be appropriate.

24

## COUNT X – UNJUST ENRICHMENT – ROCHESTER PROJECT

152.    Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 124 through 125 above and incorporates same herein.

153.    This is an action in the alternative to Count IX for relief based on a contract implied in law to prevent unjust enrichment.

154.    ACI provided labor, services and materials consisting of construction of an apartment complex on Rochester Fund's property to improve said property at Rochester Fund's request.

155.    Continental, as manager and owner of Rochester Fund, had knowledge of, assented to, accepted, and retained the benefits conferred by ACI.

156.    Continental failed and refused to pay ACI for the labor, material, and general contractor services provided by ACI.

157.    The reasonable value of the labor, material, and general contractor services that remains unpaid is the principal sum of $4,357,112.18.

158.    By retaining the labor, material, and general contractor services furnished by ACI without making payment to ACI for same, Continental has received a benefit of value and have been unjustly enriched in a manner that is illegal or unlawful.

159.    To prevent the unjust enrichment of Continental, ACI is entitled to judgment against Continental for the total principal sum of $4,357,112.18, together with the maximum interest allowable by law, and ACI's costs and disbursements in this action.

WHEREFORE, Counterclaim Plaintiff demands judgment against Third Party Defendant Continental Properties Group, Inc., a/k/a Continental Properties Company, Inc., for its damages, together with interest, costs and such other relief as may be appropriate.

25

## CLAIMS RELATING TO THE NEW BRAUNFELS PROJECT

160.    This action involves real property located in New Braunfels, Texas as more particularly described as follows:

> Property located at the municipal address of 2980 CREEK BEND DR., NEW BRAUNFELS, TX 78130-6474, in the county of COMAL, TX, legally described as C306 FUND, BLOCK 1, LOT 1, APN 389681., Municipality / Township of NEW BRAUNFELS, Census Tract 3104.01, in the Subdivision of C306 FUND, Legal Bloc 1, Legal Lot 1, in the school district of CIS.

(the "New Braunfels Property").

161.    New Braunfels Fund is the current fee owner of the New Braunfels Property and was the fee owner of said property at all times material to this action.

## COUNT XI – BREACH OF CONTRACT – NEW BRAUNFELS PROJECT

162.    Counterclaim Plaintiff re-alleges the allegations contained in Paragraphs 1 through 11 and 160 through 161 above and incorporates same herein.

163.    ACI and New Braunfels Fund entered into a contract (the "New Braunfels Contract") whereby ACI agreed to perform labor and furnish material and machinery, as a general contractor for the construction project known as the Springs at Creekside (the "New Braunfels Project"), all of which related to the permanent development and improvement of the New Braunfels Property.

164.    New Braunfels Fund is in possession of the New Braunfels Contract, a copy of which is too voluminous to attach. The New Braunfels Contract includes plans, specifications, and other such documents identified in the New Braunfels Contract.

165.    In consideration for the labor, material, and general contractor services ACI provided for the Project on the New Braunfels Property, New Braunfels Fund agreed to pay

26

ACI in accordance with the New Braunfels Contract and the payment applications submitted by ACI.

166. Pursuant to the New Braunfels Contract, ACI provided the necessary labor, skill, material and general contractor services for the New Braunfels Project and has completed its work in connection with the New Braunfels Project in a workmanlike and professional manner and has otherwise fulfilled its obligations under the New Braunfels Contract.

167. Despite the foregoing and ACI's demands, New Braunfels Fund has unjustifiably failed and refused, and continues to unjustifiably fail and refuse, to pay ACI for the labor, material, and general contractor services that ACI provided in connection with the New Braunfels Project and the permanent development and improvement to the New Braunfels Property.

168. ACI encountered work on the New Braunfels Project that was not part of the original New Braunfels Contract.

169. ACI submitted proposed change orders for this extra work.

170. New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract refused to execute said change orders or enter into good faith negotiations with ACI over the proposed change orders.

171. ACI encountered weather and other conditions over which it had no control that extended the time period needed to complete the New Braunfels Contract.

172. ACI requested time extensions to the New Braunfels Contract period as a result of these conditions.

173. New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract refused to grant said time extensions, and instead purported to impose liquidated damages on ACI for delays not caused by ACI.

174. ACI submitted payment applications to New Braunfels Fund during the New Braunfels Project.

175. New Braunfels Fund unjustifiably and in breach of the New Braunfels Contract failed to process payment to ACI of the amounts due and owing in accordance with the contract's terms.

176. There is in every contract an implied promise of good faith and fair dealing.

177. New Braunfels Fund improperly asserted liquidated damages for delays against ACI, when in fact New Braunfels Fund's own actions on the New Braunfels Project and other factors beyond ACI's control caused many of the delays.

178. New Braunfels Fund consistently interfered with ACI's subcontracts during the New Braunfels Project.

179. New Braunfels Fund's actions were in breach of the duty of good faith and fair dealing.

180. New Braunfels Fund's actions as alleged herein constitute a breach of the New Braunfels Contract.

181. As a direct and proximate result of New Braunfels Fund's breach of the New Braunfels Contract, ACI has suffered damages in the principal amount of $301,308.83.

182. ACI is entitled to judgment against New Braunfels Fund for the total principal sum of $301,308.83, together with the maximum interest allowable by law, ACI's costs and disbursements in this action.

28

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendant Continental 306 Fund LLC for its damages, together with interest, costs and such other relief as may be appropriate.

## JURY TRIAL DEMAND

Counterclaim Plaintiff / Third Party Plaintiff Albertelli Construction, Inc. hereby demands trial by jury on all claims herein so triable under applicable law.

Dated this 20th day of May, 2019.

GRAYROBINSON, P.A.

By: /s/ *Reese J. Henderson, Jr.*
Reese J. Henderson, Jr.
Florida Bar No. 969273
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
Phone: (904) 598-9929
Facsimile: (904) 598-9109
*reese.henderson@gray-robinson.com*
*maria.daniels@gray-robinson.com*
Attorneys for Defendant / Counterclaim
Plaintiff Albertelli Construction, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Reese J. Henderson, Jr.*

\737265\5 - # 1805170 v1

29