UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONTINENTAL 332 FUND LLC,
CONTINENTAL 298 FUND LLC,
CONTINENTAL 306 FUND LLC,
CONTINENTAL 326 FUND LLC,
CONTINENTAL 347 FUND LLC,
CONTINENTAL 355 FUND LLC,
CONTINENTAL 342 FUND LLC and
CONTINENTAL 245 FUND LLC,

      Plaintiffs,

v.                              Case No.: 2:17-cv-41-FtM-38MRM

BROOK KOZLOWSKI, JOHN
SALAT, KEVIN BURKE and
GREGORY HILZ,

      Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court are Defendants Brook Kozlowski and Kevin Burke's Motion for Summary Judgment (Doc. 468), Plaintiffs' response (Doc. 515), Kozlowski's Reply (Doc. 596), Burke's reply (Doc. 599), and Plaintiffs' surreplies (Doc. 600; Doc. 617).

Burke and Kozlowski first adopt arguments made by other Defendants, which the Court has already rejected. Burke also moves for summary judgment because Plaintiffs cannot produce evidence that implicates him. (Doc. 468). Plaintiffs sued Burke for violating the federal and Florida RICO acts (Counts 1-3), fraud (Count 5), and conspiracy

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

to commit fraud (Count 6). Kozlowski does not specifically challenge Plaintiffs' allegations against him.

Continental Properties Group, Inc. (Continental) is a real estate developer that created Plaintiffs as holding companies for individual apartment complex projects. Continental hired Angelo Eguizabal as Vice President of Construction in 2007. In that role, Eguizabal found contractors for Continental projects and could sign construction contracts and change orders. Continental began hiring contractor Albertelli Construction, Inc. (ACI) around 2011. About two years later, Eguizabal agreed with George and David Albertelli that ACI would pay Eguizabal a portion of its proceeds from Continental contracts. In exchange, Eguizabal would direct Continental projects to ACI (and later Westcore) and help the Albertellis increase profits by easing the approval of change orders. Eguizabal and David Albertelli memorialized the arrangement in a Commission Services Agreement on March 5, 2013. ([Doc. 456-7](Doc. 456-7)).

Continental grew dissatisfied with ACI's work and decided to stop awarding ACI contracts. The Albertellis and their associates found more underhanded ways to make money from Continental projects. For example, they formed Westcore Construction with Defendant Gregory Hilz to bid on Continental projects, while hiding their ownership stake in Westcore from Continental personnel.

Burke was Foundation Management LLC's Chief Financial Officer from June 2016 to May 2017. Foundation provided accounting and payment-processing services to construction companies, including Westcore, National Framing, KMM, and Team CCR. Burke managed financial and accounting operations based on project budgets provided by David Albertelli. Although he had the authority to sign on behalf of the companies

to commit fraud (Count 6). Kozlowski does not specifically challenge Plaintiffs' allegations against him.

Continental Properties Group, Inc. (Continental) is a real estate developer that created Plaintiffs as holding companies for individual apartment complex projects. Continental hired Angelo Eguizabal as Vice President of Construction in 2007. In that role, Eguizabal found contractors for Continental projects and could sign construction contracts and change orders. Continental began hiring contractor Albertelli Construction, Inc. (ACI) around 2011. About two years later, Eguizabal agreed with George and David Albertelli that ACI would pay Eguizabal a portion of its proceeds from Continental contracts. In exchange, Eguizabal would direct Continental projects to ACI (and later Westcore) and help the Albertellis increase profits by easing the approval of change orders. Eguizabal and David Albertelli memorialized the arrangement in a Commission Services Agreement on March 5, 2013. ([Doc. 456-7](Doc. 456-7)).

Continental grew dissatisfied with ACI's work and decided to stop awarding ACI contracts. The Albertellis and their associates found more underhanded ways to make money from Continental projects. For example, they formed Westcore Construction with Defendant Gregory Hilz to bid on Continental projects, while hiding their ownership stake in Westcore from Continental personnel.

Burke was Foundation Management LLC's Chief Financial Officer from June 2016 to May 2017. Foundation provided accounting and payment-processing services to construction companies, including Westcore, National Framing, KMM, and Team CCR. Burke managed financial and accounting operations based on project budgets provided by David Albertelli. Although he had the authority to sign on behalf of the companies

Foundation served, Burke sought David Albertelli's approval before paying invoices that did not exactly match a purchase order.

MFDC, LLC was among the companies to which Burke processed payments. He believed the payments were commissions for a "consultant" or "lead generation person or something similar." (Doc. 468 at 8). MFDC is really an entity set up by Eguizabal to receive kickbacks from the Albertellis. Burke learned about Eguizabal in late 2016, when Eguizabal started demanding payments. But Burke denies he knew about Eguizabal's connection to MFDC or Continental when he processed payments that ultimately went to Eguizabal. Foundation, Westcore, National Framing, KMM, Team CCR, George Albertelli, David Albertelli, MFDC, and Eguizabal are all former defendants and alleged members of the same RICO enterprise at issue here.

Burke claims he cannot be liable for a RICO violation because he did not engage in any of the activities prohibited by 18 U.S.C. § 1962. Plaintiffs argue that they have enough evidence to prevail under § 1962(a), (c), and (d) but only need to establish that Burke violated one of § 1962's subsections to prevail. While the following analysis relies on federal law, it also applies to Plaintiffs' Florida RICO claims. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004).

"In order to establish a RICO violation under 18 U.S.C. § 1962(c), Plaintiffs must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) (internal quotations and citation omitted). Burke challenges Plaintiffs' ability to show that his involvement with the other Defendants "was for the purpose of engaging in illegal conduct" or that he "committed the necessary

3

predicate acts." (Doc. 468 at 12). Plaintiffs respond with evidence of three types of predicate acts: bribery, wire and banking fraud, and other fraudulent acts.

Burke's first argument misses the mark. He cites *Al-Rayes v. Willingham*, 914 F.3d 1302 (11th Cir. 2019) to support his claim that "Plaintiffs must show Burke joined the Corrupt Enterprise with the purpose of engaging in illegal conduct." (Doc. 468 at 13). Which, according to Burke, Plaintiffs cannot do because he joined Foundation to provide construction and general contracting services. But the *Al-Rayes* court rejected a similar argument. The trial court dismissed a RICO claim because the defendants did not *begin* the allege enterprise—a marriage—for an illegal purpose. *Al-Rayes*, 914 F.3d at 1307-8. The Eleventh Circuit reversed because "the relevant 'purpose' in an association-in-fact enterprise is the members' shared purpose of engaging in illegal activity—not the purpose for which they initially became acquainted." *Id.* at 1308. Burke's innocent purpose for joining Foundation thus does not negate the enterprise's shared purpose of siphoning money from Continental through unlawful schemes.

Burke also briefly argues that he did not participate in the operation or management of the enterprise. The Court disagrees. Given his duties as Foundation's CFO, a reasonable jury could conclude that Burke's involvement in the enterprise passed the threshold for RICO liability.

Moving on to predicate acts, Plaintiffs accuse Burke of violating the Colorado, Florida, Minnesota, and Texas bribery statutes, all of which require Plaintiffs to show that Burke intended to influence Eguizabal's conduct towards Continental. COLO. REV. STAT. § 18-5-401; FLA. STAT. § 838.16; MINN. STAT. § 609.86; TEX. PENAL CODE § 32.43. Burke claims he could not have had the requisite intent because he did not know that Eguizabal

was a Continental employee. Plaintiffs challenge Burke's claim of ignorance by highlighting two emails he received that hinted at Eguizabal's position with Continental. On January 23, 2017, Burke was cc'd on an email from Kozlowski to Eguizabal that called Continental employees "your team" and "your minions." (Doc. 515-4 at 2). Then on March 3, 2017, David Albertelli forwarded Burke an email from Eguizabal, in which Eguizabal threatens to stop giving Westcore "behind the scenes support" if his invoices were not paid promptly. (Doc. 515-5 at 2). Burke does not seem to dispute that he made bribery payments to Eguizabal through March 14, 2017, about three months after receiving the first email that suggested Eguizabal's relationship with Continental. (*See* Doc. 468 at 8). Whether Burke committed predicate acts of bribery is a question that a jury must decide.

Plaintiffs also accuse Burke of three categories of wire and banking fraud, which serve as predicate acts under RICO and as the factual grounds for counts of fraud and conspiracy to commit fraud. First, they allege the acts of bribery are also wire fraud because "the bribes were paid by wire transfers and the nature of such payments was intentionally concealed from Plaintiffs." (Doc. 218 at 61). Burke argues that if Plaintiffs cannot prove bribery, they cannot prove wire fraud based on bribery. But since the Court found enough evidence of bribery, Burke's argument fails.

For the next two categories of fraud, Burke challenges Plaintiffs to present evidence that he intended to defraud them. A party's intent is generally "a question of fact for the factfinder, to be determined after trial." *Williams v. Obstfeld*, 314 F.3d 1270, 1277 (11th Cir. 2002). So when intent is at issue, summary judgment is appropriate only if the party opposing it "fails to indicate that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Id.* Plaintiffs accuse Burke of

working with other co-conspirators to trick Plaintiffs into paying sham companies set up to imitate contractors who worked on Continental projects. And they claim Burke helped conceal David Albertelli's and Kozlowski's association with certain contractors so Continental would hire them, despite Continental's decision not to award more work to ACI.

To prove Burke's intent to defraud, Plaintiffs point to a sentence in Kerry Heltzel's affidavit: "Burke was aware that the ownership of [Foundation] and related companies was to be kept quiet under instructions from Kozlowski, David Albertelli and Hilz." ([Doc. 515-3 at 11](#)). Burke asks the Court to disregard Heltzel's affidavit because it is not based on personal knowledge as required by [Federal Rule of Civil Procedure 56(c)(4)](#). And indeed, when pressed, Heltzel admitted she did not have "personal knowledge of Mr. Burke's awareness." ([Doc. 613 at 202](#)). But she explained that keeping the ownership of Foundation quiet was an office-wide policy, which she assumed Burke, as the CFO, knew. ([Doc. 613 at 201-2](#)). Heltzel's assumption is based on her personal experiences working for Foundation and Westcore for about a year.

A person's knowledge or intent can rarely be proven with direct evidence, so juries may determine these issues by drawing inferences from the factual circumstances, just as Heltzel did here. Heltzel need not have personal knowledge of the contents of Burke's mind to give testimony on his intent. Heltzel's personal knowledge of the circumstances surrounding Burke, Foundation, and the other former defendants allows Plaintiffs to rely on her affidavit. Plaintiffs have submitted enough evidence to survive summary judgment on its 1962(c) claim against Burke.

Burke argues for summary judgment on Plaintiffs' § 1962(d) RICO conspiracy claim because they did not present evidence of an agreement. While an agreement is an essential part of a RICO conspiracy charge, direct evidence is unnecessary. *United States v. Carter*, 721 F.2d 1514, 1532 (11th Cir. 1984). The Court can infer an agreement from circumstantial evidence, including evidence that the defendant committed of two or more predicate acts. *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978). As discussed above, Plaintiffs have presented evidence that Burke committed two or more acts of bribery and fraud. And the evidence suggests that Burke performed those acts in coordination with other alleged conspirators. Thus, the Court may infer an agreement, and Plaintiff's § 1962(d) claim survives.

As for 18 U.S.C. § 1962(a), Plaintiffs make no attempt to show that Burke invested income derived from racketeering activity back into the enterprise. Plaintiffs instead argue they need only show "that the *enterprise* invested illicit proceeds to expand." (Doc. 515 at 12). But Plaintiffs are wrong. § 1962(a) makes it "unlawful for any *person* who has received any income derived…from a pattern of racketeering activity" to invest that income in an enterprise. 18 U.S.C. § 1962(a) (emphasis added). Plaintiffs have not shown that Burke violated § 1962(a). Because the evidence supports Plaintiffs' RICO claims under 1962(c) and (d), the Court will deny the Motion, but with the caveat that Plaintiffs may not present a § 1962(a) claim against Burke.

Accordingly, it is now

**ORDERED:**

Defendants Brook Kozlowski and Kevin Burke's Motion for Summary Judgment (Doc. 468) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of March, 2020.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record